## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROSLYN HAZLITT**, **JANE DOE**, by and through next friend **JOHN DOE**, **RICHARD ROBINSON**, and **YOLANDA BROWN**, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>        Plaintiffs,<br><br>    v.<br><br>**APPLE INC.**,<br><br>        Defendant. | Case No. 3:20-cv-00421-NJR |

## DEFENDANT APPLE INC.'S MEMORANDUM
## IN SUPPORT OF ITS MOTION TO DISMISS

**DLA Piper LLP (US)**

Isabelle L. Ord*
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105
isabelle.ord@dlapiper.com

Amanda Fitzsimmons*
DLA Piper LLP (US)
401 B. Street, Suite 1700
San Diego, California 92101
amanda.fitzsimmons@dlapiper.com

Raj N. Shah (ARDC # 06244821)
Eric M. Roberts (ARDC # 6306839)
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000
raj.shah@dlapiper.com
eric.roberts@dlapiper.com

* admitted *pro hac vice*

*Attorneys for Apple Inc.*

**Dated**: June 12, 2020

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

     A.      The Photos app and its photo scanning technology. ................................2

     B.      The Photos app's use of face recognition technology. ...........................2

     C.      The plaintiffs' claims. ..............................................................................4

     D.      The Illinois Biometric Information Privacy Act. ....................................5

III.    LEGAL STANDARD ............................................................................................6

IV.     ARGUMENT .........................................................................................................6

     A.      BIPA does not apply because the alleged scans of face geometry are derived from photos and not linked to identifiable individuals. .............................7

     B.      BIPA does not apply because facial recognition takes place solely on the device. .........................................................................................10

     C.      The plaintiffs lack standing under Article III of the U.S. Constitution to pursue their claim under BIPA Section 15(a). ...................................14

     D.      The plaintiffs fail to allege that Apple sold or profited from biometric identifiers or biometric information. ....................................15

     E.      The plaintiffs fail to allege that Apple acted intentionally or recklessly...................................................................................................16

V.      CONCLUSION......................................................................................................16

i

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ............................................................6

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)........................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)............................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................6

*Bernal v. ADP, LLC*,
  2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) .............................14

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020) .....................................................14, 15

*Corbett v. County of Lake*,
  104 N.E.3d 389 (Ill. 2017) .................................................................8

*Heard v. Becton, Dickinson & Co.*,
  ___ F. Supp. 3d ___, 2020 WL 887460 (N.D. Ill. 2020)................14

*Hulme v. Madison County*,
  188 F. Supp. 2d 1041 (S.D. Ill. 2001) ...............................................8

*In re Facebook Biometric Info. Privacy Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...........................................10

*Kloss v. Acuant, Inc.*,
  2020 WL 2571901 (N.D. Ill. May 21, 2020) ...................................14

*Lacey v. Vill. of Palatine*,
  904 N.E.2d 18 (Ill. 2009) ............................................................7, 15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005).........................................................................13

*Monroy v. Shutterfly, Inc.*,
  2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) .............................7, 10

## TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ........................................................................14, 16

*Netfuel, Inc. v. F5 Networks, Inc.*,
    2017 WL 2834538 (N.D. Ill. June 29, 2017) ...................................................................13

*Norberg v. Shutterfly, Inc.*,
    152 F. Supp. 3d 1103 (N.D. Ill. 2015) ...........................................................................10

*Resolution Tr. Corp. v. Franz*,
    909 F. Supp. 1128 (N.D. Ill. 1995) ................................................................................16

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..............................................................................9

*Santana v. Take-Two Interactive Software, Inc.*,
    717 F. App'x 12 (2d Cir. 2017) ......................................................................................15

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
    91 F. Supp. 2d 926 (E.D. Tex. 1999) .............................................................................13

*Talley v. LaFlamme*,
    2020 WL 2308258 (S.D. Ill. May 8, 2020) .......................................................................6

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
    987 F.2d 429 (7th Cir. 1993) ............................................................................................6

*Vigil v. Take-Two Interactive Software, Inc.*,
    235 F. Supp. 3d 499 (S.D.N.Y. 2017)........................................................................15, 16

*Vill. of Bedford Park v. Expedia, Inc.*,
    876 F.3d 296 (7th Cir. 2017) ............................................................................................8

*Ziarko v. Soo Line R. Co.*,
    641 N.E.2d 402 (Ill. 1994) .............................................................................................16

