## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ILLINOIS

**ROSLYN HAZLITT**, **JANE DOE**, by and through next
friend **JOHN DOE**, **RICHARD** Robinson, and **YOLANDA
BROWN**, on behalf of themselves and all other persons
similarly situated, known and unknown,

        Plaintiffs,

  v.

**APPLE INC.**,

        Defendant.

Case No. 3:20-cv-00421-NJR

## APPLE INC.'S ANSWER AND AFFIRMATIVE DEFENSES

Apple Inc. ("Apple"), by its undersigned counsel, states the following answers and affirmative defenses. By omitting headings, footnotes, and images found in the plaintiffs' complaint, Apple does not admit—and specifically denies—the accuracy, completeness, and applicability of any factual content conveyed by such matters. Additionally, the Court remanded the causes of action in Counts II and III, alleging violations of sections 15(a) and 15(c) of the Illinois Biometric Information Privacy Act ("BIPA"), to the Circuit Court of Illinois for the Twentieth Judicial Circuit, St. Clair County ("the Remand Order"), and Apple makes no answer to allegations relevant only to those claims to the extent they are incorporated into the *verbatim* recitation of the plaintiffs' allegations below. Apple reserves the right to amend this answer and its affirmative defenses based on any ruling by this Court on Apple's currently pending motion to reconsider the Remand Order or Apple's petition to the Court of Appeals for the Seventh Circuit for leave to appeal the Remand Order. By submitting this answer, Apple does not waive any

objections arising from the Remand Order and reserves all substantive and procedural rights and objections that may arise from the splitting of this action between two courts, including but not limited to due process rights.

Stating further, and for the avoidance of doubt, Apple construes all references to "biometric data" or "Biometric Data," herein and in the plaintiffs' Complaint, to mean only: (1) a "biometric identifier" or (2) "biometric information," as those two terms are defined in 740 ILCS 14/10.

1.     *Plaintiffs allege that Defendant violated BIPA by collecting, possessing, and profiting from the biometric identifiers and biometric information (collectively, "Biometric Data") of Illinois citizens via Defendant's Photos software application ("Photos App"). For the reasons discussed in greater detail below, Defendant's violations of BIPA pose a serious threat of permanent harm to Illinois citizens.*

**ANSWER**: Apple admits only that it produces a Photos app. The remaining allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies such allegations and further states that the Complaint fails to state a claim against Apple.

2.     *Defendant's Photos App comes pre-installed on Defendant's phones, tablets, and computers ("Apple Devices"). The Photos App, which cannot be removed or modified, automatically collects face Biometric Data from Apple Device users' photographs. Defendant's Photos App collects Biometric Data without the knowledge or informed written consent of the Apple Device users or Apple Device nonusers—including minors—who appear in photographs on Apple Devices. Users of Apple Devices are not told by Defendant that it is collecting face Biometric Data, and cannot disable Defendant's collection of face Biometric Data.*

**ANSWER**: Apple admits that the Photos app is available for Apple iPhones, iPads, and Macs. Apple denies the remaining allegations in this paragraph.

3.     *Defendant's conduct violates BIPA in three ways: First, Defendant violates Section 15(b) by collecting the Biometric Data of Plaintiffs and other Illinois citizens. As described in*

2

*greater detail below, Defendant collects Biometric Data of Plaintiffs and other Illinois citizens by collecting the face geometries of persons who appear in photographs on an Apple Device, and storing those face geometries in a database on the Apple Device. Second, Defendant violates Section 15(a) by possessing the Biometric Data of Plaintiffs and other Illinois Citizens. As is likewise described below, Defendant possesses Biometric Data by exercising exclusive control over the face Biometric Data of Plaintiffs and other Illinois citizens, and by prohibiting Apple Device users and nonusers from accessing, modifying, or removing their face Biometric Data. Second, Defendant violates Section 15(a) by possessing the Biometric Data of Plaintiffs and other Illinois Citizens. As is likewise described below, Defendant possesses Biometric Data by exercising exclusive control over the face Biometric Data of Plaintiffs and other Illinois citizens, and by prohibiting Apple Device users and nonusers from accessing, modifying, or removing their face Biometric Data*

**ANSWER**: The Court remanded the plaintiffs' claims for alleged violations of Sections 15(a) and 15(c) of BIPA to the Circuit Court of Illinois for the Twentieth Judicial Circuit, St. Clair County, and no answer is made to allegations relevant only to those claims to the extent they are incorporated into this paragraph. The remaining allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

4.      *Through this lawsuit, Plaintiffs, on behalf of a similarly situated class, seek to enjoin Apple from collecting, possessing, and profiting from their Biometric Data in violation of BIPA, and seek to obtain actual and statutory damages for their injuries.*

**ANSWER**: Apple admits only that this paragraph purports to summarize the plaintiffs' claims. Apple denies all substantive allegations in this paragraph, denies that this action may be maintained individually or on behalf of any class, and further states that the Complaint fails to plead any cause of action against Apple.

5.      *Plaintiffs allege that Defendant violated BIPA by collecting their biometric identifiers and biometric information.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

6.     *Plaintiffs seek to represent a class of individuals whose face geometries were collected, stored, and/or used by Defendant, including through the use of Defendant's Photos App.*

**ANSWER**: Apple admits only that this paragraph purports to summarize the plaintiffs' claims. Apple denies all substantive allegations in this paragraph, denies that this action may be maintained individually or on behalf of any class, and further states that the Complaint fails to plead any cause of action against Apple.

7.     *Plaintiffs have suffered significant damage, as more fully described herein, because Defendant has collected their Biometric Data without their knowledge, consent, or understanding, thereby materially decreasing the security of this intrinsically inalterable information, and substantially increasing the likelihood that Plaintiffs will suffer as victims of fraud and/or identity theft.*

**ANSWER**: Denied.

8.     *Plaintiffs seek actual damages in addition to statutory damages, as provided below in the Prayer for Relief.*

**ANSWER**: Apple admits only that this paragraph purports to summarize the plaintiffs' claims. Apple denies all substantive allegations in this paragraph, denies any allegations of wrongdoing, and further states that the Complaint fails to plead any cause of action against Apple.

9.     *The remedies Plaintiffs seek are remedial, and not penal, in nature.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

10.     *Plaintiff Roslyn Hazlitt is a resident of Belleville in St. Clair County, Illinois.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

11.     *Plaintiff Jane Doe, a minor, is a resident of O'Fallon in St. Clair County, Illinois. John Doe, Jane Doe's next friend, is also a resident of O'Fallon in St. Clair County, Illinois.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

12.     *Plaintiff Richard Robinson is a resident of Troy in Madison County, Illinois..*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

13.     *Plaintiff Yolanda Brown is a resident of Godfrey in Madison County, Illinois.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

14.     *Plaintiffs' face geometries have been scanned by Defendant, and their Biometric Data were collected, stored, and used by Defendant, as more fully described herein.*

**ANSWER**: Denied.

15.     *Defendant is a California corporation that is registered to and does conduct business throughout Illinois and in St. Clair County.*

**ANSWER**: Apple admits that it is a California corporation that is registered to and does conduct business in Illinois. Apple denies any remaining allegations in this paragraph.

16.     *Defendant is a "private entity" under the meaning of BIPA. 740 ILCS 14/10.*

**ANSWER**: Apple admits that it is a corporation, which is included within BIPA's definition of "private entity," but denies that the Complaint alleges activity to which BIPA applies or that Apple has violated any obligation under BIPA.

17.     *This Court has personal jurisdiction over Defendant because, during the relevant time period, Defendant was registered to do business in Illinois, conducted business in Illinois, committed the violations alleged in Illinois, and purposefully availed itself of the laws of Illinois for the specific transactions and occurrences at issue.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required.

18.     *St. Clair County is an appropriate venue for this litigation because Defendant does business in St. Clair County, and is therefore a resident of St. Clair County. 735 ILCS 5/2-102.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required.

19.     *In addition, the transactions and occurrences out of which the causes of action pleaded herein arose or occurred, in part, in St. Clair County.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the Complaint pleads any claim against Apple. Apple

lacks knowledge or information sufficient to form a belief as to the truth of

the remaining allegations in this paragraph.

20.     *"Biometrics" refers to "biology-based set[s] of measurements." Rivera v. Google Inc., 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017). Specifically, "biometrics" are "a set of measurements of a specified physical component (eye, finger, voice, hand, face)." Id. at 1296.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple admits that this paragraph quotes or paraphrases

selected portions of the *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill.

2017) opinion, reserves all arguments with regard to the *Rivera* opinion, and

refers to BIPA for its complete text and denies any attempt to paraphrase or

characterize BIPA's complete text and all allegations inconsistent therewith.

21.     *BIPA was enacted in 2008 in order to safeguard Biometric Data due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA is codified as Act 14 in Chapter 740 of the Illinois Compiled Statutes.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple refers to BIPA for its complete text and denies

any attempt to paraphrase or characterize BIPA's complete text and all

allegations inconsistent therewith.

