## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ROSLYN HAZLITT et al.,

         *Plaintiffs*,

v.

APPLE INC.,

         *Defendant.*

No. 3:20-cv-00421-NJR

## PLAINTIFFS' MOTION TO COMPEL

The parties' joint stipulation (ECF No. 53-1), this Court's order (ECF No. 67), the Federal Rules of Civil Procedure, and Seventh Circuit authority expressly require Defendant's cooperation in electronic discovery.  Yet more than six months after Plaintiffs served discovery requests and interrogatories, and after numerous attempts to meet and confer initiated by Plaintiffs, Defendant has not produced any electronically stored information ("ESI").  Defendant has refused to accept a single one of Plaintiffs' ESI search terms, or respond to Plaintiffs' search-term proposal sent months ago.  Defendant has refused to produce organizational charts or other information that would allow Plaintiffs to evaluate Defendant's unilaterally selected document custodians.  And Defendant has refused to respond to Plaintiffs' requests that it search its centralized electronic files for relevant, responsive documents and information.  Because Defendant's conduct contravenes unambiguous controlling authority – including this Court's own order (ECF No. 67) – Defendant should be compelled to collaborate regarding electronic discovery and appropriately sanctioned for its refusals to do so that have necessitated this motion practice.

Defendant should also be compelled to produce the categories of responsive, indisputably relevant documents and information that it has stated it will not produce. Defendant has, after more than six months of discovery, produced a total of just 25 documents – all of which are publicly available. Defendant's delays are inexplicable. However, Defendant has represented that it will under no circumstances produce documents or information in several important categories, including the location where Defendant stores its biometric data, Defendant's prior statements related to biometric facial recognition, and Defendant's development of the biometric technology at issue. Additionally, and directly contrary to Federal Rule of Civil Procedure 26, Defendant refuses to respond to Plaintiffs' interrogatories seeking the identities of persons with knowledge related to Plaintiffs' claims. Defendant should be required to produce the responsive, highly relevant documents and information that it insists on withholding.

## BACKGROUND

**A.    The Extensive Meet-and-Confer Process Initiated by Plaintiffs**

Plaintiffs served interrogatories and requests for production on January 21, 2021. Declaration of Alexander Braitberg ("Braitberg Decl") ¶¶2–3, Exhibit A (Plaintiffs' interrogatories); Exhibit B (Plaintiffs' first set of requests for production). In response, Defendant on February 22, 2021 served lengthy, boilerplate objections,[1] but produced no responsive documents.

Plaintiffs shortly thereafter initiated a meet-and-confer process to address Defendant's discovery deficiencies, making extensive efforts to secure Defendant's cooperation in five separate conferences, totaling approximately seven hours. Braitberg Decl. ¶13. Plaintiffs separately sent discovery correspondence on nine different occasions. Braitberg Decl. ¶12.

---

[1] Defendant objected to all of the 77 requests and interrogatories served by Plaintiffs.

Despite these efforts, Defendant has, to date, produced a total of just 25 documents, has not withdrawn a single one of its objections to all 77 of Plaintiffs' interrogatories and requests for production, and has not supplemented any response to any one of Plaintiffs' interrogatories.

**B.      Defendant's Refusal to Collaborate Regarding Electronic Discovery**

Pursuant to the parties' joint stipulation (ECF No. 53-1) regarding ESI and the Court's Order (ECF No. 67) (the "ESI Order"), Plaintiffs have made extensive efforts to collaborate regarding electronic discovery, which Defendant has declined to reciprocate.[2]

> [T]he parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review and production of electronically stored information.  In connection with the meet and confer process, each party shall provide a proposed list of individual custodians who are knowledgeable about and were involved with the core issues or subjects in this case (e.g., the alleged collection and possession of, and failure to create and follow a retention schedule regarding, biometric identifiers or biometric information). <u>The parties then shall meet and confer to reach agreement on document custodians and also shall meet and confer to reach agreement on search terms</u>[.]

ECF No. 53-1; ECF No. 67 (emphasis added).

Despite the requirement that the parties meet and confer, and despite Plaintiffs' best efforts to do so, more than seven months after Plaintiffs served written discovery Defendant has:

- Refused to accept a single one of Plaintiffs' proposed ESI search terms or respond to Plaintiffs' search-term proposal sent on May 6, 2021;

- Refused to produce organizational charts or other information that would allow Plaintiffs to evaluate Defendant's unilaterally selected document custodians;

---

[2] Although Defendant repeatedly represented in meet-and-confer sessions that it would provide proposed ESI search terms and custodians by March 29, 2021, it did not do so.  Braitberg Decl. ¶8, Exhibit F at 2–3.  Instead, Defendant provided a paltry set of proposed search terms (but not document custodians) on April 13, 2021.  *Id.* at 1. The next day, Plaintiffs wrote seeking clarification regarding the custodians, data sources, date ranges, and centrally stored files that Defendant was proposing to search.  *Id.*  Defendant ignored this correspondence.  Braitberg Decl. ¶9.  Plaintiffs subsequently asked Defendants for a list of proposed document custodians on March 15, March 18, March 31, April 14, April 22, April 29, and May 6, 2021.  Braitberg Decl. ¶11, Exhibit H at 2.  Despite Defendant's repeated refusal to provide proposed custodians, Plaintiffs made their best effort to craft a search term counterproposal, which they sent on May 6, 2021.  Braitberg Decl. ¶10, Exhibit G at 1.  Defendant then, finally, revealed its proposed list of custodians, orally, during a meet-and-confer conference on May 10, 2021.  Braitberg Decl. ¶14.  Defendant has not provided this list in writing and has not responded to Plaintiffs' search term counterproposal.  Braitberg Decl. ¶¶14, 16.

