IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

ROSLYN HAZLITT, et al., )
)
Plaintiffs, )
)
v. ) No. 3:20-cv-00421-NJR
)
APPLE INC., )
) ***DISCOVERY HEARING***
Defendant. ) ***RE: CUSTODIANS***

TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS
BEFORE SPECIAL MASTER RANDI ELLIS

JUNE 20, 2022

Stephanie Rennegarbe, RDR, CRR, CBC
IL CSR #084-003232
750 Missouri Avenue
East St. Louis, IL 62201
618-482-9226
Stephanie_Rennegarbe@ilsd.uscourts.gov

*Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription*

APPEARANCES:

FOR THE PLAINTIFFS:
Alexander L. Braitberg, Esq.
Andrew D. Schlichter, Esq.
Schlichter, Bogard & Denton
100 South Fourth Street
Suite 1200
St. Louis, MO 63102
314-621-6115
abraitberg@uselaws.com
aschlichter@uselaws.com

Christian G. Montroy, Esq.
Montroy Law Offices, LLC.
2416 North Center Street
P.O. Box 369
Maryville, IL 62062
cmontroy@montroylaw.com

FOR THE DEFENDANT:
Eric M. Roberts, Esq.
DLA Piper, LLP.
444 West Lake Street
Suite 900
Chicago, IL 60606
312-368-2167
eric.roberts@dlapiper.com

Russell K. Scott, Esq.
Greensfelder, Hemker & Gale, P.C.
12 Wolf Creek Drive
Suite 100
Belleville, IL 62226
618-257-7308
rks@greensfelder.com

I N D E X


| **ARGUMENTS BY COUNSEL:** | **PAGE** |
|---|---|
| BY MR. ROBERTS | 5 |
| BY MR. SCHLICHTER | 13 |
| **QUESTIONS BY SPECIAL MASTER:** | |
| DIRECTED TO MR. SCHLICHTER | 21 |
| DIRECTED TO MR. ROBERTS | 22 |

(Proceedings began at 11:05 a.m.)

************************

SPECIAL MASTER ELLIS: This is *Doe v. Apple* case pending in the Southern District of Illinois. I am Special Master over Discovery. We have had several meet-and-confers and meetings on numerous topics, and today we are going to be on the record as to a disagreement between the parties with respect to custodians. And, so, Eric Roberts and many others are here for the Plaintiffs and Defendant, but we are going to let Eric go first and limit it to 15 minutes.

MR. ROBERTS: Do we want to make appearances first, or --

SPECIAL MASTER ELLIS: Yes, I should have done that. Yes, please.

MR. ROBERTS: So, Eric Roberts of DLA Piper on behalf of Apple.

MR. SCOTT: Russell Scott, Greensfelder, also for Apple.

MR. SCHLICHTER: Andy Schlichter for Plaintiffs.

MR. BRAITBERG: Alex Braitberg with Schlichter, Bogard & Denton for Plaintiffs.

MR. MONTROY: Chris Montroy with Montroy Law Offices for Plaintiffs.

SPECIAL MASTER ELLIS: Great. All right, Eric.

MR. ROBERTS: Thank you, very much.

So, I think it's important that, to start out, we have gotten mired down in an abstract discussion of custodians, I think, the parties' papers, and so we want to take a step back and reset the discussions in the context of what discovery is. And, as a reminder, discovery affords the parties a reasonable opportunity to investigate their claims and defenses and nothing more. And, so, within that frame it's important to be precise about what the claims are and what they are and what areas they touch on.

So, this case is about the People album feature, which is just one set of functions within the Photos app, which is just one set of functions within a mobile operating system, or the macOS operating system, which is just one offering by app. It's not appropriate to take the People album feature and then abstract it to the Photos album -- or, sorry, the Photos app and then abstract it to iOS and then abstract it to Apple. The proper frame is to start with the People album feature, and, that's why we think that [redacted] testimony, when he gave his deposition earlier this year, is it provides a very helpful guide and sets the guardrails for this one.

