IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JANE DOE, by and through next friend
JOHN DOE, RICHARD ROBINSON, and
YOLANDA BROWN, on behalf of
themselves and all other persons similarly
situated,

              Plaintiffs,

v.

  APPLE INC.,

              Defendant.

Case No. 3:20-CV-421-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a partial Motion to Dismiss the Amended Class Action
Complaint filed by Defendant Apple Inc. ("Apple"). (Doc. 101). Apple seeks dismissal of
Plaintiffs' claim that data sent to Apple's iCloud Photos Library, known as "Sync Data,"
contains biometric information or biometric identifiers and, thus, falls within the parameters
of Illinois's Biometric Information Privacy Act ("BIPA"). For the following reasons, the
motion is denied.

### BACKGROUND

This case initially arose from Plaintiffs' claims that Apple collects and possesses users'
facial geometries and associated data—"faceprints"—through its Photos app, and that such
data qualifies as biometric identifiers and biometric information under BIPA. (Doc. 1-1).
Plaintiffs alleged that, under BIPA section 14/15(b), Apple is required to notify users in
writing and obtain informed consent before collecting these biometric identifiers and

Page 1 of 12

biometric information, but failed to do so. *See* 740 ILL. COMP. STAT. § 14/15(b). Plaintiffs

further alleged Apple violated BIPA section 14/15(a) by possessing biometric identifiers and

biometric information without creating and following a written, publicly available policy

with retention schedules and destruction guidelines. *Id.* § 14/15(a). Plaintiffs' third count

under BIPA section 14/15(c) was remanded to state court. (Doc. 64).

On December 14, 2021, Plaintiffs moved for leave to amend the complaint to include

additional factual allegations based on information obtained during discovery. (Doc. 91). The

motion stated that the amended complaint would not contain any new claims. (*Id.*). Apple

did not oppose the motion, so the Court granted Plaintiffs' motion for leave to amend.

(Doc. 92).

The Amended Complaint, filed on December 16, 2021, contains a number of additional

facts to supplement and further detail Plaintiffs' allegations that Apple collects and stores

biometric information locally on users' devices and uses that biometric data for the purpose

of identifying individuals. (Doc. 93). It also, however, adds new facts alleging that biometric

information is transmitted to Apple's servers when a user elects to enable the iCloud Photos

Library.

Specifically, Plaintiffs allege that Apple includes facial recognition technology as a

feature of its Photos App. (*Id.* at ¶ 65). This so-called "Photo Sorting Software" uses biometric

identifiers collected from images to create albums that group together photos of the same

person. (*Id.* at ¶ 66). Plaintiffs allege this process requires Apple to scan facial geometry to

create faceprints. "Faceprinting" uses biological characteristics to verify an individual's

identity by extracting an individual's face geometry data in order to confirm a subsequent

match of the individual's face. (*Id.* at ¶ 41). Face geometry is a physiological characteristic

and qualifies as a "biometric identifier" under BIPA. (*Id.* at ¶ 23).

In their initial Complaint, Plaintiffs alleged that this data was stored on the user's device, but that Apple had control over and the ability to access the faceprints through its software. (Doc. 1-1). In the Amended Complaint, Plaintiffs now claim that this data is also transmitted to Apple through the iCloud Photos Library, thereby allowing Apple to collect and store biometric information on its servers. (*Id.* at ¶ 118). This synchronization of data, known as Faces Sync, allows users to access the data from multiple Apple Devices, if those devices are logged into iCloud with the user's Apple ID. (*Id.* at ¶ 121).

According to Plaintiffs, Apple uses Faces Sync to keep users' People albums up to date. (*Id.* at ¶ 126). Faces Sync combines faceprints with identity information gleaned from user actions, such as inputting names for individuals in photographs and confirming or rejecting the faceprint algorithm's inclusion of certain faces. (*Id.* at ¶ 127). Once a user with an active iCloud Photos Library tags a person in a photograph, that tag is automatically sent to Apple's servers. (*Id.* at ¶ 130). Apple allegedly also selects "key faces" to represent certain individuals and generates cropped versions of user photographs containing faces recognized by its faceprint algorithm. (*Id.* at ¶ 129). Collectively, this data is known as "Sync Data" and is stored on Apple's servers. (*Id.* at ¶¶ 129-33). Because it is stored on Apple's servers, Plaintiffs allege, Apple collects and possesses biometric data under the meaning of BIPA. (*Id.* at ¶¶ 136-38). Furthermore, while Apple claims its users' data is encrypted, it stores encryption keys in the cloud and is able to access users' photos and associated Sync Data. (*Id.* at ¶ 139).

