IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANE DOE, by and through next friend JOHN DOE, RICHARD ROBINSON, YOLANDA BROWN, JONATHAN LEBLOND, PATRICIA ORRIS, ALEXANDER ROMO, ANGELA STEVENS, and DENIS WIER, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>        Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>        Defendant. | Case No. 3:20-CV-421-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are cross motions related to the noticed deposition of Craig Federighi, Senior Vice President of Software Engineering for Defendant Apple Inc. ("Apple"). Plaintiffs have filed a motion for sanctions and to compel Apple to produce Federighi for deposition (Doc. 164), while Apple has filed a combined response to Plaintiffs' motion and a motion for protective order to preclude Federighi's deposition (Doc. 168). For the following reasons, Apple's motion for a protective order is denied. Plaintiffs' motion to compel is granted, but their motion for sanctions is denied.

## BACKGROUND

This case arises under the Illinois Biometric Information Privacy Act ("BIPA"). Plaintiffs allege Apple includes facial recognition technology as a feature of its Photos App and uses biometric identifiers to automatically group the user's photos based on who appears in them. (Doc. 155 at ¶¶ 70-71, 74). Plaintiffs claim this data is also transmitted to Apple

through the iCloud Photos Library, thereby allowing Apple to collect and store biometric information on its servers. (*Id.* at ¶¶ 123-28). Plaintiffs allege Apple does not obtain informed written consent before collecting the biometric information, nor does it publish or comply with any policy regarding the purpose, destruction, or retention of this biometric information, in violation of BIPA. (*Id.* at ¶ 151).

On April 7, 2023, Plaintiffs requested availability for the deposition of several Apple witnesses, including Craig Federighi, Apple's Senior Vice President of Software Engineering. (Doc. 164-2). When Apple refused to produce Federighi, the parties brought the issue to Special Master Randi Ellis, who issued a Report and Recommendation on July 17, 2023, directing Apple to file a motion for protective order with the Court. (Doc. 164-3). The Special Master further instructed the parties to meet and confer on Federighi's deposition and to discuss deferring any motion for protective order until additional depositions could be completed. (*Id.*). Plaintiffs agreed to postpone noticing Federighi's deposition until "at least some" other depositions had been taken. (Doc. 164-4).

On November 17, 2023, after completing several additional depositions, Plaintiffs noticed Federighi's in-person deposition for January 24, 2024. (Doc. 169-10). The parties participated in a meet-and-confer on November 21, 2023, where Apple objected to the notice of deposition and indicated it would defer the issue of the deposition until all other depositions were completed. (Doc. 169-1 at ¶ 11).

The parties did not communicate further about the Federighi deposition until Friday, January 19, 2024, when Plaintiffs served an amended notice that converted the in-person deposition to a virtual deposition. (Doc. 169-11). In an email sent the following business day, January 22, 2024, counsel for Apple asserted Federighi is an apex witness and refused to

produce him until all other scheduled depositions were complete. (Doc. 164-6). On January 23, 2024, the Special Master informed the parties by email that she spoke with the Court and "[i]f Apple seeks a protective order regarding Mr. Federighi's deposition, the next step should be for Apple to file a motion for a ruling from the Court. The Court knows this is likely and will be ready if such is filed." (Doc. 169-12).

No motion was filed, and neither counsel for Apple nor Federighi appeared for the virtual deposition. Plaintiffs then filed the instant motion to compel and for sanctions on February 7, 2024. (Doc. 164). Apple filed its combined motion for protective order and opposition to Plaintiff's motion to compel on February 14, 2024. (Doc. 168). Plaintiffs responded to Apple's motion for protective order on February 28, 2024. (Doc. 172).

## Discussion

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," and public policy favors disclosure of relevant materials. *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *1 (N.D. Ill. Dec. 7, 2017) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). At the same time, Rule 26(c)(1) permits district courts, for good cause, to issue an order forbidding the discovery to protect a party from oppression, undue burden, or expense. FED. R. CIV. P. 26(c)(1). "Before restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Patterson*, 281 F.3d at 681. (internal quotations and citation omitted).