STATUTES

740 ILCS 14/1 ....................................................................................................................1, 5

740 ILCS 14/5 ........................................................................................................................8

740 ILCS 14/10 ...............................................................................................................5, 7, 8

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**PAGE(S)**

740 ILCS 14/15 ................................................................................................ *passim*

740 ILCS 14/20 ........................................................................................................16

## I.       INTRODUCTION

The Complaint is devoid of factual allegations that Apple Inc. ("Apple") engages in any of the conduct against which the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, protects: a private entity's unauthorized collection, possession, and disclosure of individuals' unique and personal "biometric identifiers" or "biometric information." The Complaint should be dismissed accordingly.

First, while the plaintiffs argue that Apple's Photos app violates BIPA, they fail to plead that Apple, the device, or the Photos app links the alleged "scans of face geometry" or "face templates" from photos (assuming the plaintiffs' characterization is accurate) to identifiable individuals. To the contrary, the Complaint concedes that the alleged "scans of face geometry" and "face templates" are not linked to or associated with any identity, much less transmitted to Apple as personally identifying information. Instead, device users have the choice and control over whether to "tag" the People albums by inputting a name after the album is populated on the device.

Second, the Complaint fails to allege that Apple—as the manufacturer of the plaintiffs' devices or licensor of software—ever actually collects, captures, possesses, or otherwise obtains any of the information at issue. Rather, according to the Complaint, the supposed face scans "are stored . . . in the solid state memory *on the user's Apple device*" and Apple "does not store or transfer all user Biometric Data on or by means of its servers." Compl. ¶¶ 3, 71, 105 (emphasis added). The plaintiffs therefore resort to tenuous and never before used theories of vicarious or secondary liability as a basis for their BIPA claims against Apple. The Illinois legislature imposed no such liability in enacting BIPA, and courts routinely dismiss claims against device manufacturers and software developers that, like here, allege nothing more than the sale of technology which allegedly created biometric identifiers or biometric information during operation by the end-user.

Beyond these incurable defects, the claims should be dismissed for three additional, independent reasons: (1) Count II under Section 15(a)—a claim predicated on Apple's alleged failure to publish a written retention schedule for the biometric identifiers it supposedly collects—fails to allege the particularized harm that the Seventh Circuit has held is necessary to demonstrate standing under Article III of the U.S. Constitution; (2) Count III under Section 15(c) fails to allege that Apple sold or otherwise profited from a single biometric identifier or piece of biometric information; and (3) the request for enhanced statutory damages should be stricken because the plaintiffs have not asserted *any* facts that would establish that Apple's conduct was "intentional and reckless."

In keeping with its commitment to consumer privacy, Apple designed the technology into the device so that the alleged face templates stay under the plaintiffs' control. The plaintiffs' BIPA claims thus necessarily fail, and the Complaint should be dismissed with prejudice.

## II.   BACKGROUND

### A.   The Photos app and its photo scanning technology.

The Photos app is software included with the operating system installed on certain Apple iPhones, iPads, and computers. Compl. ¶ 2. In addition to providing users with a tool to store and edit their digital photos, the Photos app utilizes on-device technology to analyze and sort photos. *Id.* ¶¶ 67, 70-71, 81. The feature enables users to, among other things, "recognize the people, scenes, and objects in photographs"; easily sort "images by your favorite subjects—the people in your life"; and more quickly "'find the exact photos you're looking for, based on who you were with or where you were when you took them.'" *Id.* ¶¶ 80, 81, 83.

### B.   The Photos app's use of face recognition technology.

The on-device sorting and photo management capabilities of the Photos app are powered in part by "[i]ntelligent face recognition . . . ." *Id.* ¶ 82. According to the Complaint, algorithms

automatically run on Apple devices to create "faceprints" or "facial templates" for every face in every photo on the device by "calculat[ing] a unique digital representation of faces based on geometric attributes, such as distance between the eyes, width of the nose, and other features" from these photos.[1] *Id.* ¶¶ 70-71, 75, 77, 79, 148. The plaintiffs allege that the resulting facial templates are "scans of face geometry" that are "biometric identifiers" and "biometric information" under BIPA. *Id.* ¶¶ 1, 68-69, 162-63.