22.     *As set forth in BIPA, biologically unique identifiers, such as scans of individuals' facial geometry, cannot be changed. 740 ILCS 14/5(c). As is likewise explained in BIPA, the inalterable nature of individuals' biologically unique identifiers presents a materially heightened risk of serious harm when Biometric Data is not protected in a secure and transparent fashion. 740 ILCS 14/5(d) − (g).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

23.     *As a result of the need for enhanced protection of Biometric Data, BIPA imposes various requirements on private entities that collect or possess individuals' biometric identifiers, including scans of individuals' facial geometries.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

24.     *Among other things, BIPA regulates "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

25.     *BIPA applies to entities that interact with two forms of Biometric Data: biometric "identifiers" and biometric "information." 740 ILCS 14/15(a) − (e).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary,

Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

26.     *"Biometric identifiers" are physiological, as opposed to behavioral, characteristics. Examples include, but are not limited to, face geometry, fingerprints, voiceprints, DNA, palmprints, hand geometry, iris patterns, and retina patterns. As the Illinois General Assembly has explained: Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions. 740 ILCS 14/5(c). Moreover, A person cannot obtain new DNA or new fingerprints or new eyeballs for iris recognition, at least not easily or not at this time. Replacing a biometric identifier is not like replacing a lost key or a misplaced identification card or a stolen access code. The Act's goal is to prevent irretrievable harm from happening and to put in place a process and rules to reassure an otherwise skittish public. Sekura v. Krishna Schaumburg Tan, Inc., 2018 IL App (1st) 180175, ¶ 59, 115 N.E.3d 1080, 1093, appeal denied, 119 N.E.3d 1034 (Ill. 2019).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple admits that this paragraph quotes or paraphrases selected portions of the *Sekura v Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, 115 N.E.3d 1080, appeal denied, 119 N.E.3d 1034 (Ill. 2019) opinion, reserves all arguments with regard to the *Sekura* opinion, and refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

27.     *In BIPA's text, the General Assembly provided a non-exclusive list of protected "biometric identifiers," including "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILLS 14/10. In this case, the biometric identifiers at issue are the scans of face geometries of individuals, including Plaintiffs, collected by Defendant via its proprietary software without any notice to or consent from the individuals whose biometric identifiers are collected.*

**ANSWER**: Apple denies the allegations of the final sentence in this paragraph. The remaining allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

28.     *"Biometric information" consists of biometric identifiers used to identify a specific person. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." Id. (emphasis added).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

29.     *In BIPA, the General Assembly identified four distinct activities that may subject private entities to liability: (1) collecting Biometric Data, 740 ILCS 14/15(b); (2) possessing Biometric Data, 740 ILCS 14/15(a); (3) profiting from Biometric Data, 740 ILCS 14/15(c); and (4) disclosing Biometric Data, 740 ILCS 14/15(d). BIPA also created a heightened standard of care for the protection of Biometric Data. 740 ILCS 14/15(e).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

30. *As the Illinois Supreme Court has held, BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." Rosenbach v. Six Flags Entm't Corp., 2019 IL 123186, ¶ 33, 129 N.E.3d 1197, 1206 (Ill. 2019). The Illinois Supreme Court further held that when a private entity fails to comply with BIPA "that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." Id.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple admits that this paragraph quotes or paraphrases

selected portions of the *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186,

129 N.E.3d 1197, 1206 (Ill. 2019) opinion, reserves all arguments with regard

to the *Rosenbach* opinion, and refers to BIPA for its complete text and denies

any attempt to paraphrase or characterize BIPA's complete text and all

allegations inconsistent therewith.

31. *BIPA establishes categories of prohibited conduct related to Biometric Data, and establishes requirements that parties must follow when interacting with Biometric Data. As Section 15(b) provides: No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2)informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS 14115(b).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to

which no answer is required. To the extent an answer is deemed necessary,

Apple refers to BIPA for its complete text and denies any attempt to

paraphrase or characterize BIPA's complete text and all allegations

inconsistent therewith.

32. *To "collect" means "to bring together into one body or place," or "to gather or exact from a number of persons or sources."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

33. *Collection, therefore, is the act of gathering together, and is separate from possession, which is not an element of collection.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

34. *BIPA imposes three requirements that must be satisfied before any private entity may "collect" biometric information: (a) First, the private entity must inform the individual in writing that the individual's biometric information is being collected or stored. 740 ILCS 14/15(b)(1). (b) Second, the private entity must inform the individual in writing of the purpose and length of time for which their biometric information is being collected, stored, and used. 740 ILCS 14/15(b)(2). (c) Finally, the private entity must receive a written release executed by the individual. 740 ILCS 14/15(b)(3).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

12

35.     *BIPA defines a "written release," outside the employment context, to mean "informed written consent." 740 LLCS 14/10.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to

which no answer is required. To the extent an answer is deemed necessary,

Apple refers to BIPA for its complete text and denies any attempt to

paraphrase or characterize BIPA's complete text and all allegations

inconsistent therewith.

36.     *With respect to possession of Biometric Data, BIPA provides as follows: A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. 740 ILCS 14/15(a). Entities in possession of Biometric Data therefore must develop and make public a written policy containing a retention schedule for Biometric Data, as well as guidelines for the destruction of Biometric Data. Id.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to

which no answer is required. To the extent an answer is deemed necessary,

Apple refers to BIPA for its complete text and denies any attempt to

paraphrase or characterize BIPA's complete text and all allegations

inconsistent therewith.

37.     *BIPA requires that the required public, written policy include information about how the entity will destroy Biometric Data. Id.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple refers to BIPA for its complete text and denies

13

any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

38.     *The plain and ordinary meaning of the word "possession" is "the act of having or taking into control" or "control or occupancy of property without regard to ownership."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

39.     *A private entity that controls Biometric Data, therefore, possesses Biometric Data under Section 15(a).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

40.     *Section 15(a) regulates Biometric Data that is controlled by a private entity regardless of whether that entity owns the Biometric Data.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

41.     *Here, for example, Defendant controls Plaintiffs' Biometric Data, even though Defendant does not own that data. Therefore, as alleged in further detail below, Defendant possesses Plaintiffs' Biometric Data under Section 15(a).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

42.     *BIPA additionally bars private entities from profiting from Biometric Data. Section 15(c) provides as follows: No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information. 740 ILCS 14/15(c).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

43.     *Section 15(c) is an unqualified prohibition on profiting from Biometric Data. Section 15(c) applies to this case, for among other reasons, because Defendant developed the face recognition "feature" of its Photos App in order to competitively position its devices and software in the marketplace, compete with other software applications, and thereby profit.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegation that it violated Section 15(c) of BIPA, refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith.

44.     *Extracting an individual's face geometry data in order to confirm a subsequent match of the individual's face — also known as "facial recognition" or "faceprinting" — uses biological characteristics to verify an individual's identity.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

45.     *Use of facial recognition technology can be highly lucrative. The global facial recognition market size is expected to grow dramatically — according to one source, from $3.2 billion in 2019 to $7 billion by 2024.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

46.     *However, the potential dangers of the use of facial recognition technology and other biometric identifiers are widely known.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

47.     *"Stolen biometric identifiers . . . can be used to impersonate consumers, gaining access to personal information."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth any biometric identifier or theft or use of any biometric identifier.

Apple lacks knowledge or information sufficient to form a belief as to

others' uses of biometric identifiers and therefore denies any remaining

allegations of this paragraph.

48.     *Unlike other identifiers such as Social Security or credit card numbers, which can be changed if compromised or stolen, biometric identifiers linked to a specific voice or face cannot be modified—ever. These unique and permanent biometric identifiers, once exposed, leave victims with no means to prevent identity theft and unauthorized tracking. Recognizing this, the Federal Trade Commission has urged companies using facial recognition technology to ask for consent before scanning and extracting Biometric Data from photographs.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple denies that the allegations of the Complaint set

forth with respect to the plaintiffs or Apple any biometric identifiers or

biometric data or theft, use, exposure, scanning, or extracting of any

biometric identifiers or biometric data. Apple lacks knowledge or

information sufficient to form a belief as to others' use, scanning, or

extraction of biometric identifiers or biometric data and therefore denies

any remaining allegations of this paragraph.

49.     *The threats posed by facial recognition technology can be more insidious than the threats posed by the use of other biometric information, such as fingerprints. Indeed, as commentators have recognized, "facial recognition creates acute privacy concerns that fingerprints do not." Once a person or entity has an individual's facial Biometric Data: [T]hey can get your name, they can find your social networking account, and they can find and track you in the street, in the stores that you visit, the . . . buildings you enter, and the photos your friends post online. Your face is a conduit to an incredible amount of information about you, and facial recognition technology can allow others to access all of that information from a distance, without your knowledge, and in about as much time as it takes to snap a photo.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to the plaintiffs or Apple any facial biometric data or use or possession of any facial biometric data. Apple lacks knowledge or information sufficient to form a belief as to others' use or possession of facial biometric data or facial recognition technology and therefore denies any remaining allegations of this paragraph.

50.     *Researchers have even demonstrated the ability to "infer personally predictable sensitive information through face recognition."*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the same.