- Refused to respond to Plaintiffs' repeated requests that Defendant search its centralized files for responsive documents, let alone discuss the manner in which Defendant searches its centralized files for responsive information; and

- Produced no ESI at all, opting instead to make only a miniscule production of 25 publicly available documents.[3]

## C.  Defendant's Refusal to Produce Categories of Relevant, Responsive Documents and Information

Defendant has refused to produce responsive documents and information in several[4] indisputably relevant categories.  The categories of relevant documents and information that Defendant refuse to produce including the following:

### 1.  *The Location Where Defendant Stores Biometric Data*

Defendant refuses to identify the location where it stores biometric data generated by the Photos App.[5]  Instead, Defendant states that it stores biometric data in a location that Defendant claims has additional security.  Braitberg Decl. ¶5, Exhibit D at 4.  However, the location that Defendant stores biometric data is directly (and highly) relevant to Plaintiffs' central claim that Defendant possesses biometric data, which Defendant has denied.  ECF No. 1-1, Plaintiffs'

---

[3] Of the 4,433 pages produced in Defendant's sole production to date, 4,342 pages (97.9%) were translations of other produced documents into other languages. In other words, Defendant produced only 91 pages of English-language content, and the remaining 4,342 pages were translated duplicates.

[4] Plaintiffs reserve the right to seek to compel additional categories of information to the extent it becomes clear that Defendant's production is deficient once Defendant begins producing ESI.

[5] Capitalized terms are defined as in Plaintiffs' first set of interrogatories, attached hereto, unless otherwise specified.  *See* Braitberg Decl. ¶2, Exhibit A (Plaintiffs' interrogatories); *see also* Braitberg Decl. ¶3, Exhibit B (Plaintiffs' first set of requests for production) (incorporating definitions from interrogatories).  The relevant definitions are as follows: "Apple Devices" means or refers to phones, tablets and computers designed, manufactured, and/or sold by Apple, including all types of iPhones, iPads, and Mac computers. "Photos App" means or refers to Apple's software application that is pre-installed on Apple Devices. "Biometric Data" refers collectively to "biometric identifier" and "biometric information," as those terms are defined in BIPA. "Photo Sorting Software" or "Photo Sorting Features" means software which sorts or attempts to sort digital photographs by the faces of people appearing in them, including but not limited to software that performs facial recognition or scans of facial geometry, and including but not limited to software that detects, aligns, represents, classifies, and/or clusters photographs of faces.  "Facial Recognition" means or refers to the process by which an Apple Device recognizes an individual's face and/or clusters photographs of individuals in the Photos App by deriving and comparing information obtained from photographs stored on the Apple Device.

Complaint ("Compl.") ¶1; Defendant's Answer and Affirmative Defenses, ECF No. 45, ¶1.[6]

2.      *Defendant's Prior Statements Regarding Its Storage of Biometric Data*

Notwithstanding the fact that Defendant's "[s]tatements or communications regarding

local [i.e., on user devices] versus cloud [i.e., on Apple servers] storage of Photos app data [are]

directly and indisputably relevant to Plaintiffs' allegations that Apple 'collects' and 'possesses'

biometric data," Braitberg Decl. ¶18, Exhibit I at 4–5 (citing Compl. at ¶¶2, 3), Defendant

refuses to produce its statements regarding the manner in which it stores the biometric data at

issue.  Braitberg Decl. ¶¶5,19, Exhibit J at 5; Exhibit D at 23–24.

3.      *Defendant's Prior Statements Regarding Biometric Facial Recognition and BIPA*

Defendant refuses to produce its prior statements regarding (i) biometric facial

recognition and (ii) the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq.

("BIPA").  However, Defendant's prior statements regarding biometric facial recognition and

BIPA are directly relevant to its knowledge and intent, as Plaintiffs have repeatedly explained

during the meet-and-confer process.  *See* Braitberg Decl. ¶18, Exhibit I at 5.  Nevertheless,

Defendant refuses to produce any such statements because it asserts that only "public statements

related to the People album feature" are discoverable.  Braitberg Decl. ¶19, Exhibit J at 5, 6, 7.

4.      *Litigation Regarding Defendant's Biometric Technology*

Defendant refuses to provide any substantive response to Plaintiffs' inquiry regarding

litigation that has taken place concerning Defendant's Photo Sorting Software technology.

Instead, Defendant asserts that Plaintiffs seek irrelevant, public information.  Braitberg Decl.

---

[6] As Plaintiffs have explained to Defendant during the meet-and-confer process, they seek both the location of the data (which has not be provided) as well as additional details including "the specific folder where the information is stored; what programs have access to that folder; what type of security or encryption does that folder have; whether that information is transferred upon backup; whether the backup of this information is encrypted; whether that encryption is automatic; and whether the Photo Sorting Software data is stored in the same secure enclave as fingerprint data or other biometric data." Braitberg Decl. ¶18, Exhibit I at 6–7.  Defendant has likewise refused to produce this information.

¶20, Exhibit K at 6–7.