Plaintiffs asked him what teams worked on the People album feature. He gave a clear answer, and, that's on pages 21 and 22 of his deposition, which we attached as Exhibit 3 to our submission, which as a reminder he said, quote, there's

[redacted].

And that's the end of his testimony.

[redacted].

Now, [redacted] headed up one of these teams and has direct personal knowledge about that. He doesn't need to speculate about who has relevant information and he doesn't need to look at third-party websites to tell him who has relevant information. That's important, because Plaintiffs are not claiming in their papers that Apple failed to provide documents from any of these [redacted] teams and Apple has provided documents from all [redacted] of these teams. Apple has run search terms and provided documents, produced documents from [redacted] custodians. And, it's -- I want to be clear it is the [redacted] custodians. I think that there are a couple of references in Plaintiffs' papers suggesting it's only been [redacted] custodians.

To date, Apple has now used [redacted] custodians and it's produced documents for [redacted] custodians. Those [redacted] custodians include [redacted].

Apple has also produced the source code. It has produced other documents that relate to the People album feature, and Plaintiffs have, therefore, received discovery adequate to investigate their claims, which is what they are permitted under the discovery rules.

Again, pause here to note what Plaintiffs are not claiming. They are not claiming, as far as I can tell, and they certainly are not demonstrating through the submission of any evidence of any sort that the discovery they have received

is inadequate to understand how the feature works, what it does, and what that means within the parameters of the Illinois Biometric Information Privacy Act. And, that's an important piece, because we are not looking to do first-level discovery; we are looking to add custodians, add discovery, do more discovery.

So, we think that this record demonstrates that the request for [redacted] new custodians is either an attempt to fish or use threat of document discovery to bring improper pressures to bear on Apple and its senior executives. It's not -- The discovery is not necessary to move this case forward and it's not proportional to the needs of the case, because there's no evidence at all that the custodians -- these [redacted] custodians possess noncumulative, unique material, relevant information that they haven't already received -- that the Plaintiffs haven't already received in discovery from Apple.

We wanted to make that clear, because there have been acquisitions levied in the papers in a Request for Sanction. And, again, both parties can point fingers at one another. We can explain to you how the Plaintiffs have abused the discovery process and that these requests are not appropriate and they are an attempt to bring pressure there on Apple that is not appropriate in the discovery process; but, rather than do that, the point here is to get through this, to identify

the appropriate custodians and move to the end of the discovery process.

The [redacted] custodians that Apple has already identified are the appropriate [redacted], but then we also want to discuss the [redacted] that the Plaintiffs have identified in their papers, starting with [redacted].

And, if you don't mind, Randi, unless -- unless this is too much to ask, can you enable me to screen-share? Is that possible?

SPECIAL MASTER ELLIS: I'm on my iPad.

MR. ROBERTS: If you are on your iPad, I don't think it's necessary.

SPECIAL MASTER ELLIS: I can make you host. Is that okay?

MR. ROBERTS: Yes.

SPECIAL MASTER ELLIS: There you go.

MR. ROBERTS: So, I should be able to screen-share now.

Please let me know if this isn't showing up, but this is the Exhibit 1 to our submission, and this is to provide some context.

[redacted] is among Apple Leadership. There he is. This is a printout from Apple's website, a leadership website, right there with the CEO, general counsel, and other senior members of Apple's leadership team, including the CFO

and the COO. He's a very senior member of Apple and he is, as a result, subjected or I guess I should say a temptation to engage in discovery views by serving deposition notices, document requests that seek discovery from [redacted].

Plaintiffs have spent months trying to climb Apple's corporate structure and we think for no reason. We have tried to dissuade them from doing so. We've tried to turn them off that path when they've invited us to do so, but they have persisted and, despite their efforts, have not developed a record that will warrant discovery from [redacted]. They don't point to any work [redacted] did on the People album feature or any actual decisions that he's made that are relevant to this case.

The one-paragraph proffer that they make in their motion consists of a single immaterial e-mail, some out-of-context and impertinent lies from testimony of [redacted] deposition and a hearsay blog post. This is after months of trying to climb the ladder to get [redacted] documents they come forward with three things, and none of them move the needle.