Plaintiffs' Amended Complaint also modifies the definition of the two subclasses as follows:

Subclass 1: All Illinois citizens whose faces appeared in one or more photographs taken or stored on their own Apple Devices or whose faces appeared in one or more photographs stored in their iCloud Photos Library from September 13, 2016 until present.

Subclass 2: All Illinois citizens whose faces appeared in one or more photographs taken or stored on an Apple Device other than their own or whose faces appeared in one or more photographs stored in an iCloud Photos Library other than their own from September 13, 2016 until present.

Apple now moves to dismiss Plaintiffs' new BIPA claims as they pertain to Apple's iCloud Photos Library. (Doc. 101). Apple contends the new claims must fail because Sync Data is not, and cannot be, biometric information. Apple also argues it does not collect or possess Sync Data. Plaintiffs responded in opposition (Doc. 110) and additionally filed a notice of supplemental authority (Doc. 114). Apple filed a reply brief (Doc. 112) and a response to the notice of supplemental authority (Doc. 116).

## LEGAL STANDARD

"A motion under Federal Rule of Civil Procedure 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. at 555 (internal citations omitted).

To state a claim under BIPA section 15(a), Plaintiffs must allege: (1) Apple is in possession of biometric identifiers or biometric information; (2) Apple breached an obligation to develop a written policy establishing a retention schedule and guidelines for permanently destroying that data; and (3) Plaintiffs were "aggrieved" as a result. 740 ILL. COMP. STAT. §§ 14/15(a), 14/20. To state a claim under section 15(b), Plaintiffs must allege: (1) Apple collected, captured, purchased, received through trade, or otherwise obtained a person's biometric identifier or biometric information; (2) Apple failed to inform users from whom it is collecting information that it is doing so, and to disclose the purpose of the collection and the length of the retention; (3) Apple failed to obtain written consent from the affected person; and (4) Plaintiffs were "aggrieved" as a result. *Id.* §§ 14/15(a), 14/20; *see also Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1245 (7th Cir. 2021).

### DISCUSSION

### I.      Counts or Claims?

As an initial matter, Plaintiffs argue that Apple cannot seek dismissal of their new factual allegations, citing Seventh Circuit case law that bars "piecemeal dismissals of *parts* of claims." *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 324-25 (7th Cir. 2015). Plaintiffs aver that the Amended Complaint merely adds factual allegations in support of their existing section 15(a) and 15(b) claims, not entirely new claims. Thus, the motion to dismiss must be denied.

Plaintiffs' argument conflates legal claims with counts. "A claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012); *see also Sokolova v. United Airlines, Inc.*, No. 18-CV-02576, 2019 WL 1572555, at *2 (N.D. Ill. Apr. 11, 2019) ("Rule 8 requires that complaints plead *claims*, which is to say grievances."). Counts, however, are the legal theories upon which the plaintiff

Page 5 of 12

seeks redress for those grievances. *Prominence Advisors, Inc. v. Dalton*, No. 17 C 4369, 2017 WL 6988661, at *2 (N.D. Ill. Dec. 18, 2017).

When deciding a motion to dismiss for failure to state a claim, the only question is "whether the complaint includes factual allegations that state a plausible claim for relief." *BBL*, 809 F.3d at 325. "Identifying legal theories may assist defendants and the court in seeing how the plaintiff hopes to prevail, but this organization does not track the idea of 'claim for relief' in the federal rules." *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992). "Attacking counts and legal theories as if they are claims can obscure the differences between them; the legal theories associated with the counts of a complaint are little more than non-dispositive labels subject to change as allegations yield to evidence over the course of discovery." *Sokolova*, 2019 WL 1572555, at *3.

Here, Plaintiffs argue they have merely added factual allegations to support their two counts under BIPA rather than adding a new claim. But as case law demonstrates, Plaintiffs' two BIPA counts are merely the legal theories upon which Plaintiffs seek redress for their claims. With the Amended Complaint, Plaintiffs now have two sets of factual allegations, both of which assert a claim for relief. In the original Complaint, Plaintiffs asserted facts giving rise to a claim that Apple's Photos app generates and stores faceprints without the requisite consent and retention/destruction policy, and thereby Apple has violated BIPA. Plaintiffs' newly added facts, however, allege Apple collects and possesses Plaintiffs' biometric data on its servers via its iCloud Photos Library in violation of BIPA. In other words, Plaintiffs still assert two counts under BIPA for violation of sections 15(a) and 15(b), but now they have asserted two sets of operative facts—or claims—potentially giving rise to those counts.