The party seeking protection from discovery has the burden of demonstrating good

cause for needing the protection, and a "strong showing is required before a party will be denied entirely the right to take a deposition." *Connelly v. Cook Cnty. Assessor's Off.*, No. 19 CV 7894, 2022 WL 17718411, at *2 (N.D. Ill. Dec. 15, 2022); *Boyd v. Lazer Spot, Inc.*, No. 19 C 8173, 2022 WL 2865881, at *4 (N.D. Ill. July 6, 2022). "Moreover, the burden of proof does not shift to the party seeking discovery simply because a party seeks to prevent the deposition of a high-ranking executive (or 'apex witness')." *Id.*

A.  **Apex Witness Doctrine**

Apple first asserts Federighi is an apex witness and, under the apex witness doctrine, the deposition of a senior executive should not proceed unless Plaintiffs can demonstrate: (1) he has unique knowledge relevant to the case; and (2) Plaintiffs have exhausted all alternative means of discovery without obtaining the sought-after information. Apple argues that Plaintiffs cannot satisfy either requirement.

As an initial matter, the burden for satisfying these requirements falls on Apple, not Plaintiffs. *See Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 16646418, at *4 (N.D. Ill. Nov. 2, 2022) ("Under the apex doctrine, the party seeking to avoid discovery bears the burden of showing good cause exists to prevent the discovery.") (internal quotations omitted); *Boyd*, No. 19 C 8173, 2022 WL 2865881, at *5 ("The problem for Defendant is that, rather than having Plaintiff 'justify' the deposition, it is Defendant's burden to show that Mr. Newsome lacks unique personal knowledge or that his testimony would be duplicative of other witnesses."); *Nucap Indus. Inc.*, No. 15 CV 2207, 2017 WL 6059770, at *2 ("the party seeking protection from discovery bears the burden of presenting 'a particular and specific demonstration of fact' as to the need for that protection"); *Dyson, Inc. v. Sharkninja Operating LLC*, No. 1:14-CV-0779, 2016 WL 1613489, at *1 (N.D. Ill. Apr. 22, 2016) ("The

burden under the apex principle is supplied by the general rule [that] a party that seeks to avoid discovery in general bears the burden of showing that good cause exists to prevent the discovery.").

The Seventh Circuit has not adopted the apex witness doctrine, but some district courts in the Northern District of Illinois have examined four circumstances when determining whether to grant a protective order over an apex witness. *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *2 (N.D. Ill. Apr. 6, 2020). These circumstances include whether: "(1) the official has no unique personal knowledge of the matter in dispute; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's other duties." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020). The apex doctrine is "not an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." *Id.* (quoting *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14 C 779, 2016 WL 1613489, at *1 (N.D. Ill. April 22, 2016)).

1. *Unique Personal Knowledge*

Apple argues Federighi lacks unique personal knowledge regarding the matter in dispute because he did not personally design or develop the technology at issue. Rather, he is a senior executive who broadly oversees the development and release of entire operating systems.

The Court disagrees with Apple's portrayal of Federighi as a high ranking executive who merely managed the development of operating systems and was far removed from the engineers who worked on the People album. Testimony from Apple employees indicates

Federighi would speak with the engineering team working on the Photos App facial recognition technology on a monthly or semi-monthly basis, and he directly provided input on the features they developed. (Docs. 166-1, 166-2). In particular, Federighi discussed the features' privacy properties, and he ultimately approved new features implemented by the Camera and Photos App team. (Docs. 166-2, 166-3). Moreover, while Apple has provided an affidavit from Federighi from *entirely separate litigation* stating that he "oversee[s] software development for the operating systems in all Apple products and supervise[s] multiple engineering teams responsible for developing Apple's software and applications," Federighi has not provided an affidavit in *this* case denying any unique personal knowledge of the at-issue software. (Doc. 169-5).

The deposition testimony of other Apple employees demonstrates that Federighi was, at the very least, in regular contact with the team developing the software, provided feedback on the development, and signed off on the technology. Thus, Apple has not shown that Federighi lacks any unique personal knowledge such that a protective order is warranted.

2. ***Whether the information has been garnered from other witnesses or other discovery methods***

Apple next argues that Plaintiffs have completed depositions of 15 Apple employees who have more detailed and greater knowledge than Federighi regarding the technology at issue. Although Federighi's name was mentioned in multiple depositions, Apple argues, none of these witnesses testified that Federighi has unique personal knowledge of relevant facts. Instead, the witnesses testified that Federighi conducted only high-level discussions with the engineers who were primarily responsible for developing the feature at issue. Thus, because Plaintiffs have already obtained ample relevant information from other deponents, Federighi's deposition is unnecessary. Moreover, Apple has repeatedly asked Plaintiffs to

identify they information they seek through Federighi's deposition, but Plaintiffs have refused to identify such information. Apple therefore claims that Plaintiffs either already have the information they need, or they have purposely chosen not to seek the information from Apple employees in order to justify Federighi's deposition.