The Complaint also alleges that the Photos app uses the facial templates and facial recognition algorithms to analyze the digital photos stored on the device to "automatically group photographs into albums based on whether a person's face is in the photograph." *Id.* ¶ 74. The Photos app sorts these albums under the "People and Places" folder on the device. *Id.* ¶ 67. Because Apple, the device, and the Photos app do not have any ability to actually ***identify*** the individuals in the photos or to associate the alleged facial templates with an actual individual, only device users can choose to "tag" the People albums by inputting a name for each album. *See, e.g.*, *id.* ¶¶ 146-47 (plaintiffs "tagged" individuals in the People album); *id.* ¶ 123 ("Defendant . . . does not know which nonusers' Biometric Data it is collecting."). As stated in an Apple support document cited in footnote 49 to the Complaint: "The Photos app recognizes the faces of people in your photos and groups them together. ***You can give names to faces***, mark your favorites, and explore all the photos that a person appears in." *See* Ex. 1 to Roberts Decl. (emphasis added).

The Complaint repeatedly concedes that the facial recognition algorithms that power the Photos app "run on Apple Devices" and affirmatively alleges that any "Biometric Data taken from an Apple Device user's image library [*i.e.*, the alleged face scans] are stored in what [Apple] calls

---

[1] The Complaint's description of the technology assumes (without any explanation for its assumption) that the Photos app employs mechanisms from various Apple patents that broadly relate to facial recognition technology. *Id.* ¶¶ 68, 97-99, n.29, n.31.

a facial recognition database, or facial database, ***in the solid state memory on the user's Apple Device***." Compl. ¶¶ 3, 71 (emphasis added). In other words, information stays under the control of the device user at all times, a fact underscored by the document cited in footnote 29 of the Complaint, which explains that Apple kept the facial recognition process on users' devices to "preserve user privacy" and "due to Apple's strong commitment to user privacy." Ex. 2 to Roberts Decl. The Complaint contains no allegation that the plaintiffs' alleged face scans were transmitted to or obtained by Apple. According to the plaintiffs, Apple "does not store or transfer all user Biometric Data on or by means of its servers . . . ." Compl. ¶ 105.

    **C.**    **The plaintiffs' claims.**

According to the Complaint, each plaintiff (including minor Jane Doe) has photos of him- or herself, and others, on at least one Apple device. *Id.* ¶ 143. Each plaintiff's device allegedly generated a "person" album of photos including the plaintiff, as well as albums for certain friends and family members, without consent.[2] *Id.* ¶¶ 92, 144-47, 151. Although several plaintiffs admit to using the features in the Photos app and "tagging" people in albums, all of the plaintiffs claim to have been unaware that the Photos app utilized facial recognition technology or that the Photos app would organize photos on the device based on face geometry. *Id.* ¶¶ 143, 146.

The plaintiffs assert three claims under BIPA on behalf of a putative class of Illinois residents. In Count I, the plaintiffs assert that Apple violated Section 15(b) of BIPA by collecting biometric identifiers and biometric information through the Photos app without the plaintiffs' informed written consent. *Id.* ¶¶ 1, 78, 120-21, 162-64. In Count II, the plaintiffs allege that Apple violated Section 15(a) of BIPA by failing to publish a retention schedule and destruction policy for the biometric identifiers and biometric information supposedly collected, as required by BIPA.

---

[2] Plaintiff Jane Doe alleges that, as a minor, she cannot give consent. Compl. ¶ 145. But she has not asserted any independent or separate claims on that basis.

*Id.* ¶¶ 169-75. Finally, in Count III, the plaintiffs allege that Apple violates Section 15(c) of BIPA by profiting from biometric identifiers or biometric information generated by the Photos app because the Photos app's capabilities allegedly allow Apple to sell more devices or obtain a higher sales price. *Id.* ¶¶ 176-84. The Complaint asserts that Apple's putative violations of BIPA are intentional, reckless, or at least negligent, and the plaintiffs seek statutory damages of $5,000 per violation (or $1,000 per negligent violation), injunctive relief, and attorneys' fees.