51.     *Further, facial recognition technology may "be abused in ways that could threaten basic aspects of our privacy and civil liberties[:]" Biometrics in general are immutable, readily accessible, individuating, and can be highly prejudicial. And facial recognition takes the risks inherent in other biometrics to a new level. Americans cannot take precautions to prevent the collection of their image. We walk around in public. Our image is always exposed to the public. Facial recognition allows for covert, remote, and mass capture and identification of images, and the photos that may end up in a data base include not just a person's face but also what she is wearing, what she might be carrying, and who she is associated with. This creates threats to free expression and to freedom of association that are not evident in other biometrics.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to plaintiffs or Apple any biometric data or use, abuse, capture, prejudice, or threat relating to biometric data. Apple lacks knowledge or information sufficient to form a belief as to others' use, abuse,

capture, or identification of images or biometric data and therefore denies

any remaining allegations of this paragraph.

52.     *Many experts believe that "facial recognition technology is the most uniquely dangerous surveillance mechanism ever invented."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph, and

therefore denies the same.

53.     *Because of these dangers, "privacy protections," such as those found in BIPA, are necessary for "all facial recognition technologies, including those that do not individually identify consumers."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple lacks knowledge or information sufficient to

form a belief as to the truth of the allegations in this paragraph, and

therefore denies the same. Stating further, privacy is one of Apple's core

values; Apple therefore designs its products and features from the ground

up with privacy in mind so they protect users' privacy and give users

control over their information.

54.     *Indeed, the Illinois Supreme Court has held that in BIPA the Illinois "General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." Rosenbach, 129 N.E.3d at 1206.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

19

deemed necessary, Apple admits that this paragraph quotes or paraphrases selected portions of the *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 129 N.E.3d 1197, 1206 (Ill. 2019) opinion, reserves all arguments with regard to the *Rosenbach* opinion, and refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

55.     *In so holding, the Court explicitly recognized the "difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised." Id. As it further held, "[t]he situation is particularly concerning, in the legislature's judgment, because [t]he full ramifications of biometric technology are not fully known.'" Id. (citing BIPA).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple admits that this paragraph quotes or paraphrases selected portions of the *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 129 N.E.3d 1197, 1206 (Ill. 2019) opinion, reserves all arguments with regard to the *Rosenbach* opinion, and refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

56.     *Storing Biometric Data on personal devices (as opposed to on a server) does not remove the substantial dangers associated with Biometric Data, because personal devices are intrinsically vulnerable to hackers and other malicious bad actors. Instead, storing Biometric Data on personal devices creates an independent threat of serious harm that is associated with each personal device that contains Biometric Data.*

<u>**ANSWER**</u>: Denied.

57.     *Moreover, Biometric Data may persist on discarded devices. "Realistically, unless you physically destroy a device, forensic experts can potentially extract data from it." The Federal Trade Commission has recognized that sensitive data on individual devices poses grave risks, including of identity theft.*

<u>**ANSWER**</u>: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to plaintiffs or Apple any biometric data or extraction of biometric data. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

58.     *The use of Biometric Data "leads to the fear that a data breach or sale by one holder of a piece of a person's biometric information would compromise the security of all relationships that are verified by that same piece."*

<u>**ANSWER**</u>: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to plaintiffs or Apple any biometric data, data breach, or sale of biometric data. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the same.

59.     *This fear is not based on mere conjecture. Biometric Data has been illicitly targeted by hackers. For example, a security firm recently uncovered a "major breach" of a biometric system used by banks, police, defense firms, and other entities. This breach involved exposure of extensive biometric and other personal data, including facial recognition data and fingerprints. Id.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to plaintiffs or Apple any biometric data or targeting or breach of biometric data. Apple lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies the same.

60.     *Even anonymized Biometric Data poses risks. For example, according to a recent report: In August 2016, the Australian government released an "anonymized" data set comprising the medical billing records, including every prescription and surgery, of 2.9 million people. Names and other identifying features were removed from the records in an effort to protect individuals' privacy, but a research team from the University of Melbourne soon discovered that it was simple to re-identify people, and learn about their entire medical history without their consent, by comparing the dataset to other publicly available information, such as reports of celebrities having babies or athletes having surgeries. Indeed, "[t]here is a growing skepticism in the field of data protection and privacy law that biometric data can never truly be deidentified or anonymized."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to plaintiffs or Apple any biometric data, re-identification of anonymous data, or release of biometric data. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the same.

61.     *The collection and use of Biometric Data is especially problematic in relation to the collection of Biometric Data from minors, who cannot provide informed consent and may be unaware of the serious harms that can result from the release of Biometric Data.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth the collection or use of minors' biometric data. Apple lacks knowledge or information sufficient to form a belief as to the truth of the incomplete hypothetical following the comma, and therefore denies the same.

62.     *The heightened sensitivity of minors' personal data has been recognized by the federal government in the Children's Online Privacy Protection Act, which provides special protections for children's personal data.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint implicate the Children's Online Privacy Protection Act ("COPPA"), refers to COPPA for its complete text, and denies any attempt to paraphrase or characterize COPPA and all allegations inconsistent therewith.

63.     *"The monetization of children's biometric . . . data is also concerning even if such data are anonymized." Even "before minors come of age their immutable biometric or health-related data could be collected[.]" Once a minor's biometric information is compromised, the damage can be permanent.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies that the allegations of the Complaint set forth with respect to plaintiffs or Apple any biometric data or collection or compromise of biometric data. Apple lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of this

paragraph and therefore denies the same.

64.     *Defendant's facial recognition technology is offered as a "feature" of its Photos App that is included by default in its operating systems as well as pre-installed on its devices sold to customers.*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by

virtue of their use of the undefined phrases "facial recognition technology,"

"operating systems," and "devices sold to customers." Apple admits only

that the Photos app is built into certain operating systems for certain

devices designed by Apple. Apple denies any remaining allegations in this

paragraph.

65.     *Defendant began automatically collecting Biometric Data through iPhones via its Photos App with the release of its operating system iOS, version 10, on June 13, 2016. This operating system included the Photos App.*

**ANSWER**: Apple admits only that the Photos app was built into iOS 10.

Apple denies the remaining allegations in this paragraph.

66.     *Defendant's Photos App is included on iOS, iPadOS, and MacOS operating systems, and is present on Apple Devices. These operating systems and the Photos App come preinstalled on Apple Devices.*

**ANSWER**: Apple admits that the Photos app is built into iOS, iPadOS, and

MacOS and that Apple produces certain devices running these operating

systems. Apple denies any remaining allegations in this paragraph.

67.     *The facial recognition "feature" of Defendant's Photos App functions by scanning a user's photo library for faces, and then, using facial recognition technology that extracts biometric identifiers from photographs, adding frequently found faces to the user's People album.*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by virtue of their use of the undefined phrases "facial recognition" and "facial recognition technology." Apple admits that the Photos app attempts to detect the faces in photos on the user's device and, if the Photos app detects a face, may sort a photo into a People album. Apple denies the remaining allegations in this paragraph.

68.    *In U.S. Patent No. 9,977,952 (filed Oct. 31, 2016), Defendant explained this process as follows: Facial recognition (or recognition) relates to identifying a person represented in an image. Recognition can be accomplished by comparing selected facial features from a graphical face to a facial database. Facial recognition algorithms can identify faces by extracting landmarks corresponding to facial features from the image. For example, an algorithm may analyze the relative position, size, and shape of the eyes, nose, cheekbones, and jaw. Id. at 1:32-40.*

**ANSWER**: Apple admits that it holds U.S. Patent 9,977,952. Apple refers to the text of the patent in its entirety and denies any attempt to paraphrase or characterize the patent's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

69.    *Accordingly, the Photos App creates a scan of face geometry, which BIPA defines as a "biometric identifier." See 740 ILCS 14/10.*

**ANSWER**: Denied.

70.    *Defendant's facial recognition algorithms are run on Apple Devices.*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by virtue of their use of the undefined phrase "facial recognition algorithms." Apple admits that all review and grouping of photos by the Photos app occurs entirely on the user's device. Apple denies any remaining allegations in this paragraph.

71.    *Biometric Data taken from an Apple Device user's image library are stored in what Defendant calls a facial recognition database, or facial database, in the solid state memory on the user's Apple Device.*

**ANSWER**: Denied. Stating further, Apple states that all review and grouping

of photos by the Photos app occurs entirely on the user's device, but that

the Photos app does not create or rely on biometric data.

72.    *Not only does Defendant use face geometries to identify individuals, with iOS version 11 it uses face geometries to model users faces and track the users' expressions in real time. Defendant calls this "intelligent face recognition."*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and

argument to which no answer is required. To the extent an answer is

deemed necessary, Apple denies the allegations in this paragraph. Stating

further, Apple refers to

> https://developer.apple.com/documentation/arkit/tracking_and_
> visualizing_faces,
>
> https://developer.apple.com/videos/play/tech-talks/601,
>
> https://developer.apple.com/documentation/vision/tracking_the
> _user_s_face_in_real_time, and
>
> https://www.apple.com/ios/photos

for their complete text and denies any attempt to paraphrase or characterize

their complete text and all allegations inconsistent therewith.