     5.    *Identification of Persons with Knowledge*

Defendant refuses to respond to interrogatories seeking the identities of persons with

knowledge related to Plaintiffs' claims.  Specifically:

- With respect to Interrogatories Nos. 2, 5, and 21, Defendant claims it has "no obligation" to provide the names of employees with knowledge of the biometric technology at issue, and may instead identify only unilaterally selected witnesses of its choosing.  Braitberg Decl. ¶19, Exhibit J at 7.

- With respect to Interrogatories Nos. 8 and 13, Defendant refuses to answer based on its assertion that the interrogatories are "unreasonably cumulative" – even though Defendant refuses to answer the other interrogatories that, it argues, render these requests cumulative.  Braitberg Decl. ¶19, Exhibit J at 8.  Defendant further asserts that asking for identification of potential witnesses "at this stage in the litigation" is "not a reasonable request."  *Id.* at 9.

Similarly, Defendant refuses to provide organizational charts and/or other informal discovery

needed to facilitate discussions regarding appropriate ESI custodians.  Braitberg Decl. ¶21.[7]

     6.    *Documents on Which Defendant Relied in Developing its Biometric Technology*

Defendant refuses to produce publications, patents, and/or other materials that it used or

relied on in developing its biometric technology.  This refusal is premised on Defendant's

position that "Apple does not collect, capture, convert, store, share, or use the data relied on by

the on-device Photo Sorting Features of the Photos app," Braitberg Decl. ¶4, Exhibit C at 9,

contrary to Plaintiffs' allegations in this case.  *See generally*, Compl.

     7.    *Information Regarding the Security of Biometric Data on Defendant's Devices.*

Defendant refuses to produce information regarding security measures and breaches

---

[7] Plaintiffs also served a notice of corporate representative deposition on July 27, 2021 seeking this, among other information.

related to the biometric data at issue.  Defendant insists this information is "irrelevant."[8]

Braitberg Decl. ¶19, Exhibit J at 5.

## LEGAL STANDARD

"[D]iscovery provisions are to be applied as broadly and liberally as possible[.]"

*Hickman v. Taylor*, 329 U.S. 495, 506 (1947).

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P 26(b)(1).  The "scope of discovery allowed under the Federal Rules" is "broad."

*Underhill v. Coleman Co.*, No. 12-129-JPG-DGW, 2012 WL 4388572, at *2 (S.D. Ill. Sept. 25, 2012); *see also Roembke v. Wisdom*, 22 F.R.D. 197, 199 (S.D. Ill. 1958) ("[S]o long as the information sought . . . can reasonably be said to lead to the discovery of admissible evidence it must be given.").

It is a fundamental norm of electronic discovery that parties should cooperatively negotiate custodians and search terms.  *See Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 870 (7th Cir. 2019) (vacating summary judgment where trial court cut off discovery while plaintiff was still waiting for a response to her proposal regarding a "proposed custodian list and search terms for electronic discovery").  "Discovery of ESI is still discovery, governed by the same

---

[8] Indeed, Defendant publicly states it performs security assessments of its products and data uses. *See, e.g.,* https://www.apple.com/legal/ privacy/en-ww/governance/, *archived at* https://perma.cc/CK77-XHA5  ("As part of our GDPR and human rights work, we undertake Privacy Impact Assessments (PIA) of our major products and services and integrate PIAs as we develop new products and services.").  Defendant also provides risk assessments of all data uses. *Id.*  ("Risk levels are assigned to all data uses with re-review periods ranging from 1 to 2 years depending on the identified risk.").

Federal Rules of Civil Procedure as all other civil discovery." *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 492 n.2 (N.D. Ill. 2018); Fed. R. Civ. P. 34(b)(2)(E) (requiring production of "electronically stored information"); Fed. R. Civ. P. 34(b)(1)(C) (permitting requesting party to "specify the form or forms in which [ESI] is to be produced."). We are "deep into the age of electronic discovery." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 595 (7th Cir. 2011).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004). "If the documents called for are reasonably probable to be material in the case, the production and inspection of them should be allowed." *June v. George C. Peterson Co.*, 155 F.2d 963, 967 (7th Cir. 1946). "To meet the test of relevancy[,] evidence sought" in written discovery "need not be complete, direct or decisive of issues." *Loft, Inc. v. Corn Prod. Ref. Co.*, 103 F.2d 1, 5 (7th Cir. 1939). "[T]he party objecting to discovery bears the burden to show the requested discovery is improper." *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 161 (N.D. Ill. 2017). "[T]here is a strong public policy in favor of disclosure of relevant materials[.]" *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). "District courts abuse their discretion when they fail to acknowledge a plaintiff's timely discovery request that would produce relevant and necessary information." *Bryant v. City of Chicago*, 746 F.3d 239, 242 (7th Cir. 2014).

## ARGUMENT

Plaintiffs seek an order (i) requiring Defendant to promptly collaborate with Plaintiffs regarding ESI search terms, custodians, and searches of centrally stored files; and (ii) imposing an appropriate sanction on Defendant for its refusal to comply with the Court's ESI Order. In

addition, Defendant should be ordered to produce the below-described categories of highly

relevant, responsive documents and information that it has refused to provide.