Notably, we think that it's notable, I should say, that they did not attach the e-mail that they cited. I hope you can see it now on your screen. This is the e-mail that they referred to in their paper. The top-level e-mail is not to or from [redacted]. Indeed, the only portion of this

four-page document that [redacted] sends or receives is the first e-mail, and in that first e-mail [redacted]. This doesn't demonstrate that he's involved in decisions and it doesn't demonstrate that he knows how the feature works or can provide relevant information in this case. This is a very narrow, very limited immaterial, irrelevant e-mail, and this is the best they have offered after several months of trying to climb the corporate ladder.

The other thing I want to point out about the e-mail is it's sent to [redacted], who is one of the custodians in this case. And, then after, this e-mail is forwarded to other individuals, and when they want to try to troubleshoot these issues they send the e-mail to [redacted], he's a custodian; [redacted] who's another custodian; and [redacted], he's another custodian. Apple has done everything that's required of it in discovery of this matter.

I'm going to take that down and just briefly address some of the other custodians.

A second custodian that they have asked for is [redacted]. The significant thing here is that the explanation that Plaintiffs have given for [redacted] to be a custodian is identical to the explanation that they have given

for [redacted] to be a custodian. Neither justify -- Sorry. The explanation doesn't justify discovery from either of the individuals, but it certainly doesn't require discovery from both, or jumping over [redacted] who provides the, quote, common link between, quote, disparate teams.

I see that I'm coming up on my timeline.

The remaining custodians, as far as I can tell the explanation, is that they are in groups that Apple has not produced documents from, but that's -- we go back to [redacted] testimony, and the point is that there were [redacted] groups that were deeply involved in developing this technology. And, the fact that Apple has not produced documents from other groups doesn't mean that we need to go fishing in those ponds; it means that those groups aren't expected to have relevant documents. And, that's something that you can draw from [redacted] testimony; [redacted] being somebody who's directly involved in developing the technology. You could identify lots of groups at Apple. You know, you could say that there's a janitor at Apple, but that doesn't mean that we need to produce documents from Janitorial Services. So, just because we haven't produced documents from a group or individuals within a group doesn't mean that there's any reason to go find relevant or responsive documents in those groups, and we think that that's true of each of the remaining five individuals; [redacted]

[redacted].

Unless you have any questions, that's all I have.

SPECIAL MASTER ELLIS: I'm going to hold my questions until after Plaintiffs go. But, thank you, Eric.

Alex, are you ready? Or is it Andy?

MR. SCHLICHTER: Andy. I'm going to go ahead and take this one, and we are going to rest primarily on our papers here. Certainly happy to address any questions that you have, but I'll just make a few points here, I think most of which are in response to what Mr. Roberts just had to say.

First of all, we have -- because for over a year Defendant refused to provide any of the information that it belatedly provided on April 29th of this year in its Supplemental Response to Interrogatory #5, we have gone through the limited production that have been made and identified more than [redacted] different individuals, current and former employees of Defendant, who are in some way involved with the claims. And these are relevant documents that Defendant has produced. We have spent quite a bit of time doing that. We are seeking just [redacted] of those folks as additional disputed custodians.

So, to put that into context, it's less than approximately [redacted] of the number that are out there; we are seeking just [redacted]. And when you look at other cases of similar size and scope, the total number of document

custodians we are seeking, which is [redacted], is much smaller. In fact, we cited a number of Seventh Circuit District Court cases in our papers where there are far, far more custodians used.

But, I think the critical point here is this, Randi: We are not seeking any irrelevant, nonresponsive, or privileged materials. All we are doing is seeking to add custodians. And, so, all the documents that would be produced from these custodial files are documents that Defendant is going to review before producing. So, I just want to make sure that's clear. There are no irrelevant, nonresponsive, or privileged documents that we are seeking. All of the documents that would be produced would have been reviewed by Defendant and then produced after that review. So, really, all we are talking about is burden here at the end of the day. What's the burden? And we would suggest the burden of adding [redacted] additional custodians, particularly in light of the TAR proposal that Defendant has made, which we have actually belatedly agreed to, is minimal and certainly hasn't been demonstrated, which it's Defendant's burden to establish and it's not disproportionate.