Because Apple is not seeking the piecemeal dismissal of a part of a claim, but rather the complete dismissal of Plaintiffs' new iCloud Photos Library claim, Apple's motion will not be denied on procedural grounds.

### III. Does Sync Data Constitute Biometric Identifiers or Information?

Apple first argues that Plaintiffs' new claim must be dismissed because they have not pleaded sufficient facts to demonstrate that the Sync Data stored on Apple's servers is a biometric identifier or biometric information and is, therefore, governed by BIPA.

BIPA section 10 defines a "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILL. COMP. STAT. 14/10. Photographs are explicitly excluded as biometric identifiers under the statute. *Id.* Biometric information is defined as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id.*; *see also Sosa v. Onfido, Inc.*, No. 20-CV-4247, 2022 WL 1211506, at *6 (N.D. Ill. Apr. 25, 2022). "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." *Id.*

Apple argues that, at its core, Sync Data is comprised of cropped photographs, which are not biometric identifiers under the statute. While a user may add identifying information such as a name to the data, that does not transform the photograph into a biometric identifier. In response, Plaintiffs assert they have alleged that Sync Data is derived from faceprints, not simply photographs, in combination with additional identity information gleaned from user actions. And courts have universally rejected the idea that faceprints cannot be biometric identifiers because they are derived from photographs.

In their notice of supplemental authority, Plaintiffs point the Court to a case recently

decided in the Northern District of Illinois, *Sosa v. Onfido, Inc.*, No. 20-CV-4247, 2022 WL 1211506 (N.D. Ill. Apr. 25, 2022). There, the online marketplace OfferUp partnered with Onfido, which used its software to identify OfferUp's users. *Id.* at *1. The software "scan[ned] identification cards and photographs to locate facial images and extract[ed] a unique numerical representation of the shape or geometry of each facial image," *i.e.*, a faceprint. *Id.* at *7. Onfido allegedly then kept the faceprint in a database for access every time another person used Onfido's verification process. *Id.* at *1. Onfido argued that BIPA excludes photographs and information from photographs from its reach, but the court disagreed. *Id.* at *7. The court concluded that "[t]he faceprints extracted by Onfido plausibly constitute scans of face geometry and, therefore, 'biometric identifiers' under BIPA." *Id.* The court further clarified that, while BIPA expressly excludes photographs from its definition of "biometric identifier," and information derived from photographs from the definition of "biometric information," "nothing in section 10 excludes information derived from photographs from the definition of 'biometric identifiers.'" *Id.* In sum, photographs are not biometric identifiers, and information derived from photographs is not biometric information, but information derived from photographs (faceprints) can be biometric identifiers.

The problem here, according to Apple, is that Plaintiffs have not alleged that Sync Data is a "biometric identifier." They allege that Sync Data is "biometric information." (Doc. 93 at ¶ 134; Doc. 10 at p. 13). And under BIPA, "[b]iometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers," that is, photographs. 740 ILL. COMP. STAT. 14/10.

Thus, the question for this Court is whether Sync Data contains information derived

from photographs or information derived from faceprints. If it is the former, Sync Data cannot be biometric information. But if it is the latter, then Sync Data would qualify as biometric information.

Turning to the Amended Complaint, Plaintiffs have alleged that Apple collects and stores biometric information derived from faceprints, which Apple uses to identify individuals. (Doc. 93 at ¶ 118). Beginning in 2017, Apple began synchronizing users' "People" albums across their devices with the iCloud Photos Library. (*Id.* at ¶ 119). This synchronization is referred to as Faces Sync. (*Id.*). Faces Sync "leverages all user actions, synced between devices, to reconstruct a Person's identity from locally processed faces," and "cannot function without the faceprints processed locally on Apple Devices." (*Id.* at ¶¶ 127- 28). In other words, Faces Sync combines faceprint data processed on Apple Devices with user-inputted tags, users' input regarding whether faces belong to particular individuals, and other data including key faces and face crops that are recognized by Apple's faceprint algorithm. (*Id.* at ¶ 129). Collectively, this data is referred to by Plaintiffs as "Sync Data." (*Id.*). Plaintiffs allege Apple "derives from faceprints the identities of individuals appearing in photographs in Apple Photos." (*Id.* at ¶ 133). These identities, comprised of the Sync Data, are stored on Apple's servers. (*Id.*).