In response, Plaintiffs assert a different inference can be gleaned from the 15 depositions they have already taken: Because Federighi oversaw the development of Apple's facial recognition technology and personally approved of certain decisions, he is a *more* appropriate witness to depose. Furthermore, they argue, Federighi's testimony is critical to establishing Apple's intent under BIPA, something that cannot be established by lower-level employees.

The Court agrees with Plaintiffs that the information they seek to establish Apple's intent has not been garnered from other witnesses or other discovery methods. Apple does not dispute that Federighi oversaw the development of the relevant software, provided feedback, signed off on the technology, and had in-person meetings with the engineering team members. As a senior vice president with decision-making authority, Federighi would have knowledge regarding Apple's strategic intent that the deposed employees would not possess. *See Mallinckrodt ARD, Inc.*, No. 17 CV 50107, 2020 WL 1675593, at *3 (observing that depositions of other employees would not necessarily overlap a President and CEO's personal knowledge).

Apple also argues that its substantial document production demonstrates Federighi's lack of involvement in the development of the People album feature. The testimony from the deposed Apple employees, however, demonstrates that Federighi met with them *in person* to discuss the technology. To the extent Federighi possesses unique knowledge of Apple's

intent in developing the software, Plaintiffs are entitled to depose him.

### 3. *Undue Hardship*

Last, Apple argues that compelling Federighi to sit for a deposition will impose undue hardship in light of his duties as a senior executive at a large public company. Given the breadth of Federighi's responsibilities, Apple argues that Plaintiffs should be limited to discovery from other witnesses, which Plaintiffs have already obtained.

True, the Court "must balance the competing interests" in allowing the deposition and protecting Federighi from undue burden. *Id.* at *4. But other than summarily stating that diverting Federighi's attention away from his job would prejudice both him and Apple (as it would for any employee and employer), Apple has not convinced the Court that the deposition would impose an undue hardship. Moreover, the fact that Plaintiffs have completed depositions of the other witnesses weighs in favor of allowing Federighi's deposition. The Court trusts that, through the discovery process, Plaintiffs will have narrowed the information they seek from Federighi, resulting in a more efficient line of questioning.

Because Apple has not met its burden of showing good cause to prevent Federighi's deposition, its motion for protective order (Doc. 168) is denied, and Plaintiffs' motion to compel (Doc. 164) is granted.

### B.   Sanctions

Along with their motion to compel, Plaintiffs ask the Court to sanction Apple for failing to produce Federighi for his noticed deposition on January 24, 2024. *See* FED. R. CIV. P. 37(d)(1)(A)(i). Plaintiffs request the reasonable costs of preparing their motion to compel and seek an order directing Apple to produce Federighi for deposition in person in the Southern District of Illinois.

Sanctions are unwarranted here. The day before Federighi's scheduled deposition, the Special Master instructed Apple to file a motion for protective order. Thus, Plaintiffs were on notice that Apple would be filing a motion for the Court's consideration. Plaintiffs instead chose to file the instant motion to compel. The Court will not require Apple to pay those expenses.

The Court also will not require Apple to produce Federighi in person in the Southern District of Illinois. Although the Court finds that Federighi must sit for a deposition, the Court is cognizant of Federighi's position at Apple and the hardship that requiring him to travel to the Southern District of Illinois would impose. Moreover, the January 24 deposition was scheduled to take place via Zoom. Plaintiffs have provided no explanation why a virtual deposition would no longer suffice. Thus, this request is also denied.

## CONCLUSION

For these reasons, the Court finds that Apple has not met its burden of demonstrating good cause for entirely precluding the Federighi deposition. Accordingly, Apple's motion for protective order (Doc. 168) is **DENIED**, and Plaintiffs' motion to compel (Doc. 164) is **GRANTED**. Plaintiffs are **GRANTED** leave of court to depose Craig Federighi within **14 days** of this Order, at a time that is mutually agreeable to the parties. The parties are **ORDERED** to meet and confer with the Special Master regarding availability.

Plaintiff's request for sanctions is **DENIED**.

**IT IS SO ORDERED.**

DATED:   March 8, 2024

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**