### D. The Illinois Biometric Information Privacy Act.

BIPA does not prohibit the creation and collection of biometric information and biometric identifiers, but imposes conditions on private entities that do so in the State of Illinois. *See generally* 740 ILCS 14/1, *et seq.* BIPA defines "biometric identifier" to include "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. "Biometric information" is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual," but is expressly defined to "not include information derived from items or procedures excluded under the definition of biometric identifiers," such as photos. *Id.*

A private entity may not "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information" unless it has provided notice and obtained informed written consent. *Id.*; 740 ILCS 14/15(b). BIPA also forbids an entity "in possession" of a person's biometric identifier or biometric information from selling, leasing, trading, or "otherwise profit[ing] from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c). Finally, BIPA requires any private entity "in possession" of a person's biometric identifier or biometric information to develop and make available to the public a retention schedule meeting certain requirements and guidelines for the permanent destruction of such information. 740 ILCS 14/15(a).

III.    **LEGAL STANDARD**

The Complaint must be dismissed because it fails to sufficiently "'state a claim to relief that is plausible on its face.'" *Talley v. LaFlamme*, 2020 WL 2308258, at *2 (S.D. Ill. May 8, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint passes muster only by alleging "'factual content,'" not mere "'labels and conclusions'" or threadbare recitals of "'the elements of the cause of action.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, a claim cannot proceed on the "'sheer possibility'" of an "unlawful" act. *Id.* (quoting *Iqbal*, 556 U.S. at 678). In deciding this motion, the Court may "draw on its judicial experience and common sense" to determine "whether a complaint states a plausible claim for relief." *Iqbal*, 556 U.S. at 679. The Court also may consider documents attached to the Roberts Declaration in support of the motion to dismiss as "part of the pleadings" because "they are referred to in the [] complaint and are central to [the] claim[s]." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (quotation omitted).[3]

IV.    **ARGUMENT**

The Complaint fails to state a claim under BIPA because it fails to allege: (1) that the putative scans of face geometry are linked to, and identify, particular individuals; (2) that Apple collects, captures, possesses, or otherwise obtains the alleged biometric identifiers or biometric information; (3) a concrete and particularized harm as required to establish Article III standing to assert the Section 15(a) claim; (4) that Apple sells, leases, or profits from the plaintiffs' biometric identifiers or biometric information; and (5) any factual support for an intentional or reckless

---

[3] As recognized by the Seventh Circuit, the Federal Rules do not require plaintiffs to "attach to [a] complaint documents upon which [the] action is based" *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). However, where plaintiffs have "failed to do so," defendants can complete the record by introducing such documents. *Id.*

violation of BIPA as necessary to sustain the request for enhanced statutory damages. These defects are not curable by amendment, and the Complaint should be dismissed with prejudice.

### A.    BIPA does not apply because the alleged scans of face geometry are derived from photos and not linked to identifiable individuals.

The plaintiffs cannot sustain a claim against Apple under BIPA because the plaintiffs do not (and cannot) allege that Apple, the device, or the Photos app link the so-called "facial templates" to identifiable individuals. BIPA does not extend protections to "biometrics" generally but to (1) "biometric *identifiers*" and (2) "biometric information," which are defined in the statute by their use "*to identify an individual*." 740 ILCS 14/10 (emphasis added). The Photos app data which the Complaint labels a "scan of face geometry" does not function to identify individuals and thus does not qualify as a biometric identifier or biometric information under BIPA.

First, the alleged scans of face geometry derived from photos are not biometric information. The plaintiffs concede that the technology scans photos not faces. Compl. ¶ 67. BIPA defines "biometric information" to exclude "information derived from" photographs, which expressly are "excluded under the definition of biometric identifiers." *See* 740 ILCS 14/10; *see also Monroy v. Shutterfly, Inc.*, 2017 WL 4099846, at *3 (N.D. Ill. Sept. 15, 2017) ("It is clear that the data extracted from Monroy's photograph cannot constitute 'biometric information' within the meaning of the statute . . . .").

Second, the alleged face scans are not biometric identifiers. The statutory definition of a "scan of . . . face geometry" as a "biometric identifier" does not extend to anonymous face scans that organize photos but do not actually identify any individual. The Illinois legislature chose to use the phrase "biometric *identifier*" rather than the word "biometric" when drafting the statute, and intentionally excluded data that does not identify an actual person. *See Lacey v. Vill. of Palatine*, 904 N.E.2d 18, 25 (Ill. 2009) (holding that a court must give effect to the legislature's

intent as evidenced by the plain language of a statute); *Hulme v. Madison County*, 188 F. Supp. 2d 1041, 1054 (S.D. Ill. 2001) (court must effectuate the legislature's deliberate drafting choices). The term "scan of . . . face geometry" must be interpreted in the context of the statutory phrase "biometric identifier," which it purports to define. *See Corbett v. County of Lake*, 104 N.E.3d 389, 397 (Ill. 2017) (holding that a statutory term "is known by the company it keeps," and the court should "avoid ascribing to one word a meaning that is so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to legislative acts") (quotations omitted); *see also Vill. of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 304 (7th Cir. 2017) ("a word is given more precise content by the neighboring words with which it is associated") (quotation omitted).