73.    *Defendant has published the following visualization of the face geometry it creates from pictures in users' photo libraries:*

**ANSWER**: Denied.

74.    *After creating facial templates, Defendant uses facial recognition algorithms to analyze digital photographs stored on its devices and automatically group photographs into albums based on whether a person's face is in the photograph. Children and minors are included among those whose facial geometries are analyzed and grouped by Defendant.*

**ANSWER**: Denied.

75.    *Defendant's facial recognition algorithms calculate a unique digital representation of faces based on geometric attributes, such as distance between the eyes, width of the nose, and other features.*

**ANSWER**: Denied.

76.    *Defendant's software collects Biometric Data to group all photographs that include a particular person's face into an album or folder.*

**ANSWER**: Denied.

77.    *Defendant creates a unique faceprint for every person appearing in any photograph stored using its Photos App.*

**ANSWER**: Denied.

78.    *Defendant collects this face Biometric Data without obtaining consent, let alone the "informed written consent" required by BIPA.*

**ANSWER**: Denied.

79.    *Defendant's devices, further, collect Biometric Data from all individuals, including minors, whose faces appear in Apple Device users' photographs — not just from Apple Device users.*

**ANSWER**: Denied.

80.    *Defendant confirms these capabilities and seeks to profit from its collection of Biometric Data by advertising its Photos App as being able to "recognize the people, scenes, and objects in [photographs]."*

**ANSWER**: Apple denies the allegations in this paragraph. Stating further, Apple refers to the version of the support article appearing at https://support.apple.com/en-us/HT207103 as of March 3, 2020, for its complete text and denies any attempt to paraphrase or characterize its complete text and all allegations inconsistent therewith.

81.     *Defendant further advertises that its Photos App "uses advanced computer vision to scan all of your photos" so that users can "[s]ort your images by your favorite subjects — the people in your life."*

**ANSWER**: Apple admits that this paragraph quotes or paraphrases portions of a support article appearing at https://support.apple.com/en-us/HT207103 as of March 3, 2020, refers to the text of the article in its entirety, and denies any attempt to paraphrase or characterize the article's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

82.     *In order to sort photos, Defendant admits that its Photos App uses "[i]ntelligent face recognition and location identification."*

**ANSWER**: Apple admits that this paragraph quotes or paraphrases portions of a page on the Apple website (https://www.apple.com/ios/photos/), refers to the text of that page in its entirety, and denies any attempt to paraphrase or characterize the page's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

83.     *Defendant advertises to users the ability "to find the exact photos you're looking for, based on who you were with or where you were when you took them."*

**ANSWER**: Apple admits that this paragraph quotes or paraphrases portions of a page on the Apple website (https://www.apple.com/ios/photos/), refers to the text of that page in its entirety, and denies any attempt to paraphrase or characterize the page's complete text and all allegations

inconsistent therewith. Apple denies any remaining allegations in this

paragraph.

84.     *Defendant collects biometric identifiers and biometric information for individuals whose faces appear in photographs stored on Apple Devices. These Biometric Data are catalogued on the Photos App.*

**ANSWER**: Denied.

85.     *Defendant's collection of biometric identifiers and biometric information through its Photos App is automatic and occurs without the involvement or consent of an Apple Device user whenever a new photograph is stored on an Apple Device.*

**ANSWER**: Denied.

86.     *Apple Device users cannot disable Defendant's facial recognition technology, and cannot prevent Defendant's collection of Biometric Data from occurring.*

**ANSWER**: Denied.

87.     *Defendant provides no mechanism by which users or nonusers may opt out of the collection of their Biometric Data.*

**ANSWER**: Denied.

88.     *Consumers who buy Apple Devices own the hardware but merely license the software necessary for the device to function. That software is wholly owned and controlled by Defendant.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to

which no answer is required. To the extent an answer is deemed necessary,

Apple admits only that: (1) device users own and possess the device

hardware and control their use of the devices and the software on the

devices; and (2) the software license agreements cited in the footnote to this

paragraph     (https://www.apple.com/legal/sla/docs/iOS13_iPadOS13.

pdf   and   https://www.apple.com/legal/sla/docs/macOSCatalina.pdf)

state that the Apple Software (as defined in each agreement) "are licensed, not sold, to you by Apple Inc. ('Apple') for use only under the terms of this License. Apple [and/or Apple's] licensors retain ownership of the Apple Software itself and reserve all rights not expressly granted to you." Apple denies any remaining allegations in this paragraph.

89.     *Defendant's applicable End User License Agreements ("EULAs") provide as follows: "The software . . . [is] licensed, not sold, to you by Apple Inc. (`Apple') for use only under the terms of this License. Apple and its licensors retain ownership of the Apple Software itself and reserve all rights not expressly granted to you."*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the "applicable End User License Agreements ('EULAs')." Apple admits only that this paragraph cites and quotes or paraphrases portions of the iOS and iPadOS Software License Agreement for iOS 13 and iPadOS13 (https://www.apple.com/legal/sla/docs/iOS13_iPadOS13.pdf, the "iOS 13 and iPadOS 13 SLA"), refers to the text of the iOS 13 and iPadOS 13 SLA in its entirety, and denies any attempt to paraphrase or characterize the license's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

90.     *The Apple Device user is granted "a limited non-exclusive license to use the Apple Software on a single Apple-branded Device" and cannot alter the software.*

**ANSWER**: Apple admits only that this paragraph cites and quotes or paraphrases portions of the iOS 13 and iPadOS 13 SLA, refers to the text of the iOS 13 and iPadOS 13 SLA in its entirety, and denies any attempt to paraphrase or characterize the license's complete text and all allegations

inconsistent therewith. Apple denies any remaining allegations in this

paragraph.

91.     *Because disabling facial recognition is not permitted by Defendant, the use of Apple Devices to take or store photographs is conditioned on the collection of Biometric Data.*

**ANSWER**: Denied.

92.     *Defendant indiscriminately collects Biometric Data for all photographic subjects, including customers, non-customers, and minors incapable of providing informed consent.*

**ANSWER**: Denied.

93.     *Defendant publishes the "Machine Learning Journal," which contains posts dedicated to describing the development of various of Defendant's products. In one such post from November 2017, Defendant described the use of deep learning to facilitate the facial recognition feature used by the Photos App as packaged in iOS version 10. Defendant describes the below figure as a "[f]ace detection workflow.*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by

virtue of their use of the undefined phrase "facial recognition." Apple

admits that it publishes the Machine Learning Journal

(https://machinelearning.apple.com/). Apple further admits that this

paragraph purports to quote from or paraphrase portions of the November

2017 article "An On-device Deep Neural Network for Face Detection",

available at https://machinelearning.apple.com/research/face-detection,

refers to the text of the article in its entirety, and denies any attempt to

paraphrase or characterize the article's complete text and all allegations

inconsistent therewith. Apple denies any remaining allegations in this

paragraph.

94.     *As this diagram demonstrates, the Photos App receives a photograph as input and employs an algorithm that iterates its face detection process in increasingly finer detail in an effort to create a "final prediction of the faces in the image."*

**ANSWER**: Apple admits that this paragraph purports to quote from or paraphrase portions of the November 2017 article "An On-device Deep Neural Network for Face Detection", available at https://machinelearning. apple.com/research/face-detection, refers to the text of the article in its entirety, and denies any attempt to paraphrase or characterize the article's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

95.     *At minimum, this demonstrates that when Defendant's Photos App utilizes its facial recognition "feature," Defendant collects "biometric information" as defined by BIPA.*

**ANSWER**: Denied.

96.     *However, Defendant failed to obtain informed written consent prior to collecting this biometric information as required by BIPA.*

**ANSWER**: Denied.

97.     *In its '952 Patent, Defendant describes a method "for organizing images, such as digital images, by correlating one or more faces represented in the images." U.S. Patent No. 9,977,952 (filed Oct. 31, 2016) at 1:18-20.*

**ANSWER**: Apple admits that it holds U.S. Patent 9,977,952. Apple refers to the text of the patent in its entirety and denies any attempt to paraphrase or characterize the patent's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

98.     *Defendant explains in the '952 Patent that its invention relates to "[f]acial recognition algorithms." Id. at 1:36-38.*

**ANSWER**: Apple admits that it holds U.S. Patent 9,977,952. Apple refers to

the text of the patent in its entirety and denies any attempt to paraphrase or

characterize the patent's complete text and all allegations inconsistent

therewith. Apple denies any remaining allegations in this paragraph.

99.   *On information and belief, Defendant has implemented the methods and embodiments described in the '952 Patent in its Photos App in collecting Biometric Data from Plaintiffs and other Illinois residents.*

**ANSWER**: Apple admits only that it holds U.S. Patent 9,977,952. Apple

denies any remaining allegations in this paragraph.

100.   *Defendant has explained the "advantages" of its automatic collection of biometric identifiers and automatic population of albums by persons in photographs on Apple Devices. One such advantage that Defendant has identified involves helping Apple Device users to understand the functionality of Defendant's Photos App: Organizing images by the people represented in the media provides several potential advantages. For example, such an organizational scheme can be intuitive for users of an image system, enabling users to quickly understand the functioning of the system. Further, the burden of manually organizing many images can be substantially eliminated or reduced. In addition, images can be accurately grouped based on a person represented in the images. Accurately grouping images can provide improved accessibility, organization and usability of the images by users. Id at 3:4-13.*

**ANSWER**: Apple admits that it holds U.S. Patent 9,977,952. Apple refers to

the text of the patent in its entirety and denies any attempt to paraphrase or

characterize the patent's complete text and all allegations inconsistent

therewith. Apple further admits that it has designed the Photos app to help

users find, edit, and share their best shots (https://apple.com/ios/photos).