I.      **The Court Should Require Defendant to Engage in Collaborative Electronic Discovery and Impose an Appropriate Sanction on Defendant for Its Noncompliance and Refusal to Collaborate**

Pursuant to this Court's ESI Order and unanimous controlling authority, Defendant's

collaboration with Plaintiffs regarding ESI search terms, custodians, and searches of centrally

stored files is both an essential and required element of discovery.  *See* ECF No. 67 (requiring

the parties "to reach agreement on document custodians" and to "reach agreement on search

terms and metadata fields to be used for electronic searches"); *see also* Fed. R. Civ. P.

34(b)(1)(C); Fed. R. Civ. P. 34(b)(2)(E); *Smith*, 933 F.3d at 870.  Because Defendant refuses to

collaborate regarding ESI more than seven months after Plaintiffs served their discovery requests

and interrogatories, the Court should order Defendant to promptly do so.

In addition to this Court's ESI Order requiring the parties to meet and confer regarding

ESI, with which Defendant has not complied, "the system created by Rule 26 contemplates that

the exchange of information in discovery will occur with minimal judicial involvement."  *Bond*

*v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009).  "[C]ooperation between parties in addressing

discovery should be encouraged."  *The Sedona Principles, Third Edition: Best Practices,*

*Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona

Conf. J. 1, 31 (2018) ("Sedona Principles").  Indeed, "[a]s soon as practicable, parties should

confer and seek to reach agreement regarding the preservation and production of electronically

stored information."  Sedona Principles at 71 (Principle 3).

Courts routinely require parties to collaborate regarding electronic discovery.  *See Bolden*

*v. Walmart Stores, Inc*., No. 20-150-DWD, 2021 WL 823106, at *5 (S.D. Ill. Mar. 4, 2021)

(ordering parties to meet and confer regarding mutually agreeable ESI search terms); *Bartolini v.*

*Abbott Lab'ys, Inc.*, No. 12-52-NJR, 2015 WL 11439048, at *1 (S.D. Ill. Oct. 2, 2015) (ordering

parties to meet and confer regarding ESI custodians).  A party's failure to cooperate in discovery

is a sanctionable offense.  *Tyagi v. Smith*, 790 F. App'x 42, 44 (7th Cir. 2019); *see also Kulzer*,

633 F.3d at 598 (defendant's failure to cooperate with electronic discovery constituted

"stonewalling").

Here, the parties have agreed, and this Court has expressly ordered, that the parties meet

and confer in order to reach agreement on a reasonable list of document custodians and ESI

search terms.  ECF No. 53-1, ECF No. 67.  Defendant has refused to do so.  Indeed, Defendant

has:

- Refused to collaborate regarding document custodians or provide a written list of custodians, despite Plaintiffs' numerous requests, Braitberg Decl. ¶14;

- Refused to provide any response to Plaintiffs' search term proposal, which was sent to Defendant on May 6, 2021, Braitberg Decl. ¶11, Exhibit H at 1;

- Refused to accept any of Plaintiffs' proposed search terms, Braitberg Decl. ¶22;

- Agreed to use only a narrow set of unilaterally selected search terms, Braitberg Decl. ¶10, Exhibit G at 1–2;

- Wholly ignored Plaintiffs' repeated requests for information regarding the data sources, date ranges, and centrally stored files that Defendant will search, Braitberg Decl. ¶9, Exhibit F; and

- Refused to respond to Plaintiffs' requests seeking the identity of those with knowledge about the facts underlying this case, as well as Plaintiffs' requests for organizational charts and other similar materials, depriving Plaintiffs of information necessary to identify potential custodians.  *See infra,* Section II.h.

Defendant's failure to cooperate violates both the Court's ESI Order and controlling Seventh

Circuit authority requiring parties to collaborate regarding electronic discovery.  ECF No. 67;

*Tyagi*, 790 F. App'x at 44; *Kulzer*, 633 F.3d at 598; *Bartolini*, 2015 WL 11439048, at *1;

*Bolden*, 2021 WL 823106, at *5; Sedona Principles at 136.  This Court should (i) enforce its ESI

Order by requiring Defendant to promptly collaborate regarding electronic discovery, and (ii)

appropriately sanction Defendant for its continued noncompliance.[9]

## II.   The Categories of Materials That Plaintiffs Have Requested and Defendant Has Refused to Produce Are Highly Relevant and Proportional

The Court should additionally order Defendant to provide the highly relevant, responsive

documents and information that it has refused to produce.

### A.   Information Regarding the Location(s) Where Defendant Stores Biometric Data

Because information regarding the location where Defendant stores biometric data, which

Plaintiffs seek in Interrogatory 12,[10] is both highly relevant and proportional, Defendant's refusal

to produce it is improper.  Braitberg Decl. ¶4, Exhibit C at 14.  Among other things, Plaintiffs

have alleged that:  Defendant controls whether biometric data are kept locally on its devices

(Compl. ¶105); not all biometric data are stored on Defendants' servers (*id*.); biometric data may

persist on discarded devices (*id*. ¶56); storage of biometric data on personal devices creates a

multiplicity of threats (*id*. ¶130); durability of memory creates a nearly permanent risk of data

breach (*id*. ¶135); and locally stored data is vulnerable to hackers (*id*. ¶137*)*.  In Interrogatory

No. 12, Plaintiffs merely request a description of the location where the biometric data at issue

are stored – information that is relevant to all of the above allegations.  Because Defendant

refuses to produce this information, Defendant should be compelled to do so.[11]  Braitberg Decl.