So, with that said, I just want to do three quick things here this morning. I would like to just provide some very brief contextual background to some of what this dispute concerns, just respond to a couple of Defendant's points

concerning the specific custodians at issue and then just briefly address the burden beyond what I just mentioned.

So, with regard to background, I will be quick here, but we do believe the context is important, because Defendant just said -- Mr. Roberts just said that they have done everything that's required of them, and that is simply untrue.

On January 21, 2021, we served our first interrogatories. In those interrogatories, Interrogatory #5, we sought information about their current and former employees, which is information that's customarily exchanged usually informally in cases in the form of organizational charts, etcetera, so that you can discuss appropriate custodians. This happens right at the beginning of document discovery. They simply refused to respond. They did not respond at all, even after the Court's ESI order was entered requiring collaboration on custodians and requiring the parties to reach agreement on custodians. That's Document #67 on the docket. In fact, they substantially completed their production in September of 2021, last year, without incorporating a single custodian that we proposed and without even giving us an answer to the interrogatory that we sent.

So, just stopping there, I think that reveals a pretty significant violation not only of discovery norms and the Court's order, but also governing Seventh Circuit authority, which we have cited, identifying the relevant

standards that apply with respect to cooperation. And it was not until, again, April 29th that we got this supplemental interrogatory response that finally, again albeit the morning before or the morning of a deposition, Randi, that you were a part of, that finally gave us the information we had been seeking for 15 months. So, I don't know why it took 15 months to get that information to us. If it had been provided, you know, in February or March of 2021, this could have gone a lot quicker. But, that's where we are and that's where we kind of see this dispute arising from.

Now, with respect to the custodians, I want to just address a couple points that Eric made, Mr. Roberts made. First of all, again, [redacted] document custodians who we seek here, there will be no documents that will be produced that are irrelevant or privileged or nonresponsive. And that is far fewer than the number of custodians that are commonly ordered in cases like this. Again, we are not talking about depositions; these are just document custodians.

So, if you look at the *Bank of America* case in the Northern District of Illinois, there were 38 custodians there. In the *Humana* case, there were 20 custodians. That was in the Eastern District of Wisconsin in 2020. In the *Stinson* case, there were several dozen custodians in that case. And, then the Northern District of Illinois case, *Kleen*, that we discussed, in that case there's actually an order entering

additional custodians after over a hundred custodians had already been used. So, the number of custodians here we are talking about is really pretty minimal. And, when you look at the size of this case and the scope of this case, not to mention the sprawling nature of Apple's team that was working on this, I think that is modest, if anything.

I do want to address that point, because, you know, Mr. Roberts repeatedly cited to [redacted] deposition testimony. Well, as we all know, [redacted], although he did have some knowledge about the areas in which he was specifically involved, he specifically said and testified that he lacked knowledge about the work that other teams did. And, that's when you look at the Supplemental Answer to Interrogatory #5, which they provided the morning of our deposition, there are a number of teams that they identified that are involved in the work related to the claims at issue; [redacted].

All that we are seeking here at the end of the day is the custodians who were most involved in this underlying technology and software and then at least one representative from the various teams involved so that we don't have any blind spots, and that's all we are seeking.

So, I will start with [redacted]. That's according to the Defendant's own witness here. So, the idea that he's just some sort of apex opponent who we are seeking to climb the ladder for is simply not true. And I would say the idea that we are trying to climb the ladder is completely contradicted by what's happened here. We are simply trying to get the custodians that have some involvement in this technology to be a part of this case. Defendant's approach is that it should unilaterally get to select the custodians and not have any involvement from Plaintiffs' in that process, but that's not what the Court's order requires.

But, again, if you look at the papers, I think you will see plenty of information about why [redacted] is an appropriate custodian. He was the individual that made the tough calls and owned them and, as the documents in this case show, we identify one document as one example, but there are many that show he directly corresponded with engineers and others regarding the People album software at issue.

With respect to the other [redacted] that we are seeking, I will go quickly through these.