Construing all well-pleaded facts in favor of Plaintiffs, these allegations demonstrate that Sync Data contains information derived from faceprints, not simply photographs, which can be used to identify individuals. And under BIPA, biometric information includes any information based on an individual's biometric identifier that is used to identify an individual. Because Plaintiffs have alleged facts demonstrating that Sync Data is biometric information, Apple's motion to dismiss is denied on this basis.

Page 9 of 12

**IV.    Does Apple Collect or Possess Sync Data?**

Apple next asserts dismissal is required because there are no well-pleaded, factual allegations supporting Plaintiffs' conclusion that Apple, as opposed to Plaintiffs themselves, collects and possesses the Sync Data that a user sends to his or her iCloud Photos Library. Rather, Plaintiffs elected to use an optional service to remotely store their encrypted computer data—data that Apple does not exert ownership or control over. While Plaintiffs allege Apple holds a key in escrow that could potentially unlock the data, if it chooses to do so, they do not allege that Apple has ever used an encryption key to access Sync Data. Apple asserts Plaintiffs' speculation that Apple may have an ability to access the data users voluntarily place into their iCloud Photos Library does not meet the *Twombly* pleading requirements. Plaintiffs must demonstrate that Apple affirmatively intended to exercise dominion and control over the data and took active steps toward that end—and the Amended Complaint falls short of doing so.

As the Court explained in its Order denying Apple's first motion to dismiss (Doc. 64), BIPA does not define "possession." Thus, the Court turns to the "popularly understood meaning" or its "settled legal meaning if one exists." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) (citing *Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1205 (Ill. 2019)). "The Illinois Supreme Court has held that 'possession, as ordinarily understood, occurs when a person has or takes control of the subject property or holds the property at his or her disposal.'" *Id.* (quoting *People v. Ward*, 830 N.E.2d 556, 560 (Ill. 2005)). The ordinary definition of possession does not require exclusive control, "and nothing in BIPA indicates that the ordinary definition of possession does not apply." *Id.*

With regard to collection, some courts have interpreted BIPA to impose liability only

if an entity takes, at a minimum, "an *active* step to collect, capture, purchase or otherwise obtain biometric data." *Naughton v. Amazon.com, Inc.*, No. 20-CV-6485, 2022 WL 19324, at *3 (N.D. Ill. Jan. 3, 2022) (quoting *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021)). This Court agrees; it is difficult to imagine a scenario where an entity could "collect" biometric data without taking affirmative steps to do so.

Here, Plaintiffs claim that Apple's Photo Sorting Software collects faceprints and uses those scans of facial geometry to identify individuals. (Doc. 93 at ¶¶ 72-73). Plaintiffs further allege that Apple automatically enables iCloud for users of certain Apple Devices. When iCloud is enabled, Apple automatically transfers Sync Data, which includes data derived from faceprints, to Apple's servers via the cloud. That Sync Data is then stored on Apple's servers. (*Id.* at ¶¶ 122, 130-139). Apple further maintains and stores encryption keys in the cloud that enable it to access the Sync data. (*Id.* at ¶ 139).

The Court finds these allegations sufficient, at the pleadings stage, to state a plausible claim that Apple collects and possesses users' Sync Data. *See Karling v. Samsara Inc.*, No. 22 C 295, 2022 WL 2663513, at *6 (N.D. Ill. July 11, 2022) (allegations that defendant collected plaintiff's facial geometry, used software to process that data to recognize him, stored his biometric data in its cloud-based system, and provided access to that information to his employer were sufficient to state a claim under BIPA); *Naughton*, No. 20-CV-6485, 2022 WL 19324, at *4 ("Naughton also specifically asserts that Amazon stores his biometric data in a database. This plainly satisfies the 'possession' requirement at the pleadings stage."); *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (granting motion to dismiss where there were no allegations in the complaint that defendant stored biometric data on a server). Accordingly, the motion to dismiss must be denied.

CONCLUSION

For these reasons, the partial Motion to Dismiss the Amended Class Action Complaint

filed by Defendant Apple Inc. (Doc. 101) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:    August 1, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**