Only information that is "biologically unique to the individual" is protected. 740 ILCS 14/5(c). The Illinois legislature was clear that it was the linking of biologically unique information to an individual that it sought to regulate, citing the public concern over "the use of biometrics *when such information is tied to finances and other personal information*." 740 ILCS 14/5(d) (emphasis added). The legislature sought to give each person control over the collection and use of her biometric identifiers and biometric information, because an "individual has no recourse" if that individual's identifying biometric data is "compromised." 740 ILCS 14/5(c); *see also* 740 ILCS 14/10; 740 ILCS 14/15(e)(2) (mandating that biometric identifiers and biometric information be protected in a manner consistent with other personal information that "can be used *to uniquely identify an individual* or an individual's account or property") (emphasis added).

The Complaint does not plead any fact from which to conclude that Apple uses the alleged face scans to identify an actual individual. In fact, the Complaint concedes that the alleged face scans are indefinite as to identity. Compl. ¶ 123 ("Defendant . . . does not know which nonusers' Biometric Data it is collecting."). Indeed, the only "identification" referenced in the Complaint is

related to the *user's* ability (and choice) to assign names to the albums in the People and Places folder.[4] *See, e.g.*, *id.* ¶¶ 146-47 (plaintiffs "tagged" individuals in the People album). The Complaint falls far short of alleging that user-supplied labels for the albums are attached to the underlying face scan or that names and face scans are ever accessed by Apple.

The documents cited in the Complaint and central to its allegations confirm this fatal defect. For example, one document states: "The Photos app recognizes the faces of people in your photos and groups them together. *You* can give names to faces . . . ." Ex. 1 to Roberts Decl. (cited at Compl. n.49) (emphasis added). The document continues to explain that "giv[ing] names to faces" is in actuality adding "a name *to your photos* to help keep your library organized." *Id.* The documents, together with the dearth of any other facts in the Complaint, establish that Apple does not: (1) know if a user chooses to organize photos by inputting names for the People albums, (2) have access to the names for the albums, or (3) access the underlying face scans with or without names attached.

The Complaint fails in its attempt to force an analogy of the allegations here to inapplicable cases in which companies, unlike Apple, allegedly used proprietary photo-based technologies to actually identify individuals. BIPA is not concerned with *how* facial measurements are taken, but rather "the potential intrusion on privacy posed by the unrestricted gathering of biometric information. The bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) *used to identify a person*." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1095-96 (N.D. Ill. 2017) (emphasis added); *see also id.* (". . . the 'face templates'

---

[4] Of course, the user also chooses the name to input, including whether to use an actual name or a nickname such as "Grammy." *See* Compl. ¶ 146 (showing screenshot of the People and Places folder of plaintiff Robinson's iPhone, which shows only first names for the People albums).

(as Rivera and Weiss call them) generated by Google do qualify as a 'biometric identifier' under the Privacy Act. For each face template, Google is creating a set of biology-based measurements ('biometric') that is ***used to identify a person*** ('identifier').") (emphasis added); *see also Monroy,* 2017 WL 4099846, at *1 ("If a face's geometry matches that of an individual already ***in its database***, ***Shutterfly suggests*** . . . ***the individual's name***. . . . If no match is found, Shutterfly prompts the user to enter a name.") (emphasis added); *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1105-06 (N.D. Ill. 2015) ("Here, [Norberg] alleges that [Shutterfly is] using his personal face pattern to recognize and identify [him] in photographs posted to [Shutterfly's photo sharing websites].");  *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1170-72 (N.D. Cal. 2016) (complaint alleged that if Facebook's "Tag Suggestions" program "recognizes and identifies one of the faces appearing in [a] photograph, ***Facebook will suggest that individual's name or automatically tag them***. In effect, ***the program*** puts names on the faces in photos . . . .") (emphasis added).