Apple denies any remaining allegations in this paragraph.

101.   *After biometric identifiers are collected and Defendant's software has a sufficient sampling of images, the Photos App applies an algorithm to identify the Apple Device user, thereby creating biometric information. The algorithm also uses biometric identifiers collected from images to create individualized groupings of all photographs that include a particular person, such as a friend or family member of the user.*

**ANSWER**: Denied.

102.    *Contrary to the requirements of BIPA, Defendant has not, despite its collection of Biometric Data, developed any written policy, made available to the public, establishing a retention schedule or guidelines for permanently destroying Biometric Data.*

**ANSWER**: Apple denies that the Complaint alleges activity to which section

15(a) of BIPA applies and denies the allegations in this paragraph.

103.    *Consequently, Apple Devices are currently incapable of lawful use in Illinois, because they automatically collect biometric information without consent in violation of BIPA, and because the Apple Device user is prohibited by Defendant's EULAs from altering Defendant's software, which Defendant alone owns and controls, to prevent the unlawful collection of the Biometric Data of the user and those whose photographs appear on the user's device.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to

which no answer is required. To the extent an answer is deemed necessary,

Apple denies the allegations in this paragraph.

104.    *Defendant intentionally designed and licensed the Apple Devices to be incapable of lawful use in Illinois.*

**ANSWER**: Denied.

105.    *Although, on information and belief, Defendant does not store or transfer all user Biometric Data on or by means of its servers, it has complete and exclusive control over the Biometric Data on Apple Devices. To be clear, Defendant controls: •Whether biometric identifiers are collected; •What biometric identifiers are collected; •The type of Biometric Data that are collected and the format in which they are stored; •The facial recognition algorithm that is used to collect Biometric Data; •What Biometric Data are saved; •Whether biometric identifiers are used to identify users (creating biometric information); •Whether Biometric Data are kept locally on users' Apple Devices; •Whether Biometric Data are encrypted or otherwise protected; and •How long Biometric Data are stored.*

**ANSWER**: Apple admits that it does not store or transfer user biometric data

on or by means of its servers. Apple denies the remaining allegations in this

paragraph.

106.    *The user of an Apple Device, in contrast, has no ability to control the Biometric Data on the user's Apple Device.*

**ANSWER**: Denied.

107.    *The user has no control over whether Biometric Data is collected from the user's photo library.*

**ANSWER**: Denied.

108.    *On Defendant's iPhone and iPad devices, the Photos App automatically collects biometric identifiers while running in the background.*

**ANSWER**: Denied.

109.    *On Macintosh computers, the Photos App collects biometric identifiers from a user's image library as soon as the Photos App is opened.*

**ANSWER**: Denied.

110.    *Users cannot disable the collection of Biometric Data, cannot limit what information is collected or from whom information is collected, cannot remove the People folder, and cannot delete the database of facial recognition information that Defendant creates or any information in that database.*

**ANSWER**: Denied.

111.    *Indeed, Defendant's EULAs specifically prohibit users from modifying Defendant's software to prevent the collection of Biometric Data.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief as to the meaning of "Defendant's EULAs." Apple admits only that this paragraph cites the iOS 13 and iPadOS 13 SLA, refers to the text of the iOS 13 and iPadOS 13 SLA in its entirety, and denies any attempt to paraphrase or characterize the license's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

112.    *Defendant only allows users to use Apple Devices on the condition that Defendant collects Biometric Data.*

**ANSWER**: Denied.

113.    *Defendant fully controls the Biometric Data on Apple Devices, and therefore possesses it because, for among other reasons, Defendant forbids users from disabling the Biometric Data collection of Apple Devices.*

**ANSWER**: Denied.

114.    *Defendant profits from the Biometric Data collected by Apple Devices through the sale of those devices.*

**ANSWER**: Apple denies that the Complaint alleges activity to which section

15(c) of BIPA applies and denies the allegations in this paragraph.

115.    *Defendant uses the face recognition "feature" of its Photos App in order to advertise its operating systems and Apple Devices to potential users.*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by

virtue of their use of the undefined phrase "face recognition." Apple admits

only that it publicly promotes the various benefits of the Photos app, which

is built into certain operating systems for certain devices designed by

Apple. Apple denies any remaining allegations in this paragraph.

116.    *Defendant advertises its Photos App as being able to "recognize the people, scenes, and objects in [photographs]," and that it "uses advanced computer vision to scan all of your photos" so that users can "[s]ort your images by your favorite subjects — the people in your life. Defendant also advertises that users have the ability "to find the exact photos you're looking for, based on who you were with or where you were when you took them."*

**ANSWER**: Apple admits that this paragraph quotes or paraphrases portions

of a support article appearing at https://support.apple.com/en-

us/HT207103 as of March 3, 2020, and Photos app webpage appearing at

https://www.apple.com/ios/photos/, refers to the text of the support

article and webpage in their entirety, and denies any attempt to paraphrase

or characterize the article's or webpage's complete text and all allegations

inconsistent therewith. Apple denies any remaining allegations in this

paragraph

117.    *Defendant developed these "features" for its Photos App to compete with similar features being offered on other devices, giving Defendant a competitive edge that allowed Defendant to profit from the sale of Apple Devices.*

**ANSWER**:  Apple  admits  that:  (1) there  are  developers  of  software

applications  for  the  storage  of  photos  other  than  Apple,  (2) there  are

manufacturers  of  "other  devices,"  (3) that  Apple's  products  and  services

face  competition,  and  (4) that  Apple  is  a  for-profit  corporation.  Apple

denies any remaining allegations in this paragraph.

118.    *For the reasons set forth above, among others, Defendant profits from Biometric Data.*

**ANSWER**: Denied.

119.    *Defendant is prohibited from profiting from any "person's or . . . customer's biometric information" because Defendant is "a private entity in possession of a biometric identifier." 740 ILCS 14/15(c). Therefore, the fact that Defendant profits from the Biometric Data it collects is unlawful.*

**ANSWER**: Apple denies that the Complaint alleges activity to which section

15(c) of BIPA applies and denies the allegations in this paragraph

120.    *Defendant has failed to comply with BIPA's requirements concerning the collection and possession of Biometric Data. With respect to its collection of Biometric Data, Defendant failed to: (1) inform the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored; (2) inform the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; or (3) receive a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 7401LCS 14/15(b).*

**ANSWER**: Apple denies that the Complaint alleges activity to which section

15(b) of BIPA applies and denies the allegations in this paragraph.

121.     *With respect to its possession of Biometric Data, Defendant failed to: develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. 740 1LCS 15(a).*

**ANSWER**: Apple denies that the Complaint alleges activity to which section

15(a) of BIPA applies and denies the allegations in this paragraph.

122.     *Defendant's failure to comply with BIPA extends to nonusers of its devices. This is because Defendant's Photos App collects and possesses the Biometric Data of everyone who appears in images stored on a user's Apple Device.*

**ANSWER**: Denied.

123.     *Defendant does not have commercial relationships with the nonusers whose Biometric Data it collects, and does not know which nonusers' Biometric Data it is collecting. Therefore, Defendant cannot obtain informed written consent from nonusers.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the Complaint alleges activity to

which BIPA applies. Apple admits only that it does not know and does not

attempt to ascertain who appears in a user's photos. Apple lacks knowledge

or information sufficient to form a belief as to the truth of the remaining

allegations in this paragraph and therefore denies the same.

124.     *Furthermore, many of the nonusers from whom Defendant collects Biometric Data are minors who cannot give informed written consent.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the Complaint alleges activity to

which BIPA applies. Apple lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in this paragraph

and therefore denies the same.

125.    *Defendant also does not comply with BIPA's prohibition on profiting from Biometric Data.*

**ANSWER**: Denied.

126.    *Defendant developed the facial recognition feature of its Photos App in part to compete with other electronic device vendors and software developers, and in order to sell Apple Devices.*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by

virtue of their use of the undefined phrase "facial recognition." Apple

admits that: (1) there are "other electronic device vendors and software

developers," (2) that Apple's products and services face competition, and

(3) that Apple is a for-profit corporation. Apple denies any remaining

allegations in this paragraph.

127.    *Defendant did, in fact, profit from the sale of Apple Devices as a result of Defendant's facial recognition "feature."*

**ANSWER**: The allegations in this paragraph are vague and ambiguous by

virtue of their use of the undefined phrase "facial recognition." Apple lacks

knowledge or information sufficient to form a belief as to the truth of the

allegations in this paragraph and therefore denies the same.

128.    *Defendant's BIPA violations present an imminent threat of serious harm to Plaintiffs and the proposed class.*

**ANSWER**: Denied.

129.    *When Biometric Data is stored on personal electronic devices, persons from whom Biometric Data has been collected face a multiplicity of threats.*

**ANSWER**: Apple denies that the allegations of the Complaint set forth any

biometric data stored on personal electronic devices or persons from whom

biometric data has been collected. Apple lacks knowledge or information

sufficient to form a belief as to the unspecified "multiplicity of threats" to

which this paragraph refers and therefore denies any remaining allegations

of this paragraph.