---

[9] Plaintiffs respectfully request that the Court order Defendant to take part in a meet-and-confer process around the e-discovery matters referenced that concludes within 14 days of the Court's ruling on this motion.

[10] *See* Braitberg Decl. ¶2, Exhibit A at 7:  Interrogatory No. 12 ("Describe in detail the location(s) upon Apple Devices where any information regarding human faces used by the Photo Sorting Features is stored.").

[11] All six Rule 26(b)(1) factors strongly favor disclosure.  *See* Fed. R. Civ P. 26(b)(1).  *First,* the issue in this case – protection of Illinois citizens' biometric data – is of great importance, as recognized by the Illinois General Assembly and Illinois Supreme Court.  *See* Fed. R. Civ P. 26(b)(1) (factor 1); *Rosenbach v. Six Flags Ent. Corp*., 2019 IL 123186, ¶ 35, 129 N.E.3d 1197, 1206 (noting General Assembly's assessment of the "risks posed by the growing use of biometrics by businesses and the difficulty in providing meaningful recourse once a person's biometric identifiers or biometric information has been compromised").  *Second,* the "amount in controversy" is indisputably substantial, given that there are likely millions of Apple Device owners in Illinois.  *See* Fed. R. Civ P. 26(b)(1) (factor 2).  *Third,* the discovery in this case is inherently asymmetric:  only Defendant, an entity with

¶4, Exhibit C at 14.

B.      Defendant's Prior Statements Regarding Its Storage of Biometric Data

Defendant's prior statements regarding the manner in which it stores the biometric data

collected by its devices – and specifically whether biometric data are stored locally on

Defendant's devices or on Defendant's servers – are directly relevant to Plaintiffs' claims.  *See*

RFP No. 27.[12]  Defendant premises its refusal to respond to RFP No. 27 on its position that

Plaintiffs' claims do not turn on whether the biometric data collected by Defendant's devices are

stored locally on Defendant's devices or on Defendant's servers, and therefore the manner in

which Defendant stores its customers' biometric data is irrelevant.  Braitberg Decl. ¶20, Exhibit

K at 5.  However, whether biometric data are "kept locally on users' Apple Devices" is not

merely relevant; it is one of the class-wide common questions underlying this litigation.  Compl.

¶105.  Plaintiffs, moreover, have not conceded that <u>no</u> biometric information is stored on

Defendant's servers; instead, Plaintiffs allege that "not . . . all" biometric data at issue is so

stored.  *Id*.  Consequently, the extent to which biometric data is stored locally on devices and/or

on Apple servers is not only relevant, it goes to the "heart of the Plaintiff[s'] claims."  *Last*

*Atlantis Cap., LLC v. AGS Specialist Partners*, 292 F.R.D. 568, 575 (N.D. Ill. 2013).  Because it

would be error to "refus[e] to compel production of" evidence which could be "the dispositive

piece of evidence in th[e] case," *Ogurek v. Gabor*, 827 F.3d 567, 568 (7th Cir. 2016), the Court

---

indisputably vast "resources" has "access to relevant information."  *See* Fed. R. Civ P. 26(b)(1) (factors 3 and 4); *see also City of Rockford v. Mallinckrodt ARD Inc*., 326 F.R.D. 489, 495 (N.D. Ill. 2018) (granting discovery motion in case involving "asymmetrical discovery, with [d]efendants having access to the vast majority of the relevant information" and where the main defendant was a "large international . . . company with substantial resources"). *Fourth*, the requested discovery is critical, as the location of data stored by the Photos App is central to Plaintiffs' allegations.  *See* Fed. R. Civ P. 26(b)(1) (factor 5); *see also* Compl. ¶¶1,2,3,6,43, 64–67, 69, 77, 80–82, 84, 85, 93–95, 99–101, 108–109, 115–117, 122, 126 (alleging that Defendant, through its Photos App, collects, possesses, and profits from biometric data). *Fifth*, the requested information is not burdensome or costly to produce because it indisputably is readily available to Defendant.  *See* Fed. R. Civ P. 26(b)(1) (factor 6).

[12] Braitberg Decl. ¶3, Exhibit B at 8:  RFP No. 27 ("All statements and communications by You about local versus cloud storage of Photos App data.").

should "overrule[] as frivolous" Defendant's objections to RFP No. 27 and require Defendant to produce the requested information. *See Charvat v. Valente,* 82 F. Supp. 3d 713, 717 n.1 (N.D. Ill. 2015).

C.  <u>Defendant's Prior Statements Regarding Biometric Facial Recognition and BIPA</u>

Defendant's prior statements regarding facial recognition and BIPA, which Plaintiffs seek in RFP Nos. 21, 29, 44, and 51 are relevant and discoverable.[13]  Defendants' assertions to the contrary, Braitberg Decl. ¶¶4,19, Exhibit C, Exhibit J at 5, 7, rest on an incorrect understanding of relevance. *See Loft*, 103 F.2d at 5 (discoverable information need not "be complete, direct or decisive of issues").  Defendant's position further ignores that its prior statements are directly relevant to its state of mind, and thus damages.