[redacted]. Nobody else on the [redacted] team is being requested. And, again, I think the fact that Mr. Roberts doesn't really address these other custodians and kind of goes about it in a half-hearted way in the papers, I think, suggests that they recognize there's no real response to why these folks shouldn't be included.

Same with [redacted]. No one else from the [redacted] team would be a custodian except for [redacted].

[redacted] was the leader of the [redacted], which is undisputedly very, very closely involved and he oversaw members of the [redacted], as well.

[redacted]. No one else from that team is proposed as a custodian.

[redacted]. No one else from that team was proposed, either.

[redacted] most important teams. The testimony was that he was more involved with the People album than anybody else on that team at all. So, [redacted] is also an important custodian.

But, at the end of the day, just to wrap this up, this is a question of burden, because we are not asking for them to produce any irrelevant and nonresponsive documents,

privileged documents. We are just asking them to include documents from these folks in their pool that they are applying TAR to and then looking at once TAR's done its thing, and they have done nothing to show that there is a burden. It's their responsibility to make that showing and they cannot make it here.

Again, this is a putative class action involving millions of potential Plaintiffs, as well as very complicated software technology and these different teams within Apple. We believe it's appropriate to have at least one representative from these teams, as well as the folks who made the important decisions, and that's where [redacted] specifically falls.

So, just, again, to summarize, I think that here we are talking about a very modest number of additional custodians. All these folks were closely involved with the technology and software at issue, and we believe that if we don't at least include them in the pool that TAR is being applied to, there's a very good chance that we could miss a number of responses relevant, highly important e-mails to this case and not have e-mails from some of the teams that were very closely involved and working on this technology.

So, I don't have anything more, but I would be happy to address any questions that you have, Randi.

SPECIAL MASTER ELLIS: Yeah, let me ask, Andy, one

question for you, and then one for Eric.

So, it is obvious to me that Apple is most upset by the thought of [redacted] involved. Do you believe that -- I will spell his name for [redacted] --

How do you pronounce that, Andy?

MR. SCHLICHTER: My working assumption is [redacted], but I'm open to correction from Apple's Counsel.

SPECIAL MASTER ELLIS: So, [redacted]. How would the documents not be cumulative? If you are getting the documents regarding [redacted], would you still need [redacted]?

MR. SCHLICHTER: I believe it's *Mister*, but I am open to being corrected by that, too.

[redacted]

And when you look at this case, Apple's state of mind is directly in play. And, so, the question of how decisions were made is important, and we believe that it's important at least to get -- We are not saying here that he has to be a

deponent, necessarily. We want to look at the documents and see what makes sense.

So, and I would just point out that the cases that they cite to support their argument that [redacted] shouldn't get custodian are apex deposition cases, for the most part, and this is not that scenario. We are not seeking him as a deponent. We are only seeking to get his documents and pull those documents again. So, I think that distinguishes this from the *Blackberry* case they cite, for example, *Blackberry v. Facebook*, and the other cases. In fact, in *Blackberry*, the Court declined to apply the apex doctrine to document discovery saying that the issue was grounded relevance. And that's ultimately what we believe here. It's a relevance question. And when you look at [redacted]. So, in light of that, we are sort of hung up on how it's not relevant to at least get his documents in the set that TAR will look at and then Apple's attorneys will review.

SPECIAL MASTER ELLIS: Okay. And, Eric, let me ask you, I also had pulled out that part of the deposition where [redacted] closed quote.

Eric, how would that not be relevant here and not a

burden if they are just asking for the documents at this time? I was thinking you guys were the most concerned he was going to be deposed, but now I see you don't want his name as custodian, either. So, can you address those two things?

MR. ROBERTS: Yes, I can, thank you. So, certainly we don't think he should be a deponent, and his time would be -- His -- There are other separate considerations that need to be raised in the context of an apex deposition. I will say that the cases that we cited are not apex deposition cases. The *Blackberry* case, the *Blackberry v. Facebook* case is, in fact, a document custodian case. And the ruling in that case was if you are going to take document discovery, take it from the engineers who were directly involved in the feature that was at issue in that case and not from the CEO of that case. And, it's the exact same rationale here. In fact, that is the case that most closely mirrors this case and the outcome that most closely mirrors this case.