Apple believes privacy is a fundamental human right and affirmatively designs its technology with privacy at the forefront. In contrast to the cases described above, the alleged scans of face geometry that supposedly power the Photos app's sorting capability do not and cannot identify an individual; rather, Apple designed the technology such that identities are not tied to the byproducts of the facial recognition technology, and empowered users alone with choice and control over whether to apply names to the People albums on their devices.

## B.    BIPA does not apply because facial recognition takes place solely on the device.

The plaintiffs' claims also fail for the independent reason that the Complaint does not allege that Apple collects or possesses the alleged face scans generated by the plaintiffs' devices. By its express terms, BIPA applies only to those entities "in possession" of, or who "collect, capture, purchase, receive through trade, or otherwise obtain," biometric identifiers and biometric

information. 740 ILCS 14/15. Thus, to state a claim the plaintiffs must allege that Apple somehow obtained or gained control over the alleged scans and used them to identify individuals. *See, e.g.*, Merriam-Webster Dictionary (2020) (defining "collect" as "to gain or regain control of" and defining "capture" as "to take captive" or "to gain control of especially by force"). Rule 8(a) requires such a claim to be plausible and supported by factual content, *Talley*, 2020 WL 2308258, at *2, yet the Complaint offers only the speculative conclusion that Apple "possesses the Biometric Data" supposedly collected by the Photos app and "stored locally on the electronic devices." Compl. ¶¶ 71, 179. The plaintiffs have not pleaded any facts to support their conclusory allegation of such possession.

Indeed, throughout the Complaint, the plaintiffs allege that the facial recognition technology runs on the device and the putative face scans are stored locally on the solid state memory of the users' devices:

- ▪ ". . . Defendant collects Biometric Data of Plaintiffs and other Illinois citizens by collecting the face geometries of persons who appear in photographs on an Apple Device, and ***storing those face geometries in a database on the Apple Device***." *Id.* ¶ 3 (emphasis added).

- ▪ "Biometric Data taken from an Apple Device user's image library are stored in what Defendants calls a facial recognition database, or facial database, ***in the solid state memory on the user's Apple device***." *Id.* ¶ 71 (emphasis added).

- ▪ ". . . ***Defendant does not store or transfer*** all user Biometric Data on or by means of its servers . . . ." *Id.* ¶ 105 (emphasis added).

The documents referenced in the Complaint and properly considered by this Court confirm that the Photos app's facial recognition capabilities are performed exclusively on the device. For example, one page from Apple's website cited in the Complaint states that to protect user privacy, "all the face recognition and scene and object detection are done ***completely on your device***." Ex. 3 to Roberts Decl. (cited at Compl. n.25) (emphasis added). This page expressly incorporates and links to a continuation of the website, which contains a statement in bold letters that "**Face**

**recognition and scene and object detection are done completely on your device rather than in the cloud. So Apple doesn't know what's in your photos.**" Ex. 4 to Roberts Decl. The Complaint also cites an article in Apple's Machine Learning Journal titled "An On-device Deep Neural Network for Face Detection," which explains how Apple's stance on privacy led to Apple's decision to keep its facial recognition technology exclusively on users' devices. Ex. 2 to Roberts Decl. (cited at Compl. n.29).

The plaintiffs attempt to implicate Apple by asserting two inapplicable theories of liability. First, the Complaint asserts in conclusory fashion that Apple "wholly owns and exclusively controls" the Photos app that comes installed on certain Apple devices, and the Photos app automatically processes photos using facial recognition algorithms. Compl. ¶¶ 64, 85-87, 139. Apple's ownership of the code and licensing of software (neither of which is a biometric identifier or biometric information) is a red herring, as Apple does not own, control, access, or possess the device that runs the software. The ***plaintiffs*** own and control the devices and the physical media which run the processes and generate the alleged scans of face geometry. *Id.* ¶¶ 143-47. The plaintiffs concede that they, not Apple, choose when and how to use the devices, including the choice "to take or store photographs" on their devices. *Id.* ¶ 143. The plaintiffs have the unfettered choice to erase any or all data stored on their devices. Only the plaintiffs know the identities of the people in their photos. *See* Section IV.A, *supra*. Finally, the Complaint fails to cite anything that suggests that Apple reserves itself the right—after selling the device—to access the user's photos or associated information, much less that Apple has ever once done so.