130.    *Defendant does not delete the Biometric Data it collects, which are located on numerous devices in this State. Moreover, an Apple Device user's Biometric Data may be stored on one or more iPhones, iPads or MacBooks, as well as discarded Apple Devices. Furthermore, nonusers' Biometric Data that Defendant collects may be stored on one or more Apple Devices.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the allegations of the Complaint set

forth any biometric data stored on iPhones, iPads, Mac computers, or

discarded devices. Apple lacks knowledge or information sufficient to form

a belief as to what a user chooses to store on (and how he or she chooses to

use) his or her own device and therefore denies the remaining allegations

of this paragraph.

131.    *For example, an Illinois resident's Biometric Data may be stored on the Apple Devices of his or her family, his or her relatives, his or her friends, his or her coworkers, and anyone else who photographed him or her using an Apple Device.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the allegations of the Complaint set

forth any biometric data stored on iPhones, iPads, or Mac computers. Apple

lacks knowledge or information sufficient to form a belief as to what a user

chooses to store on (and how he or she chooses to use) his or her own device

and therefore denies the remaining allegations of this paragraph.

132.    *Apple Device users cannot prevent their devices from collecting their unique and sensitive Biometric Data, and nonusers cannot control whether Apple Devices containing this unique and sensitive information are lost, stolen, discarded improperly, given to vendors for repair work, or recycled. Nonusers likewise cannot control whether their Biometric Data is extracted, decrypted, or sold.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the allegations of the Complaint set

forth any biometric data stored on iPhones, iPads, or Mac computers. Apple

also denies that "Apple Device users cannot prevent their devices from

collecting their unique and sensitive Biometric Data." Apple lacks

knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of this paragraph.

133.    *Information stored in a central location, such as a server, presents a single breach threat. A sophisticated entity may take measures to securely and centrally store information, guarding against the threat of a data breach. By contrast, as the result of the fact that the Biometric Data that Defendant collects are stored on numerous devices, Plaintiffs and members of the Class face the imminent threat of disclosure of their Biometric Data as a result of a data breach on any one of the Apple Devices on which their Biometric Data are stored.*

**ANSWER**: Apple denies that it collects or stores biometric data in connection

with the Photos app. Apple further denies that the allegations of the

Complaint set forth any biometric data stored on iPhones, iPads, or Mac

computers. Apple denies the allegations in the third sentence of this

paragraph. Apple lacks knowledge or information sufficient to form a belief

as to the unspecified "breach threat" or "measures to securely and centrally

41

store information" to which this paragraph refers and therefore denies all

remaining allegations of this paragraph.

134.    *Defendant has greater than a 40% market share of the smartphone market in the United States, around 10% of the laptop market, and approximately 17% of the desktop market. 96% of adult Americans use smartphones and approximately 75% percent of Americans own a desktop or laptop.*

**ANSWER**: Apple lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in this paragraph and therefore denies the

same.

135.    *Many of the Apple Devices used in this State have collected the Biometric Data of multiple individuals other than the Apple Device user. Consequently, numerous Illinois residents have their Biometric Data stored on one or more Apple Devices outside their control.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the allegations of the Complaint set

forth any biometric data stored on iPhones, iPads, or Mac computers. Apple

lacks knowledge or information sufficient to form a belief as to what a user

chooses to store on (and how he or she chooses to use) his or her own device

and therefore denies the remaining allegations of this paragraph.

136.    *The durability of the memory in Apple Devices creates a nearly permanent risk of a data breach of biometric identifiers and information for both device users as well as nonusers whose Biometric Data have been collected. Apple Devices utilize solid state memory, which can withstand drops, extreme temperatures, and magnetic fields. Unless corrupted, this solid state memory and the information it contains can last in perpetuity. Thus, the Biometric Data on Apple Devices will likely outlast the device battery, the functionality of the device screen, and the natural life of the device user.*

**ANSWER**: Apple admits that certain Apple devices utilize solid state disk

storage. Apple denies the remaining allegations in this paragraph.

137.   *Apple Devices, like all computing devices, are vulnerable to hackers and other malicious bad actors. For example, the Washington Post recently reported that security researchers discovered a "'sustained' . . . and indiscriminate campaign to hack iPhones through certain websites, allowing attackers to steal messages, files and track location data every 60 seconds." Just days prior to that report's publication, Defendant released an "emergency fix" to a different vulnerability that allowed "malicious hackers to take control of all Apple desktop and laptop computers [and] mobile devices."*

**ANSWER**: Apple admits that unknown parties may seek to exploit security issues in electronic devices. Apple further admits that it periodically has released operating system upgrades related to security issues and that iOS 12.4.1 provided important security and stability updates. Apple refers to the Apple security updates webpage, available at https://support.apple.com/en-us/HT201222, which lists security updates for Apple software. Apple denies any remaining allegations in this paragraph.

138.   *Biometric Data may persist on discarded Apple Devices, which could be extracted by malicious actors using methods of removal that may or may not currently exist. The risk of illicit harvesting of biometric information from discarded Apple Devices therefore extends far into the future.*

**ANSWER**: Apple denies that it collects biometric data in connection with the Photos app. Apple further denies that the allegations of the Complaint set forth any biometric data stored on iPhones, iPads, Mac computers, or discarded devices. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and therefore denies the same.

139.   *Defendant is directly liable for the BIPA violations based on the functionality of its proprietary software, which it wholly owns and exclusively controls, and which Apple Device users are prohibited from owning, controlling, or modifying.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

140.    *Furthermore, Defendant is vicariously liable for BIPA violations because its software operated as a "software agent:" A software agent is essentially a software version of a concept familiar in the law: an entity that performs a task, with some degree of autonomy, on behalf of someone else. An agent in the physical world can perform its task without input from the principal; this is equally true when an agent is a machine, such as a robot on a factory floor, which can perform its repetitive task without needing constant human guidance. A software agent operates in the same way — it can perform its task without human input. For example, a software agent useful to shoppers could scan a large number of websites for a certain product, and identify the website offering the product at the lowest price; to the text of the note without such a program, the human user would have to look at each website herself. NetFuel, Inc. v. F5 Networks, Inc., No. 13-7895, 2017 WL 2834538, at \*1 (ND. Ill. June 29, 2017); see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 (2005) (technology distributor contributorily and vicariously liable for the unlawful use of technology where the technology has an "unlawful objective"); Akamai Techs., Inc. v. Limelight Networks, Inc., 797 F.3d 1020, 1024 (Fed. Cir. 2015) (software designer liable for infringing conduct of software where use of software "conditioned" on infringing behavior); Shaw v. Toshiba Am. Info. Sys., Inc., 91 F. Supp. 2d 926 (E.D. Tex. 1999) (software designer liable for harm to third party caused by software).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple admits that this paragraph quotes or paraphrases selected portions of various judicial opinions, reserves all arguments with regard to those judicial opinions, and otherwise denies the allegations in this paragraph.

141.    *In this case, Defendant, in addition to being directly liable, is also vicariously liable for BIPA violations caused by the use of Apple Devices because, under principles of agency law, Defendant's Apple Devices functioned as software agents subject to the actual authority of Defendant, because Defendant acted negligently in controlling its proprietary software installed on Apple Devices, or both. Restatement (Third) Of Agency §§ 7.04; 7.05 (2006).*

<u>**ANSWER**</u>: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

142.   *Further, Defendant is vicariously liable because the use of its Apple Devices was conditioned on unlawful use and had an objective that was unlawful under Illinois law.*

<u>**ANSWER**</u>: The allegations in this paragraph consist of legal conclusions and argument to which no answer is required. To the extent an answer is deemed necessary, Apple denies the allegations in this paragraph.

143.   *Each Plaintiff has used one or more Apple Device to take or store photographs of themselves and other people. No Plaintiff was aware Defendant's facial recognition technology would collect Biometric Data and organize photographs based on facial geometries. However, Defendant's facial recognition technology has collected Biometric Data not only from Plaintiffs, but also from individuals appearing in photographs on Plaintiffs' Apple Devices, including parents, grandchildren, siblings, cousins, friends, and/or co-workers of Plaintiffs.*

<u>**ANSWER**</u>: Apple denies that the Photos app collects biometric data. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

144.   *Plaintiff Roslyn Hazlitt has owned an iPhone for several years; her phone has contained pictures of herself since that time. She is not aware of the People and Places facial recognition "feature." She never agreed to allow Defendant to collect her Biometric Data. Nevertheless, the People and Places feature of the Photos App on Ms. Hazlitt's iPhone has automatically generated albums that contain photographs of herself as well as her father based on Defendant's collection of her Biometric Data and her father's Biometric Data.*

<u>**ANSWER**</u>: Apple denies that it or the Photos app collects or uses biometric data as alleged herein. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

145.     *Plaintiff Jane Doe is an eight-year-old minor. She owns an iPad, which she has used to take photos, including of herself. She also appears in the photographs of her relatives who own various Apple products. She has not, and cannot, give consent for her biometric information to be collected or possessed by Defendant. Further, Jane Doe's parents have not given informed written consent to allow Defendant to collect or possess Jane Doe's Biometric Data. The People and Places "feature" of the Photos App on Jane Doe's iPad has automatically generated a photo album that contains photographs of Jane Doe based on Defendant's collection of her Biometric Data.*

**ANSWER**: Apple denies that it or the Photos app collects or uses biometric data as alleged herein. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

146.     *Plaintiff Richard Robinson has owned an iPhone for several years. Mr. Robinson also has previously owned an iPad. Mr. Robinson has taken photos with his iPhone, including of himself and other family members. Although he has "tagged" individuals in the photographs that Defendant has organized by facial geometry, Mr. Robinson is unsure whether he has ever actually used Defendant's People and Places "feature" in the Photos App, and has never provided consent, let alone informed written consent, for his Biometric Data to be used or collected. Nevertheless, the People and Places feature in the Photos App on his iPhone has created various albums for individuals appearing in his photographs: The above screenshot is from Mr. Robinson's iPhone and shows the people-specific albums automatically generated by Defendant's software. From left to right, top to bottom, the albums in the above screenshot correspond to Mr. Robinson's wife, daughter-in-law, brother, daughter, himself, and granddaughter.*

**ANSWER**: Apple denies that it or the Photos app collects or uses biometric data as alleged herein. Apple lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and therefore denies the same.