As an initial matter, Defendant's statements regarding facial recognition and BIPA are directly relevant to its knowledge and intent, and therefore damages.[14]  As this Court previously held, the fact that "Apple continues to collect faceprints from Illinois residents in violation of BIPA more than eleven years after BIPA's enactment . . . is sufficient to create an inference that the conduct was either negligent or reckless[, but] . . . the states of mind with regard to BIPA only relate to possible recovery for each violation, which is not yet before the Court." *Hazlitt v. Apple Inc.*, No. 20-421-NJR, 2020 WL 6681374, at *10 (S.D. Ill. Nov. 12, 2020).  Because Defendant's prior statements regarding facial recognition and BIPA, accordingly, are "basic

---

[13] Braitberg Decl. ¶3, Exhibit B at 7–10: RFP No. 21 ("All public statements concerning Facial Recognition technology, including but not limited to keynote addresses, advertisements and scientific publications."); RFP No. 29 ("All statements made by Apple employees, contractors and affiliates, related to the facial recognition/machine learning/clustering abilities of the Google Photos app to sort and group photos by the face of the individual."); RFP No. 44 ("All public statements made by You with respect to BIPA, whether pre- or postenactment, and whether made in press release, in response to press inquiry, or in sworn or unsworn testimony, such as in a state or federal court, or in front of a state or federal investigative, enforcement, or consumer protection agency or tribunal, or legislative body."); RFP No. 51 ("All statements made by or received by Apple employees, officers, managers, directors, contractors and affiliates concerning BIPA, including statements from counsel.").

[14] *See* 740 ILCS 14/20(2).

issues and facts" that concern Defendant's state of mind, they must be "disclosed to the fullest

practicable extent[.]"  *Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963).

Moreover, "[r]elevancy cannot be equated with admissibility at trial or the narrow issues

presented by the facts.  The test of relevancy is the subject matter of the action." *In re Aircrash*

*Disaster Near Roselawn, Ind. Oct. 31, 1994*, 172 F.R.D. 295, 303 (N.D. Ill. 1997); *Loft,* 103 F.2d

at 5.  A defendant's knowledge regarding the subject matter underlying a claim – as revealed, in

this case, by Defendant's prior statements concerning biometric facial recognition and BIPA –

is relevant and discoverable, especially when it demonstrates knowledge of the applicable

standard of care and potential preventive measures.  *See Weddington v. Consol. Rail Corp.*, 101

F.R.D. 71, 74 (N.D. Ind. 1984) (defendant required to respond to interrogatory concerning

warning devices at railroad crossings, since that information was relevant to defendant's

knowledge of safety and warning devices); *see also, e.g.*, *Turnbull v. Topeka State Hosp.*, 185

F.R.D. 645, 650 (D. Kan. 1999) (defendant employer required to produce information relevant to

"what the employer knew or should have known so as to create a duty to correct it").

Defendant's prior statements concerning biometric information and BIPA should therefore be

produced.[15]

D.     Litigation Regarding Defendant's Biometric Technology

Information about litigation regarding Defendant's biometric technology is relevant and

discoverable, and it would be more burdensome for Plaintiffs to locate than for Defendant to

---

[15] Additionally, courts routinely recognize that a defendant's knowledge regarding the conduct and liability of other corporations is relevant in assessing a defendant's liability in privacy breach cases. *See, e.g.*, *Equifax*, 362 F. Supp. 3d at 1320; *Portier*, 2019 WL 7946103, at *12; *Corona*, 2015 WL 3916744, at *5.  Here, Plaintiffs have alleged that Defendant developed and marketed its biometric Photo Sorting software at least in part as a response to Google's competing biometric technology.[15]  Compl. ¶117.  Defendant's prior statements concerning Google's biometric technology are therefore relevant to Plaintiffs' claims and should be produced.  *See* Fed. R. Civ P. 26(b)(1).

produce.  Defendant's refusal to provide this information is thus improper.  *See* Interrogatory No. 4.[16]

"Generally an interrogatory is proper although the information sought is equally available to both parties."  *United States v. 58.16 Acres of Land, more or less in Clinton Cty., State of Ill.*, 66 F.R.D. 570, 573 (E.D. Ill. 1975).  It is well established that public information is discoverable.  *E.g., Bowoto v. Chevron Corp.*, No. 99-02506-SI, 2006 WL 2507452, at *3 (N.D. Cal. Aug. 29, 2006) (granting motion to compel production of public statements); *see also Bielema v. Razorback Found., Inc.*, No. 20-05104, 2021 WL 50854, at *12 (W.D. Ark. Jan. 6, 2021) (similar); *Cahill v. Nike, Inc.*, No. 18-1477-JR, 2020 WL 1330434, at *2 (D. Or. Mar. 23, 2020); *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, No. 14-80651, 2015 WL 13215368, at *2 (S.D. Fla. Jan. 28, 2015) (similar); *Sparling v. Doyle*, No. 13-323-DCG, 2014 WL 12489987, at *16 (W.D. Tex. Aug. 18, 2014) (similar).  The burden "rests on the objecting party to show why a particular discovery request is improper."  *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 494 (N.D. Ill. 2012) (citing *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 450 (N.D.Ill.2006)).

Here, Defendant has not, and cannot, demonstrate that Plaintiffs' request for information related to Defendant's biometric technology litigation is improper.  As Plaintiffs pointed out, responsive information doubtless contains Defendant's statements relevant to this litigation.  For example, Defendant's patents explicitly state its software extracts facial landmarks.  Compl. ¶68.  Defendant likely can easily produce a list of litigation from centrally stored files, while Plaintiffs would need to conduct an onerous search.  Braitberg Decl. ¶18, Exhibit I at 6.  Accordingly, the

---

[16] Braitberg Decl. ¶2, Exhibit A at 6:  Interrogatory No. 4 ("List and describe all litigation involving (1) any of the patents identified in response to Interrogatory 3 and (2) technologies used by the Photo Sorting Software, including facial recognition, clustering or machine learning technologies.").