In terms of the testimony, so I think that there are two things happening here. There's testimony and then there's an outside hearsay document that's been sort of wrapped in. And, I'll address them separately. So, that the testimony that has been quoted where [redacted], that's why I started with this case is about the People album feature, it's not about iOS. It's not about the Photos app in its entirety;

it's about the People album feature. And, talking about decisions in the abstract doesn't say that [redacted] had any actual decisionmaking power or was involved in any relevant decision with respect to the People album feature or as it relates to privacy with respect to the People album feature.

And, we do think that it's important that not only -- So, set aside [redacted], who is one custodian that they could have chosen, but elected to jump over him and also request [redacted]. Another person that they haven't mentioned is the [redacted], who is a custodian in this case and who Apple has collected documents from and has produced documents from. And, so, if there are decisions that relate to privacy or that relate to the People album features with privacy, he would be expected to have those documents and the relevant information.

So, it's not decisionmaking in the abstract, it's not iOS in the abstract. It's the People album feature, and it's really specifically certain aspects of the People album feature as they pertain to the Illinois Biometric Information Privacy Act. That's the first piece that I wanted to emphasize.

The second piece I wanted to emphasize is that directly before that piece of testimony they asked if [redacted] was involved in specific decisions for this feature,

and [redacted]. And, I think that that just -- again, it underscores there are decisions that are at a very high-level abstraction and then there are decisions that are made at a feature level. And with respect to feature-level decisions, [redacted].

With respect to the tough calls, quote, that comes from a third-party website; it does not come from Apple. And, I'm not entirely sure that that website says what they think it says. In fact, the way that I read the quote they have pulled out from that website is that it's actually the DRIs. So, the website talks about directly responsible individuals and that it's the DRIs that make the tough decisions. It's the people who are directly involved in the technology, the experts who are being relied upon to make the tough decisions. And, if that's the case -- And, by the way, I don't know one way or another. This is a third-party website, it's not Apple's. But, if that's what that -- If that's what the author is saying, it just underscores that Apple has chosen the right custodians here, because it has provided the documents from the experts, from the people who were directly

involved with developing the software.

SPECIAL MASTER ELLIS: Okay, that's good. That helps me.

Andy, do you have anything you wanted to just do a quick reply to? Not necessary, but if there was anything new.

MR. SCHLICHTER: Yeah, just very, very briefly. I just want to touch on one very brief point that wasn't exactly mentioned by Counsel, and that is what we are not really talking about here is what is ultimately at issue. I think that's because Defendant doesn't want to address that point, because it can't, and that is the question of what custodians are appropriate is ultimately about burden. That's all it is, because we are not asking them to produce anything that's irrelevant. We are not asking them to put anybody up for a deposition, and all we are talking about is burden.

The TAR process, if that is going to be used, is going to go through and, you know, through a machine algorithm pluck out documents that it deems responsive, cumulative documents, duplicates cannot be reviewed by humans, it can be pulled out by any document management software that's out there available in the market today. So, we are only talking about having to review a very, very small subset here and we would just submit that the burden of doing that, especially now that we are talking about TAR after talking for 13 months about search terms, you know, we are okay with switching

gears, but especially given that we are using TAR, we just don't see that as being a burden. I think I would just submit that the fact that they are not even really seriously attempting to address the burden here is telling and revealing. And, that's all I have to say.

SPECIAL MASTER ELLIS: All right. So, that will end our on-the-record discussion.

(Proceedings adjourned after an off-the-record discussion)

REPORTER'S CERTIFICATE

* * * * * * *

I, Stephanie K. Rennegarbe, RDR, CRC, Official Court Reporter for the U.S. District Court, Southern District of Illinois, do hereby certify that I reported with mechanical stenography the proceedings contained in pages 1-28; and that the same is a full, true, correct and complete transcript from the record of proceedings in the above-entitled matter.

*/S/ Stephanie K. Rennegarbe,* 06/23/2022
IL CSR, RDR, CRC