Second, the Complaint asserts that Apple is vicariously liable for the actions of the Photos app, which allegedly serves as Apple's "software agent." Compl. ¶ 140. According to the Complaint, "Apple devices functioned as software agents subject to the actual authority of [Apple],

because [Apple] acted negligently in controlling its proprietary software installed on Apple Devices, or both." *Id.* ¶ 141. To reach this unfounded conclusion, the Complaint relies on four non-BIPA cases. The concept of the Photos app as Apple's "software agent" is based on a description in a patent claim construction decision that in no way applied vicarious liability principles in connection with software. *See Netfuel, Inc. v. F5 Networks, Inc.*, 2017 WL 2834538, at *1 (N.D. Ill. June 29, 2017). The remaining three cases are equally inapplicable. In *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, the Supreme Court held that developers of a file-sharing software could be secondarily liable for acts of copyright infringement committed by people who used the software if the developers intended or encouraged the infringing acts. 545 U.S. 913, 930 (2005). In *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, the operator of a network for delivering content over the internet was found to infringe a methods patent where the operator **required** users of its network to perform the infringing acts. 797 F.3d 1020, 1024 (Fed. Cir. 2015). And in *Shaw v. Toshiba America Information Systems, Inc.*, the court held that a software developer could be held liable under the Computer Fraud and Abuse Act (a claim not alleged here) for "knowingly caus[ing] the transmission of . . . code" and "intentionally caus[ing] damage" to a computer where it supplied code for use in another manufacturer's product despite knowing that the code would harm the end-users' computers. 91 F. Supp. 2d 926 (E.D. Tex. 1999).

None of these cases support expanding BIPA's plain language to cover a manufacturer or software designer, like Apple, that allegedly sells a facial recognition product. To the contrary, courts repeatedly have rejected similar BIPA theories when asserted against the providers of fingerprinting devices used by employers. In these cases, the courts adhered closely to the statutory text of BIPA and determined that liability extends only to the entity that actually possesses, collects, or obtains biometric identifiers or biometric information, not the provider of the device.

These courts dismissed BIPA claims against equipment manufacturers and vendors, even where the plaintiffs alleged that the defendants knew that the product was used to create biometric identifiers or information collected or used in violation of BIPA. *See, e.g.*, *Heard v. Becton, Dickinson & Co.*, ___ F. Supp. 3d ___, 2020 WL 887460, at *3-5 (N.D. Ill. 2020) (dismissing claim that did not allege "how the data made its way" to defendant's systems); *Kloss v. Acuant, Inc.*, 2020 WL 2571901, at *3 (N.D. Ill. May 21, 2020) (dismissing BIPA claim because "barebone factual support and recitation of statutory language" does not satisfy pleading burden); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing BIPA claim to the extent it alleged unlawful collection against vendor who supplied system used by employer to collect fingerprints; vendor did not collect); *Bernal v. ADP, LLC*, 2019 WL 5028609, at *1-2 (Ill. Cir. Ct. Aug. 23, 2019) (same). The result should be the same here.

The Complaint should be dismissed with prejudice for these reasons.

**C.      The plaintiffs lack standing under Article III of the U.S. Constitution to pursue their claim under BIPA Section 15(a).**

The plaintiffs assert that Apple violated Section 15(a) of BIPA because Apple does not make publicly available a data retention schedule and guidelines for permanently destroying the biometric identifiers and biometric information Apple allegedly possesses. Compl. ¶¶ 169-75. Beyond the core failure to plead any facts demonstrating Apple's possession of biometric identifiers or information necessary to sustain this claim, the Complaint also fails to allege any particularized harm to the plaintiffs that resulted from Apple's alleged failure to publish a schedule for the retention and deletion of such information.

The Seventh Circuit has recognized that a private entity's failure to publish a retention schedule for the biometric identifiers or biometric information in its possession, without more, does not satisfy Article III's requirements of a "concrete and particularized injury." *Bryant v.*

14

*Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Here, this provision of BIPA is inapplicable for the reasons stated above. *See* Sections IV.A and IV.B. In any event, Count II of the Complaint alleges only in conclusory fashion, without the barest of particulars, that the plaintiffs have "incurred injuries" and "imminent threats of serious harm." Compl. ¶ 174. The Seventh Circuit held in *Bryant* that such allegations are not enough. The Court should dismiss the Section 15(a) claims under Fed. R. Civ. P. 12(b)(1).