147.     *Plaintiff Yolanda Brown has had an iPhone for several years, and has taken various photographs throughout that period. The earliest photos of herself that are currently stored on her iPhone date from approximately ten years ago. She was not aware of Defendant's People and Places "feature" of the Photos App, though she has "tagged" individuals in the photographs that Defendant has organized by facial geometry. The People and Places feature of the Photos App on Ms. Brown's phone has automatically generated photo albums for photographs containing each of her three nieces, six aunts, five cousins, and brother. Ms. Brown never consented to Defendant's collection of her Biometric Data.*

**ANSWER**: Apple denies that it or the Photos app collects or uses biometric

data as alleged herein. Apple lacks knowledge or information sufficient to

form a belief as to the truth of the remaining allegations in this paragraph

and therefore denies the same.

148.    *On information and belief, Defendant applies its facial recognition technology to every picture that a user saves on his or her Apple Device running Defendant's Photos App.*

**ANSWER**: Denied.

149.    *When an Illinois resident purchases an Apple Device, Defendant does not inform them that Biometric Data will be collected from every person whose picture is stored on the device, including the Apple Device user and any other person whose face appears in a photograph stored on the Photos App. Defendant has not informed Plaintiffs that Biometric Data has been and is being collected from the individuals whose faces appear in photographs stored on users' Photos Apps.*

**ANSWER**: Apple denies that it or the Photos app collects biometric data as

alleged herein. Apple further denies that the Complaint alleges activity to

which BIPA applies and denies that Apple has violated any obligation

under BIPA. Apple denies any remaining allegations in this paragraph.

150.    *Moreover, Defendant has not informed Plaintiffs that the Photos App is installed on their devices by default and will operate on mobile devices whenever a photograph is added to the Photos App or when the Photos App is started on laptop or desktop computers.*

**ANSWER**: Denied.

151.    *As a result, Defendant did not obtain consent from Plaintiffs in any form prior to collecting their facial geometry data, let alone written, informed consent as required by BIPA. Nor has Defendant obtained consent from other members of the proposed class, including minors whose photos appear in the Photos App.*

**ANSWER**: Apple denies that it collects biometric data in connection with the

Photos app. Apple further denies that the Complaint alleges activity to

which BIPA applies, denies that Apple has violated any obligation under

BIPA, and denies that this action may be maintained individually or on behalf of any class. Apple denies any remaining allegations in this paragraph.

152.   *Defendant has collected biometric information and biometric identifiers from Plaintiffs in violation of BIPA.*

**ANSWER**: Denied.

153.   *Plaintiffs seek to represent the following similarly situated individuals (collectively, the "Class"): Subclass 1: All Illinois citizens whose faces appeared in one or more photographs taken or stored on their own Apple Devices running the Photos App from March 4, 2015 until present. Subclass 2: All Illinois citizens whose faces appeared in one or more photographs taken or stored on an Apple Device other than their own running the Photos App from March 4, 2015 until present.*

**ANSWER**: Apple admits that the plaintiffs purport to bring this action on behalf of themselves and two subclasses that the plaintiffs define in this paragraph. Apple denies any remaining allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

154.   *Numerosity. The Class includes thousands of people, such that it is not practicable to join all Class members into one lawsuit.*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

155.   *Commonality. The issues involved with this lawsuit present common questions of law and fact, including: •whether Defendant collected and/or possessed the Class's biometric identifiers or biometric information; •whether Defendant profited from biometric identifiers or biometric information; •whether Defendant properly informed Class members that it captured, collected, used, and stored their biometric identifiers and/or biometric information; •whether*

*Defendant obtained "informed written consent" (740 ILCS 14/10) to capture, collect, use, and store Class members' biometric identifiers and/or biometric information; •whether Defendant used Class members' biometric identifiers and/or biometric information to identify them; and •whether Defendant' violations of BIPA were committed recklessly or negligently.*

ANSWER: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

156.    *Predominance. The common questions of law and fact predominate over any individual issue that may arise on behalf of an individual Class member.*

ANSWER: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

157.    *Typicality. Plaintiffs, the members of the Class, and Defendant have a commonality of interest in the subject matter of the lawsuit and the remedy sought.*

ANSWER: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

158.    *Adequacy. Plaintiffs and counsel will fairly and adequately protect the interests of Class members. Plaintiffs' counsel, Schlichter Bogard & Denton, LLP, will fairly and adequately represent the interests of the Class. Schlichter Bogard & Denton, LLP has a well-documented track record of serving as class counsel in this State and elsewhere. Schlichter Bogard & Denton's pioneering work in class actions brought on behalf of citizens of this State and others has been covered by numerous national publications, including the New York Times and Wall Street Journal, among other media outlets. By way of limited example, courts in this State have noted in reference to the work of Schlichter Bogard & Denton, LLP in class action litigation: •"This Court is unaware of any comparable achievement of public good by a private lawyer in the face of such*

49

*obstacles and enormous demand of resources and finance." Order on Attorney's Fees, Mister v. Illinois Central Gulf R.R., No. 81-3006 (S.D. Ill. 1993). •"This Court finds that Mr. [Jerome J.] Schlichter's experience, reputation and ability are of the highest caliber. Mr. Schlichter is known well to the District Court Judge and this Court agrees with Judge Foreman's review of Mr. Schlichter's experience, reputation and ability." Order on Attorney's Fees, Wilfong v. Rent-A-Center, No. 0068-DRH (S.D. Ill. 2002). •"Class Counsel performed substantial work . . . investigating the facts, examining documents, and consulting and paying experts to determine whether it was viable. This case has been pending since September 11, 2006. Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the [class]." Will v. General Dynamics, No. 06-698, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010). •"Schlichter, Bogard & Denton has achieved unparalleled results on behalf of its clients, . . . has invested . . . massive resources and persevered in the face of . . . enormous risks[.]" Nolte v. Cigna Corp., No. 07-2046, 2013 WL 12242015, at *2 (C.D. Ill. Oct. 15, 2013). •"Litigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination." Beesley v. Int'l Paper Co., No. 06-703, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014). •"Schlichter, Bogard & Denton demonstrated extraordinary skill and determination in obtaining this result for the Class." Abbott v. Lockheed Martin Corp., No. 06-701, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015). Plaintiffs' counsel Christian Montroy is also an experienced class action practitioner who will adequately represent the Class.*

  **ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

  159. *Superiority. A class action is the appropriate vehicle for fair and efficient adjudication of Plaintiffs' and Class members' claims because if individual actions were required to be brought by each member of the Class, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendant.*

  **ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple denies any allegations in this paragraph and states that this action cannot be maintained individually or on behalf of any class.

## COUNT I – VIOLATION OF 740 ILCS 14/15(b)

160.    *Plaintiffs incorporate paragraphs 1 through 159 as though fully realleged herein.*

**ANSWER**: Apple incorporates the foregoing answers to paragraphs 1 through 159 as though fully realleged herein.

161.    *BIPA created statutory duties for Defendant with respect to the collection of biometric identifiers and biometric information of Plaintiffs and the Class. See 740 ILCS 14/15(b).*

**ANSWER**: The allegations in this paragraph consist of legal conclusions to which no answer is required. To the extent an answer is deemed necessary, Apple refers to BIPA for its complete text and denies any attempt to paraphrase or characterize BIPA's complete text and all allegations inconsistent therewith. Apple denies any remaining allegations in this paragraph.