Court should require Defendant to provide a substantive response to Interrogatory No. 4.

E.    Defendant's Refusal to Identify Persons with Knowledge

Contrary to Rule 26's requirements, Defendant has refused to respond to Plaintiffs' interrogatories seeking the identification of persons with knowledge concerning Plaintiffs' claims. *See* Interrogatory Nos. 2, 5, 8, 13, 18, and 21.[17]  Instead, Defendant has identified only five potential witnesses, and has rejected Plaintiffs' attempts to compromise.  Braitberg Decl. ¶19, Exhibit J at 8.  Defendant's refusals are directly contrary to unanimous controlling authorities, including the Federal Rules of Civil Procedure, and materially prejudice Plaintiffs' ability to conduct discovery.

"The purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."  Fed. R. Civ. P. 26, Advisory Committee Notes (1946 amendment) (emphasis added).  Parties must produce "the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26, Advisory Committee Notes (2015 Amendment) (emphasis added); *Hickman*, 329 U.S. at 503 n.7; *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 12-02385-DRH-SCW, 2013 WL 5377164, at *4 (S.D. Ill. Sept. 25, 2013) (same); *Cima v. WellPoint Health*

_____

[17] Braitberg Decl. ¶2, Exhibit A at 5–9:  Interrogatory No. 2 ("Identify any person who may have any knowledge regarding the claims or defenses in this case, regardless of whether that person has knowledge that supports Your claims or defenses in this case."); Interrogatory No. 5 ("Identify: (i) all Apple employees, directors and officers that worked on any Photo Sorting Features of the Photos app, and state which persons were group leaders or managers. (ii) If different than above, identify the person who can best explain the functioning of any machine learning involved in any Photo Sorting Features used in the Photos app."); Interrogatory No. 8 ("Identify all companies You have acquired that were or have been involved in the development of Photo Sorting Software."); Interrogatory No. 13 ("Identify any licensing agreements by which You are or were authorized to use any software or technology contained within or used by the Photo Sorting Software."); Interrogatory No. 18 ("Identify all witnesses that might testify on behalf of You in this lawsuit, and for: lay witnesses, state the subject upon which the witness will testify; (2) independent expert witnesses, state the subjects on which the witness will testify and the opinions the party expects to elicit and the bases of their opinions; and (3) controlled expert witnesses, state:(i) the subject matter on which the witness will testify; (ii) the conclusions and opinions of the witness and the bases therefor; (iii) the qualifications of the witness; and (iv) any reports prepared by the witness about the case."); Interrogatory No. 21 ("Identify all Apple employees, directors, managers, officers, affiliates and contractors that developed the Photo Sorting Software, including the members and leaders of those teams.").

*Networks, Inc.*, No. 05-4127-JPG, 2008 WL 746916, at *2 (S.D. Ill. Mar. 18, 2008); *White v. Am. Water Works Serv. Co.*, No. 06-974-GPM, 2007 WL 2746613, at *1 (S.D. Ill. Sept. 18, 2007) (same); *see also Small v. WellDyne, Inc.*, No. 16-00062-BO, 2017 WL 2484181, at *6 (E.D.N.C. June 8, 2017) (noting that the preceding emphasized language from Rule 26 "was removed from the body of Rule 26 in 2015, but the advisory committee notes make it clear that it was removed because discovery of such matters is so deeply entrenched in practice that it is no longer necessary to clutter the long text of Rule 26 with these examples") (punctuation and citation omitted).   Numerous decisions in this Circuit and elsewhere confirm that discovery of the identities of potential witnesses is reasonable and appropriate.  *E.g.*, *Hall v. Life Ins. Co. of N. Am.*, 265 F.R.D. 356, 364 (N.D. Ind. 2010); *Barker v. Life Ins. Co. of N. Am.*, 265 F.R.D. 389, 395 (S.D. Ind. 2009); *E.E.O.C. v. Jewel Food Stores, Inc.*, 231 F.R.D. 343, 350 (N.D. Ill. 2005); *Ballard v. Terrak*, 58 F.R.D. 184, 185 (E.D. Wis. 1972).  Further, Defendant's refusal to identify potential witnesses, combined with its refusal to provide organizational charts or similar information, materially prejudices Plaintiffs' ability to engage in meaningful discussions regarding ESI custodians.  The Court should order Defendant to respond to the above interrogatories.

F.   Documents on Which Defendant Relied in Developing Its Photos Sorting Software

Documents and patents used in Defendant's development of its Photos Sorting Software are unquestionably relevant to the subject matter of this litigation.  *See* Interrogatory No. 3.[18]

---

[18] "Interrogatory No. 3 ("Identify all patents, research articles, academic articles, or articles published at or for conferences that You used or relied on in the development, creation, and implementation of technology enabling Apple's collection, capture, conversion, storage, sharing, and use of data relating to the Photo Sorting Features in the Photos app.").