> **D.  The plaintiffs fail to allege that Apple sold or profited from biometric identifiers or biometric information.**

The plaintiffs' claim under Section 15(c) of BIPA should be dismissed for the additional and independent reason that the Complaint fails to allege a single instance where Apple sold biometric identifiers or biometric information. Again, in an effort to avoid the plain language of BIPA, the Complaint offers an interpretation that expands the reach of Section 15(c) beyond what the legislature intended. According to the Complaint, Apple violated Section 15(c) because it "profited from" biometric data by using "the face recognition 'feature' of its Photos App in order to advertise its operating systems and Apple Devices to potential users." Compl. ¶¶ 115, 181. Put differently, the plaintiffs seek to hold Apple liable under BIPA for nothing more than including desirable Photo app technology on certain iPhones and iPads.

The Complaint's interpretation applying Section 15(c) to the sale of a product "that includes a biometric-related feature . . . is plainly at odds with [] BIPA, which is designed to regulate and promote, but not inhibit, biometric-facilitated transactions." *Vigil v. Take-Two Interactive Software, Inc.*, 235 F. Supp. 3d 499, 512 n.9 (S.D.N.Y. 2017) (*dictum*), *dismissal aff'd sub nom.*, *Santana v. Take-Two Interactive Software, Inc.*, 717 F. App'x 12 (2d Cir. 2017). Section 15(c) applies only to sales, leases, or profits "from a person's biometric identifier or biometric information" by an entity "in possession" of such information. 740 ILCS 14/15(c). The legislature

15

could have banned the sale of technology that creates or enables the purchaser to collect biometric information, but did not. *See Lacey*, 904 N.E.2d at 25 (court must apply statute as written). The Complaint fails to allege any sale, lease, or other transaction involving such information from which Apple profited. Under the plaintiffs' theory, any manufacturer of biometric-based equipment could be held liable for its sales simply by virtue of the potential for the equipment to create or collect biometric identifiers or biometric information. That is not the law. "Promoting a transaction—here, the sale of [electronic devices]—by advertising a biometric-related feature does not contravene the statute." *Vigil*, 235 F. Supp. 3d at 512 n.9 (*dictum*).

The Court must apply the statute as written and dismiss this claim with prejudice.

**E.      The plaintiffs fail to allege that Apple acted intentionally or recklessly.**

BIPA authorizes the recovery of increased damages ($5,000 per violation) from private entities that "intentionally or recklessly" violate BIPA's requirements. 740 ILCS 14/20(2). "Intentional" conduct is "performed with a desire to cause consequences or at least a substantially certain belief that the consequences will result." *Ziarko v. Soo Line R. Co.*, 641 N.E.2d 402, 405 (Ill. 1994) (quotation omitted). "Recklessness," on the other hand, "denotes 'a course of action which shows an utter indifference to or a conscious disregard.'" *Resolution Tr. Corp. v. Franz*, 909 F. Supp. 1128, 1141 (N.D. Ill. 1995) (quoting *Ziarko*, 641 N.E.2d at 405). Although the plaintiffs seek heightened statutory damages under BIPA for intentional and reckless conduct, there are no allegations supporting scienter. Accordingly, the Court should strike the plaintiffs' prayer for statutory damages of $5,000 for each intentional and/or reckless violation of BIPA. *Namuwonge*, 418 F. Supp. 3d at 286 (striking heightened statutory damages demand under BIPA).

**V.      CONCLUSION**

For the foregoing reasons, Apple respectfully requests dismissal of the Complaint and each claim asserted therein with prejudice.

**Dated**: June 12, 2020

**Respectfully Submitted**,

Apple Inc.

By:  /s/ *Raj Shah*
     One of its attorneys

Isabelle L. Ord*
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105
isabelle.ord@dlapiper.com

Amanda Fitzsimmons*
DLA Piper LLP (US)
401 B. Street, Suite 1700
San Diego, California 92101
amanda.fitzsimmons@dlapiper.com

* admitted *pro hac vice*

Raj N. Shah (ARDC # 06244821)
Eric M. Roberts (ARDC # 6306839)
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
312.368.4000
raj.shah@dlapiper.com
eric.roberts@dlapiper.com

17

## Certificate of Service

I hereby certify that on June 12, 2020, I electronically filed the foregoing ***Memorandum in Support of Apple's Motion to Dismiss*** with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.


             /s/ *Raj Shah*
             Raj N. Shah