162.    *Defendant violated BIPA section 15(b)(1) by collecting Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without first informing Plaintiffs and Class members that Defendant was collecting this information.*

**ANSWER**: Denied.

163.    *Defendant violated BIPA section 15(b)(2) by collecting Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without informing Plaintiffs and Class members in writing of the purpose for the collection. Further, Defendant violated BIPA section 15(b)(2) by failing to inform Plaintiffs and Class members in writing of the length of time Defendant would collect Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information.*

**ANSWER**: Denied.

164.    *Defendant violated BIPA section 15(b)(3) by collecting Plaintiffs' and Class members' biometric identifiers and biometric information, including scans of facial geometry and related biometric information, without first obtaining informed written consent authorizing*

*Defendant to collect Plaintiffs' and Class members' biometric identifiers and/or biometric information.*

**ANSWER**: Denied.

165.    *Defendant's BIPA violations are violations of Defendant's duty of ordinary care owed to Plaintiffs and the Class.*

**ANSWER**: Denied.

166.    *In the alternative, Defendant's BIPA violations were willful and wanton. Defendant knowingly, intentionally, and/or recklessly violated the duty it owed to Plaintiffs and the Class.*

**ANSWER**: Denied.

167.    *Plaintiffs incurred injuries that were proximately caused by Defendant's conduct. Through its actions, Defendant exposed Plaintiffs and the Class to imminent threats of serious harm.*

**ANSWER**: Denied.

168.    *Plaintiffs in this Count I hereby request the relief set forth in the Prayer for Relief below, and incorporated as though fully set forth herein.*

**ANSWER**: Apple denies that the Complaint states a claim against Apple.

Apple further denies that the plaintiffs may seek any relief stated in this

paragraph. Apple denies any remaining allegations in this paragraph.

## COUNT II – VIOLATION OF 740 ILCS 14/15(a)

## COUNT III – VIOLATION OF 740 ILCS 14/15(c)

Apple omits the allegations of Count II and Count III, which are not

presently before this Court on the basis of the Court's Remand Order. The Remand

Order is the subject of Apple's pending motion to reconsider and a petition for

leave to appeal to the Seventh Circuit. Apple expressly reserves all rights with

respect to Count II and Count III. Stating further, Apple denies that it has violated

any provision of BIPA, that Count II or Count III state a claim against Apple, and

that the plaintiffs are entitled to any of the relief claimed in Count II or Count III.

_PRAYER FOR RELIEF_ _WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, pray for judgment against Defendant Apple Inc. as follows: A. Certifying this case as a class action, appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as Class counsel; B. Finding that Defendant's conduct violates BIPA; C. Awarding actual damages caused by Defendant's BIPA violations; D. Awarding statutory damages of $5,000 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), and damages of $1,000 for each negligent violation pursuant to 740 ILCS 14/20(1); E. Awarding injunctive and/or other equitable or non-monetary relief as appropriate to protect the Class, including by enjoining Defendant from further violating BIPA pursuant to 740 ILCS 14/20(4); F. Awarding Plaintiffs reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3); G. Awarding Plaintiffs and the Class pre- and post judgment interest, to the extent allowable; and H. Awarding such other and further relief as this Court deems appropriate and as equity and justice may require._

**ANSWER**: Apple denies the allegations in the plaintiffs' _ad damnum_ and

requests that judgment be entered for Apple and against the plaintiffs in

this action.

_JURY DEMAND_ _Plaintiffs request trial by jury of all claims asserted herein._

**ANSWER**: Apple admits that Plaintiffs demand a trial by jury and likewise

demands a jury trial as to all matters so triable.

## AFFIRMATIVE DEFENSES

Without admitting the sufficiency of the plaintiffs' allegations and without

assuming any burden of proof not placed on it by applicable law, Apple asserts the

following affirmative defenses. Apple expressly reserves the right to amend its

affirmative defenses based on all further investigations, discovery, and preparation for

the trial of this action.

### FIRST AFFIRMATIVE DEFENSE:
## Unconstitutionality of BIPA/Commerce Clause

The plaintiffs' claims are barred in whole or in part by the Dormant Commerce Clause of the United States Constitution. If the conduct alleged in the Class Action Complaint qualifies as a violation of BIPA, then BIPA would have the practical effect of allowing Illinois law to regulate conduct occurring entirely outside of Illinois; BIPA would subject Apple to inconsistent regulations; and BIPA would usurp the prerogative of other states to make their own policy choices.

### SECOND AFFIRMATIVE DEFENSE:
## Unconstitutionality of BIPA/Due Process

The plaintiffs' claims are barred in whole or in part by the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. The Photos app does not use or rely on biometric identifiers or biometric information, and the review and grouping of photos by the Photos app occurs entirely on the plaintiffs' devices, which are not in Apple's possession, custody, or control. In addition, Apple does not and cannot use the Photos app to identify an individual.

BIPA does not outlaw the use of biometric identifiers or biometric information. To the contrary, section 5 of BIPA is clear that the legislature intended to promote the development of technologies and transactions that rely on biometric data. Nothing in the text of legislative history of BIPA evinces any legislative intent to regulate manufacturers of devices or developers of software, as opposed to the private entities who actually possess, store, collect, purchase, receive through trade, otherwise obtain, disclose, redisclose, or disseminate biometric identifiers and biometric information. Furthermore,

the legislative history of BIPA shows that the legislature intended to regulate only biometric identifiers and biometric information when used or capable of being used to identify an individual.

Finally, the definitions and provisions of BIPA are vague and ambiguous as applied to Apple and the Photos app because they fail to provide a person of ordinary intelligence fair notice of what it prohibits, and are so standardless that they authorize or encourage seriously discriminatory enforcement.

Accordingly, Apple did not have fair notice that 740 ILCS 14/15 could be applied in the manner in which the plaintiffs allege here, and as applied in this case, BIPA violates the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

### THIRD AFFIRMATIVE DEFENSE:
### Unconstitutionality of BIPA/Excessive Fines

The plaintiffs' claims are barred in whole or in part by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Upon information and belief, the plaintiffs and the putative class members whom they purport to represent have not suffered any actual damages as a result of the conduct alleged in the Complaint. The Complaint, however, requests statutory damages in the amount of $1,000 or $5,000 per violation, for the plaintiffs individually and for members of the putative class. The statutory damages amounts are unreasonable, grossly excessive, and disproportionate to any injury suffered by the plaintiffs or by members of the putative class. Accordingly, as applied in this case, both on behalf of the plaintiffs individually and on behalf of the

alleged putative class, the statutory damages awards under 740 ILCS 14/20 violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

### FOURTH AFFIRMATIVE DEFENSE:
### Consent

The plaintiffs' claims are barred in whole or in part because the plaintiffs and the putative class members whom they purport to represent, or individuals with authority to act on their behalf, consented to the conduct alleged to violate BIPA.

### FIFTH AFFIRMATIVE DEFENSE:
### Waiver

To the extent that a plaintiff or alleged member of the putative class has continued to use the Photos app after the filing of this Complaint or reading any public article on which the Complaint is based—whichever occurred first—their claims are barred, in whole or in part, by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE:
### Statute of Limitations

No damages or other relief can be recovered by plaintiffs and/or members of the asserted putative class to the extent the plaintiffs' claims are barred, in whole or in part, by an applicable contract provision and/or statute of limitations. *See, e.g.*, 735 ILCS 5/13-202 (two-year limitations period to recover a statutory penalty); 735 ILCS 5/13-205 (five-year limitations period for "all civil actions not otherwise provided for"). Upon information and belief, Apple alleges that plaintiffs and/or members of the asserted putative class failed to bring the claim remaining before this Court within the period required by the statutes of limitations.

## SEVENTH AFFIRMATIVE DEFENSE:
### No Extraterritorial Application of BIPA

The plaintiffs' claims are barred in whole or in part because the plaintiffs' interpretation of BIPA would require an impermissible extraterritorial application of BIPA.

## EIGHTH AFFIRMATIVE DEFENSE:
### Failure to Mitigate

The plaintiffs' claims are barred in whole or in part by the plaintiffs' failure to take reasonable steps to mitigate their damages. According to the Complaint, the plaintiffs have known, or were reasonably informed, that they could remove photos from their devices at any time. Upon information and belief, the plaintiffs continue to use the Photos app and the People album and have not removed the photos from their devices. Accordingly, the plaintiffs failed to take reasonable steps to mitigate their damages and their claims are barred.

## DEFENDANT'S PRAYER FOR RELIEF

**WHEREFORE**, Apple prays for the following relief:

1. That the plaintiffs recover nothing by reason of their Complaint, and that judgment be rendered in favor of Apple;

2. That the plaintiffs be denied class certification;

3. That Apple be awarded its costs of suit incurred in defense of this action, including reasonable attorneys' fees; and

4. For other such relief as the Court deems proper.

**Dated**: January 14, 2021

**Respectfully Submitted**,

Apple Inc.

By:  /s/ *Raj Shah*

     One of its attorneys

Isabelle L. Ord*

DLA Piper LLP (US)

555 Mission Street, Suite 2400

San Francisco, California 94105

isabelle.ord@dlapiper.com

Amanda Fitzsimmons*

DLA Piper LLP (US)

401 B. Street, Suite 1700

San Diego, California 92101

amanda.fitzsimmons@dlapiper.com

* admitted *pro hac vice*

Raj N. Shah (ARDC # 06244821)

Eric M. Roberts (ARDC # 6306839)

DLA Piper LLP (US)

444 West Lake Street, Suite 900

Chicago, Illinois 60606

312.368.4000

raj.shah@dlapiper.com

eric.roberts@dlapiper.com

### Certificate of Service

I hereby certify that on January 14, 2021, I electronically filed the foregoing ***Apple Inc.'s Answer and Affirmative Defenses*** with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

/s/ *Raj Shah*

Raj N. Shah