Defendant's refusal to produce them is baseless.[19]

Defendant incorrectly premises its refusal to respond to Interrogatory No. 3 on the notion that it would have to accept Plaintiffs' theory of liability to respond.  But a defendant's denial of liability is no basis for refusing to produce responsive information.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (discovery is not limited to the merits of a case); *see also Wauchop v. Domino's Pizza, Inc.,* 138 F.R.D. 539, 550 (N.D. Ind. 1991) (overruling objection to interrogatory seeking "percentage of late deliveries from 1984 to present" because Defendant claimed "this accident did not involve a late delivery;" court held "[t]his goes to the merits of the case and not to discovery"); *Delta T, LLC v. Williams*, 337 F.R.D. 395, 399 (S.D. Ohio 2021) (a "Court may not deny a party relevant discovery because the other party, predictably, has a different view of the legal claims' merit").  Defendant should be ordered to produce the indisputably relevant requested materials.[20]

G.     Information Regarding the Security of Biometric Data on Defendant's Devices

Because information regarding the security of biometric data on Defendant's devices is relevant and discoverable, Defendant's refusal to respond to RFP Nos. 20, 24, and 28 is improper.  *See* RFP No. 20 (seeking statements "concerning the durability of the memory upon which Photos App data is stored on Apple Devices"); RFP No. 24 (seeking information regarding security measures Defendant takes to protect biometric data on its devices); RFP No. 28, seeking statements "about the risks of locally stored information").[21]

---

[19] Plaintiffs offered to reinterpret this Interrogatory to address Defendant's concerns.  Braitberg Decl. ¶18, Exhibit I at 6.  Defendant refused this good-faith effort at compromise.  Braitberg Decl. ¶20, Exhibit K at 6.

[20] Defendant's refusal to answer is especially egregious given that Plaintiffs offered a compromise position, which Defendant refused. Braitberg Decl. ¶20, Exhibit K at 6.

[21] Defendant agreed only to conduct searches of custodians' files for information regarding the risks of locally stored information responsive to RFP No. 28, but refused to search centrally stored files, and agreed only to this limited search "if Plaintiffs suggest reasonable search terms . . . before [Defendant] proceeds with its search-term collection[.]" Braitberg Decl. ¶20, Exhibit K at 5. Defendant, however, has refused to accept any of Plaintiffs' proposed search terms. Braitberg Decl. ¶17.

Plaintiffs seek actual damages in this case.  Compl. at 42.  The Seventh Circuit has recognized that actual damages may result from unauthorized use of data – i.e., a "security breach."  *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018).  Accordingly, information regarding the potential for security breaches on Defendant's devices is directly relevant to Plaintiffs' claim for damages.

Moreover, information in Defendant's possession related to the risks of unauthorized use of the biometric data at issue are directly relevant to Defendant's state of mind.  *See In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1320 (N.D. Ga. 2019) (fact that a defendant in a data breach case observed major data breaches at other corporations was relevant in determining whether breach of defendant's data was reasonably foreseeable); *Portier v. NEO Tech. Sols.*, No. 17-30111-TSH, 2019 WL 7946103, at *12 (D. Mass. Dec. 31, 2019), *report and recommendation adopted*, No. 17-30111, 2020 WL 877035 (D. Mass. Jan. 30, 2020) (similar); *Corona v. Sony Pictures Ent., Inc.*, No. 14-09600-RGK-EX, 2015 WL 3916744, at *5 (C.D. Cal. June 15, 2015) (similar).[22]  This information should be produced.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order (i) compelling Defendant to comply with its ESI order (ECF No. 67) and engage in cooperative discussions regarding ESI search terms, custodians, and searches of centrally stored files, to conclude within 14 days of the Court's order on this motion; (ii) imposing appropriate sanctions on Defendant for its noncompliance; and (iii) requiring Defendant to provide complete responses

---

[22] Breaches of the security of Apple Devices – and Defendant's concealment of these breaches – have been widely reported recently.  *See, e.g.*, https://www.vice.com/en/article/n7bbmz/the-fortnite-trial-is-exposing-details-about-the-biggest-iphone-hack-of-all-time, *archived at* https://perma.cc/BJ2G-X7BD (discussing revelation in spring 2021, during the trial of antitrust claims brought by Epic Games against Defendant, of a 2015 security breach which was the "biggest iPhone hack on record," and the details and extent of which Defendant "never disclosed").

19

to Plaintiffs' discovery requests identified herein, including by producing the relevant,

responsive materials described above that Defendant refuses to produce.


Dated:  August 5, 2021                          Respectfully submitted,

                                                /s/ Andrew D. Schlichter
                                                Jerome J. Schlichter
                                                Troy A. Doles
                                                Andrew D. Schlichter
                                                Alexander L. Braitberg
                                                Nathan H. Emmons
                                                SCHLICHTER BOGARD & DENTON, LLP
                                                100 South Fourth Street, Suite 1200
                                                St. Louis, MO 63102
                                                Telephone: (314) 621-6115
                                                Fax: (314) 621-5934
                                                jschlichter@uselaws.com
                                                tdoles@uselaws.com
                                                aschlichter@uselaws.com
                                                abraitberg@uselaws.com
                                                nemmons@uselaws.com

                                                and

                                                Christian G. Montroy
                                                MONTROY LAW OFFICES, LLC
                                                2416 North Center
                                                P.O. Box 369
                                                Maryville, IL 62062
                                                Telephone: (618) 223-8200
                                                Fax: (618) 223-8355
                                                cmontroy@montroylaw.com

                                                *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 5, 2021 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Andrew D. Schlichter