IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JANE DOE**, by and through next friend **JOHN DOE**, **RICHARD ROBINSON**, **YOLANDA BROWN**, **JONATHAN LEBLOND**, **PATRICIA ORRIS**, **ANGELA STEVENS**, **JESSICA JACKSON, MELISSA OATMAN, JUSTIN REVELO, AND TAYLOR VALL** on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>**APPLE INC.**,<br><br>Defendant. | Case No. 3:20-cv-00421-NJR |

# DEFENDANT APPLE INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


Purvi G. Patel (ARDC# 6287065)
Emma Burgoon*
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
(213) 892-5200
PPatel@mofo.com
EBurgoon@mofo.com

Katie Viggiani*
Tiffani B. Figueroa*
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
KViggiani@mofo.com
TFigueroa@mofo.com

* appearing *pro hac vice*

*Attorneys for Apple Inc.*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

A. The People Album Technology Clusters Photos on Plaintiffs' Devices ........ 3

[redacted] is not a scan of face geometry ........ 4

2. Apple cannot access on-device People album data ........ 5

3. The People album technology does not and cannot determine identity ........ 5

B. Users May Choose to Store Photos in iCloud Photos and May Choose to Sync Photos Data to Their Other Devices ........ 7

1. Users can store photos in iCloud Photos ........ 7

2. Certain users can sync additional data through iCloud Photos ........ 8

C. All Plaintiffs Continue to Use the Photos App and Those Syncing Photos Data to Other Devices Continue to Have iCloud Photos Enabled ........ [redacted] 9

III. LEGAL STANDARD ........ 10

IV. ARGUMENT ........ 11

A. None of the Data at Issue Is a "Biometric Identifier" or "Biometric Information" Under BIPA ........ 11

1. On-Device Processed Data is not "face geometry" and thus Sync Update Data also does not contain "face geometry" ........ 12

a. Undisputed source code evidence shows On-Device Processed Data and Sync Update Data do not include "face geometry" ........ 12

b. Plaintiffs' experts cannot solve Plaintiffs' evidentiary problems or manufacture a genuine issue of fact where none exists ........ 14

c. The iCloud Photos Data is not "biometric information" as a matter of law ........ 15

2. None of the Data, Whether On-Device Processed Data, iCloud Photos Data, or Sync Update Data, "identifies" users ........ 16

a. There can be no BIPA violation without evidence that the data at issue identifies an individual and/or is *used* to identify an individual ........ 16

b. Plaintiffs cannot establish Apple used, or could have used, On-Device Processed Data, iCloud Photos Data, or Sync Update Data, to identify them ........ 18

**TABLE OF CONTENTS**
(continued)

**Page**


B. Plaintiffs Cannot Establish a BIPA Violation Because Apple Does Not "Collect" or "Possess" On-Device Processed Data, iCloud Photos Data, or Sync Update Data ........ 20

1. Apple does not "control" On-Device Processed Data, and took no "active step" to collect it ........ 21

2. Apple does not "control" iCloud Photos Data or Sync Update Data, and took no "active step" to collect it ........ 22

a. Plaintiffs cannot establish that Apple took an active step to collect iCloud Photos Data or Sync Update Data (§ 15(b)) ......... 23

b. Plaintiffs cannot satisfy their burden to establish that Apple "controls" iCloud Photos Data or Sync Update Data to show "possession" (§ 15(a)) ........ 25

C. Plaintiffs Are Not "Aggrieved," And They Are Not Entitled to Damages .......... 27

V. CONCLUSION ........ 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aero Fulfillment Servs. Corp. v. Oracle Corp.*,
186 F. Supp. 3d 764 (S.D. Ohio 2016) .....2

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).....10

*Barnett v. Apple Inc.*,
225 N.E.3d 602 (Ill. App. 2022) .....21

*Bhavilai v. Microsoft Corp.*,
No. 22 C 3440, 2024 WL 992928 (N.D. Ill. Feb. 8, 2024).....21, 22

*Bragdon v. Abbott*,
524 U.S. 624 (1998).....15

*Castelaz v. The Estee Lauder Cos., Inc.*,
No. 22-cv-5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024).....19

*Chamberlain Grp., Inc. v. Lear Corp.*,
756 F. Supp. 2d 938 (N.D. Ill. 2010) .....14

*Clark v. Microsoft Corp.*,
688 F. Supp. 3d 743 (N.D. Ill. 2023) .....20

*Colombo v. YouTube, LLC*,
No. 3:22-CV-06987-JD, 2023 WL 4240226 (N.D. Cal. June 28, 2023) .....17

*Cothron v. White Castle Sys., Inc.*,
2023 IL 128004 (2023) .....28

*Daichendt v. CVS Pharmacy, Inc.*,
No. 22 CV 3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) .....17

*Doe v. Apple Inc.*,
No. 3:20-CV-421-NJR, 2022 WL 17538446 (S.D. Ill. Aug. 1, 2022) ..... *passim*

*Donnelly v. Ford Motor Co.*,
80 F. Supp. 2d 45 (E.D.N.Y. 1999) .....15

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) .....12

*G.T. v. Samsung*,
No. 1:21-cv-04976, 2024 WL 3520026 (N.D. Ill. July 24, 2024) ....................21

*Gekas v. Vasiliades*,
814 F.3d 890 (7th Cir. 2016) ....................10

*Grant v. Trs. of Ind. Univ.*,
870 F.3d 562 (7th Cir. 2017) ....................10

*Gutierrez v. Converse Inc.*,
No. 23-6547-KK-MARx, 2024 WL 3511648 (C.D. Cal. July 12, 2024) ....................25

*Hazlitt v. Apple Inc.*,
500 F. Supp. 3d 738 (S.D. Ill. 2020) ....................17

*Hazlitt v. Apple Inc.*,
543 F. Supp. 3d 643 (S.D. Ill. 2021) ....................12, 26

*Heard v. Becton Dickinson & Co.*,
440 F. Supp. 960 (N.D. Ill. Feb. 24, 2020) ....................20, 22

*Jones v. Microsoft Corp.*,
649 F. Supp. 3d 679 (N.D. Ill. 2023) ....................23

*Martell v. X Corp.*,
No. 23 C 5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024) ....................11, 18

*Modrowski v. Pigatto*,
712 F.3d 1166 (7th Cir. 2013) ....................10

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ....................26

*Rogers v. BNSF Ry. Co.*,
680 F. Supp. 3d 1027 (N.D. Ill. 2023) ....................28

*Rosenbach v. Six Flags Ent't Corp.*,
129 N.E.3d 1197 (Ill. 2019) ....................20, 27

*Sheppard v. Fantasia Trading LLC*,
No. EDCV 23-2407, 2024 WL 3707825 (C.D. Cal. July 26, 2024) ....................27

*Stephens v. Erickson*,
569 F.3d 779 (7th Cir. 2009) ....................10

*Tapia-Rendon v. Workeasy Software, LLC*,
No. 21 C 3400, 2025 WL 2299592 (N.D. Ill. Aug. 8, 2025) ....................23

*United States v. Bailey*,
699 F. App'x 664 (9th Cir. 2017) ....................................................................................2

*Weigel v. Target Stores*,
122 F.3d 461 (7th Cir. 1997) ........................................................................................15

*Yunker v. Pandora Media, Inc.*,
No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................25

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ...................................................................................11, 17

**Statutes**

740 ILCS 14/5(d) .............................................................................................................8

740 ILCS 14/10............................................................................................................. *passim*

740 ILCS 14/15(a) .........................................................................................................20

740 ILCS 14/15(b) .........................................................................................................20

815 ILCS 530/5..............................................................................................................23

Illinois Biometric Information Privacy Act (BIPA) ........................................................... *passim*

§ 15(a) ........................................................................................................................ *passim*

§ 15(b) ........................................................................................................................ *passim*

§ 20...............................................................................................................................27

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)...........................................................................17

Fed. R. Civ. P. 56(a) .......................................................................................................10

## I. INTRODUCTION

After five and half years, the undisputed evidence shows what Apple has said all along: the Illinois Biometric Information Privacy Act (BIPA) does not apply to the People album feature because the feature does not in any way involve biometrics.[1] Beyond that, Plaintiffs' claims fail on several fronts. All ten Plaintiffs continue to use the Photos app, taking advantage of its many features like People albums, an innovative feature that helps people easily sort and find photos of the important people and pets in their lives. The feature automatically groups photos into albums on a person's device, but users are always in control. Users choose whether to apply labels to their albums, though many (including six Plaintiffs) decide not to. Users also decide whether to sync their photos to their other devices using iCloud Photos and may stop at any point (at least one Plaintiff testified to disabling iCloud Photos at some point). Under no circumstances, however, does the People album feature determine, confirm, or "know" the actual identity of anyone in a person's album based on biometrics. Nor does Apple access or control users' People album data, whether it remains on device or is synced through iCloud Photos. Summary judgment should be granted in Apple's favor for three independent reasons.

***First***, the People album technology does not use or create a "biometric identifier" (i.e., a "scan" of "face geometry") or "biometric information" (i.e., a template or other data "derived from" a biometric identifier), which are necessary for BIPA to apply. What Plaintiffs refer to as a "faceprint" is actually just a string of numbers, not a scan of face geometry that can be used to recreate a face. And because there is no predicate biometric identifier (i.e., no "scan" of "face geometry"), there can be no biometric information derived from a biometric identifier.

---

[1] BIPA applies to "biometric identifiers" and "biometric information," as defined by the Act. 740 ILCS 14/10. Apple refers to both generally as "biometrics," unless stated otherwise.

And, undisputed source code evidence establishes that People albums do not contain information that actually can identify the person depicted in a photo.[2] Users could choose to label their People albums with full names or other personally identifiable information (PII), but none of the Plaintiffs did so. Even if Plaintiffs had, that information is encrypted, and Apple does not and cannot use it to identify them. Unlike in BIPA cases involving employers that use biometric timekeeping software to match biometrics to specific employees, Apple does not maintain any identifying information that can be used to match People album data to a person's identity. This is because the purpose of the People album is not for Apple to identify anyone; the feature simply gives users a convenient way to find photos of the people and pets in their lives.

***Second***, Apple does not "collect" or "possess" any of the data at issue—another requirement under BIPA. The People album clustering process runs entirely on device. For users who have not enabled syncing through iCloud Photos, the associated data is stored exclusively on-device. Users—not Apple—have exclusive control over their on-device data, and they can delete it at any time. For users who choose to store photos on iCloud or sync their photos to their other devices, relevant data is encrypted and only accessible to the user, not Apple. Thus, in all circumstances, Plaintiffs alone—not Apple—own and control their People album data.

***Third,*** Plaintiffs are not aggrieved and are not entitled to damages. BIPA permits recovery only when one's right to control, or maintain privacy in, their biometrics has been violated. That did not occur here. Each Plaintiff continues to use the Photos app, undermining any claim that it caused them harm. Moreover, even though the People album feature does not involve biometrics

---

[2] "Source code is a computer instruction that explains why a particular command is necessary to accomplish the desired objective." *United States v. Bailey*, 699 F. App'x 664, 665 (9th Cir. 2017) (cleaned up); *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 769 (S.D. Ohio 2016) ("Source code is the actual, human-readable programming language that makes up the software.").

at all, Apple designed the feature with privacy in mind. This is why any relevant People album data is encrypted, so that nobody else—not even Apple—can freely access it. Under these circumstances, it is no surprise that Plaintiffs have no evidence that Apple acted "negligently" or "recklessly" to support any damages award at all.

For these reasons and those set forth below, the Court should enter judgment in Apple's favor on Plaintiffs' BIPA §§ 15(a) and 15(b) claims.

## II. BACKGROUND

### A. The People Album Technology Clusters Photos on Plaintiffs' Devices

The People album feature helps organize photos and videos within the Photos app using privacy-enhancing, on-device technology. (SOF ¶¶ 1-2, 40.) The software for the People album technology comes pre-loaded on iPhones, iPads, and Macs. (SOF ¶ 39.) Here is how it works: When users choose to take a photo with the Camera app, the photo is stored in the on-device Photos app. (SOF ¶ 81.)[3] The People album technology uses [redacted] to try to cluster photos of a person or pet with other photos of the same person or pet so users (like Plaintiffs) can easily find photos of their loved ones. (SOF ¶ 40.) The undisputed source code evidence reveals that the technology running on the user's device engages in the following three-step process to try to cluster photos of people and pets into albums:

**Step 1:** [redacted]

**Step 2:** [redacted]

---

[3] The People album feature does not cluster photos that are not stored in the Photos app, such as images that are captured or stored on third-party apps. (SOF ¶ 3.)

**Step 3:** [redacted]

From start to finish, the on-device clustering process looks like this:

***Figure 1***




Fig. 1. (SOF ¶ 68.)

Once an album is created, a user can choose whether to label it. (SOF ¶ 69.) The user-supplied album label, along with [redacted] as described above, is referred to in this motion as "On-Device Processed Data."

**1. [redacted] is not a scan of face geometry**

Face geometry, as understood in the field of biometric identification, concerns a three-

dimensional representation of the facial structure. (SOF ¶ 66.) [redacted] (SOF ¶¶ 51-52.) It does not scan face geometry. (SOF ¶ 57.) In other words, [redacted] does not represent measurements of a person's face; [redacted] do not correspond to specific visible facial features or measurements at all. (SOF ¶ 54.) [redacted] also is not an image of a face, and it cannot be used to recreate a face image. (SOF ¶ 55.)

#### 2. Apple cannot access on-device People album data

Apple cannot access any part of the on-device clustering process or [redacted]. (SOF ¶ 74.) The People album feature uses on-device processing, and on-device encryption[4] provides additional security and privacy for those who choose to use the Photos app. (SOF ¶¶ 40, 75, 80.) Unless a user chooses to enable iCloud Photos, the encrypted People album data remains on device. (SOF ¶¶ 5, 83-84.) All of the Plaintiffs use the Photos app on their Apple devices and have People albums of themselves. (SOF ¶¶ 6-28.) Most Plaintiffs had iCloud Photos enabled at some point in time, but of the original Plaintiffs, only Robinson had iCloud Photos enabled on a device where he labeled his People album. (SOF ¶¶ 34, 37.)[5]

#### 3. The People album technology does not and cannot determine identity

To verify someone's identity using biometrics, an "enrollment" step is required. (SOF ¶¶ 132-36, 145.) Enrollment is a process of adding known identities (i.e., those authenticated or

---

[4] Encryption is a technology that . . . disguise[s] the content" to "protect and secure information." (SOF ¶ 76.) When encrypted, data "appears to the computer as completely random binary data." (SOF ¶ 76.)

[5] Plaintiffs' allegations regarding the iCloud Photos subclass apply only to users who have enabled iCloud Photos and labeled their People album, a proposed subclass that Robinson alone seeks to represent. (4AC ¶ 227.)

verified against trusted documents or a pre-collected sample) to a database to later match biometrics to a specific identity. (SOF ¶ 137.) For example, in criminal fingerprinting, enrollment can take place when a fingerprint (a biometric identifier) is collected from a suspect with verified identity information (like the name appearing on the suspect's driver's license). (SOF ¶¶ 137-38) Then, a later-collected fingerprint can be used to determine the person's identity by matching it to the previously "enrolled" fingerprint and verified identity information. (SOF ¶¶ 133-34.) Without enrollment, law enforcement would not be able to identify the suspect; they may have matching fingerprints, but they would not know who they belong to. (SOF ¶ 139.) Neither enrollment nor verification happens with the People album and associated data. (SOF ¶¶ 140-41, 131.) The People album tries to cluster photos of distinct people into distinct albums based [redacted]. (SOF ¶¶ 60-62, 142-43.) But the clustering algorithm and Apple do not know the identity of the people in the photos or clustered albums. (SOF ¶¶ 64, 68, 144.)

Users alone decide whether and how to label an album. (SOF ¶ 4.) Some albums (like Doe's, LeBlond's, Robinson's, and Vall's) are labeled with only a first name. (SOF ¶ 70.) Other users (like Brown, Jackson, Oatman, Orris, Revelo, and Stevens) choose not to label their albums at all; their albums have only an unlabeled cover photo. (SOF ¶ 71.) Robinson's (left) and Orris's (right) People albums illustrate this point:

*Figure 2*




*Figure 3*




(Fig. 2, 4AC ¶ 205 (Robinson) (SOF ¶ 72); Fig. 3, (Revelo) (SOF ¶ 73).) Even if any Plaintiff labeled their People album with a full name, Apple does not know what the labels say because they are encrypted and unreadable to Apple. (SOF ¶ 92.) And even if Apple could read the album labels, given lack of enrollment to tie the data with a specific identity, Apple would not be able to identify anyone based on People album data. (SOF ¶¶ 137-41)

### B. Users May Choose to Store Photos in iCloud Photos and May Choose to Sync Photos Data to Their Other Devices

Users choose whether to enable and use iCloud Photos, and they can disable it at any time. (SOF ¶¶ 83, 86, 101.) When a user enables iCloud Photos, the following can happen with their photos data: (1) a user can store photos and certain associated data in their iCloud Photos and (2) if the user meets certain conditions, they can sync additional photos data through iCloud Photos to their other Apple devices for a smoother user experience. (SOF ¶¶ 96-97, 109-10.)

#### 1. Users can store photos in iCloud Photos

For users who enable iCloud Photos, their photos and certain associated data, such as [redacted], are saved in the user's iCloud Photos library (this is referred to in this motion as "iCloud Photos Data"). (SOF ¶¶ 96-97.) Before this data is stored in iCloud

Photos, on-device encryption secures any relevant data, making it unreadable to others (including Apple). (SOF ¶¶ 89, 92, 94-95.) That data remains encrypted in iCloud Photos and is "not used by Apple in any way," including to identify users. (SOF ¶¶ 87-95, 98-99, 102.) Plaintiffs have no evidence that Apple has used this encrypted data to identify them, or could otherwise use this encrypted data in any way. (SOF ¶ 106.) Plaintiffs also have no evidence that Apple has used an encryption key to decrypt their data, much less to identify them. (SOF ¶¶ 105, 107.)[6] In any event, the iCloud Photos terms and conditions make clear that users own the data stored in iCloud Photos, not Apple. (SOF ¶ 85.)

**2. Certain users can sync additional data through iCloud Photos**

On July 29, 2024, Apple released software updates for the iPhone (iOS 17.6), iPad (iPadOS 17.6), and Mac (MacOS Sonoma 14.6) (collectively, the "OS Updates"). (SOF ¶ 109.) The OS Updates allow users who meet certain conditions to sync photos data beyond the iCloud Photos Data across that user's other Apple devices in an end-to-end encrypted[7] state (the "Sync Update"). (SOF ¶ 110.) This additional data that can be synced includes [redacted] (and is collectively referred to in this motion as "Sync Update Data"). (SOF ¶ 110.) After the Sync Update, Apple still does not access the data stored on or that travels through iCloud Photos. (SOF ¶ 119.)

After July 29, 2024, a user who (1) updates their devices to the OS Updates or later versions, (2) enables iCloud Photos and syncs their photos, and (3) maintains a Photos library with a minimum number of photos and videos can take advantage of the Sync Update for an improved user experience. (SOF ¶ 112.) Specifically, the Sync Update improves efficiency and accuracy of

---

[6] [redacted] (SOF ¶ 91.)

[7] When data is end-to-end encrypted this means that it can only be decrypted by a user's trusted devices. (SOF ¶¶ 94-95.) No one else can access the data, including Apple, and the data remains secure even in the case of a data breach. (SOF ¶ 95.)

on-device clustering (by avoiding each device having to separately detect faces in photos and videos), while preserving user's privacy through end-to-end encryption. (SOF ¶¶ 116-18, 122-23.) Before the Sync Update, the People album feature on each device separately analyzed and clustered photos, at times impacting user experience through delays and inconsistency across devices, and a People album for a given person on different devices may contain a different set of photos. (SOF ¶ 118.)

The Sync Update works as follows: When a user takes a photo on their device (the "originating device"), the same on-device process discussed above clusters photos together into People albums. (SOF ¶¶ 58-65, 68, 115.) If the user meets the conditions for the Sync Update to apply, certain information, [redacted]

### C. All Plaintiffs Continue to Use the Photos App and Those Syncing Photos Data to Other Devices Continue to Have iCloud Photos Enabled

Despite knowing that their photos may be clustered into People albums and alleging that the People album technology violates their privacy, each Plaintiff continues to use the Photos app. (SOF ¶ 29.) And Doe, LeBlond, Robinson, and Vall still have People albums of themselves labeled

with their first names. (SOF ¶ 30.)[8] Jackson, Oatman, Revelo, and Vall also all continue to have iCloud Photos enabled and maintain assets (i.e. photos and videos) above the threshold for the Sync Update, knowing that Sync Update Data is transmitted through iCloud Photos to their other trusted devices. (SOF ¶¶ 37-38.)

## III. LEGAL STANDARD

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Gekas v. Vasiliades*, 814 F.3d 890, 896 (7th Cir. 2016) (citation omitted). The non-moving party must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where there is "an absence of evidence to support the nonmoving party's case," summary judgment must be granted to the moving party. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The "mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). If the non-moving party's evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

[8] After the case was filed, LeBlond even added his first name to a People album on a device he mistakenly believed had iCloud Photos enabled (SOF ¶ 31), ostensibly in a bad-faith attempt to manufacture claims based on iCloud Photos Data.

## IV. ARGUMENT

### A. None of the Data at Issue Is a "Biometric Identifier" or "Biometric Information" Under BIPA

To survive summary judgment on their §§ 15(a) and (b) claims, Plaintiffs must establish that BIPA applies to On-Device Processed Data, iCloud Photos Data, or Sync Update Data because they qualify as a "[b]iometric identifier" or "[b]iometric information." 740 ILCS 14/10. The undisputed evidence shows Plaintiffs cannot do so. "Biometric identifiers" must, at minimum, be one of six enumerated data elements, including a "scan" of "face geometry." *Id*. Importantly, "[b]iometric identifiers do not include . . . photographs." *Id.* "Biometric information" is information derived from a "biometric identifier," and "does not include information derived from [photographs]." *Id*. To trigger BIPA, a scan must be of face ***geometry***, and must "identify a person." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024) (emphasis added); *see also Martell v. X Corp*., No. 23 C 5449, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024).

Because BIPA does not apply to photographs, however, courts have found that BIPA also does not apply to a scan of a photograph that "merely compares the image to see if it is the same as other images, that does not imply the use of facial geometry." *Martell*, 2024 WL 3011353, at *3. This type of "scanning" is precisely what the People album does to sort photos into albums. While Plaintiffs contend that [redacted] is a unique "faceprint" or "biometric identifier" and that the [redacted] is "biometric information" derived from the "faceprint," this is not the case. Undisputed source code evidence shows that People album technology simply generates data from a photo—[redacted]—to group together photos that are similar. Because this involves comparing photographs, not creating, collecting, or comparing face geometry, BIPA does not apply.

### 1. On-Device Processed Data is not "face geometry" and thus Sync Update Data also does not contain "face geometry"

#### a. Undisputed source code evidence shows On-Device Processed Data and Sync Update Data do not include "face geometry"

Courts in BIPA cases define "face geometry" as the "relationship of facial features unique to each individual, like the distance between a person's eyes, nose, and ears." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1159 (N.D. Cal. 2016); *see also Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 646 (S.D. Ill. 2021) ("Geometric attributes of faces include distance between the eyes, width of the nose, and other features."). In the field of biometric identification, "face geometry" concerns "the three-dimensional representation of the facial structure."[9] (SOF ¶ 66.) Determining whether the People album technology scans the relationship between facial features or the structure of the face begins and ends with the source code. The source code, which directs how the technology operates, indisputably shows that no part of the three-step process generates, uses, or stores "face geometry." (SOF ¶¶45, 47, 53-54, 57, 63, 65, 68.)

The ***first step*** [redacted] The first step does not involve face geometry—it does not create a three-dimensional representation of the face or map the coordinates of the face for purposes of

[9] This is consistent with the term's plain and ordinary meaning. Geometry is, in relevant part, a configuration or surface shape. Geometry, Merriam-Webster, https://www.merriam-webster.com/dictionary/geometry (last accessed Sept. 29, 2025).

identification. (SOF ¶¶ 45, 46.)

In the ***second step***, [redacted] (SOF ¶¶ 49, 51-52.) The source code shows that, [redacted] the technology does not scan distances between parts of the face or otherwise rely on the face's three-dimensional shape at all. (SOF ¶ 53.) Rather, [redacted] (SOF ¶¶ 49, 51.) [redacted] (SOF ¶ 51.) [redacted] does not represent a face, does not correspond to specific visible facial features or measurements, and cannot be used to recreate a face image. (SOF ¶¶ 54-55.) For users who benefit from the Sync Update, [redacted] is included in the encrypted package of data that syncs through iCloud Photos to a user's other Apple devices. (SOF ¶ 110) Because [redacted] does not comprise "face geometry," the Sync Update Data likewise does not comprise "face geometry." (SOF ¶¶ 53-54.)

The ***third and final step*** in the process involves [redacted] (SOF ¶ 58.) [redacted] (SOF ¶¶ 59-60.) [redacted] (SOF ¶¶ 61-62.) [redacted] (SOF ¶ 64.) [redacted] (SOF ¶¶ 111, 115) In all circumstances,

the People album feature's clustering algorithm is not based on and does not use geometric measurements. (SOF ¶ 63.)[10]

**b. Plaintiffs' experts cannot solve Plaintiffs' evidentiary problems or manufacture a genuine issue of fact where none exists**

Unable to refute the source code, Plaintiffs have recruited two experts to try to avoid it: (1) Dr. Atif Hashmi, Plaintiffs' proffered expert on "the image processing technology employed by the Apple Photos software" (Declaration of Purvi G. Patel ("Patel Decl."), Ex. 56 ¶ 1); and (2) Dr. Sheryl Brahnam, a professor in Information Systems and Cyber Security who opines without support that the Photos app "collects scans of face geometry" (Patel Decl., Ex. 61 ¶ 1). Plaintiffs' efforts are futile, and their experts' conclusions are not supported by the evidence.

Nowhere in Hashmi's report does he opine that any aspect of the People album technology or Photos software scans face geometry. (Patel Decl., Ex. 3 ¶ 139.) Nor could he credibly do so, as the undisputed facts demonstrate otherwise. (SOF ¶¶ 40-68.) Brahnam, on the other hand, makes unsubstantiated conclusions to claim that the People album feature's [redacted] scans "face geometry" and collects "feature maps." (Patel Decl., Ex. 61 ¶ 13.) But "not every contention asserted by an expert will suffice to create a genuine issue of material fact." *Chamberlain Grp., Inc. v. Lear Corp.*, 756 F. Supp. 2d 938, 951 (N.D. Ill. 2010) (assertions "devoid of substantive explanation and analysis, need not be credited"). Expert testimony must have a "traceable, analytic basis in

[10] Plaintiffs have argued that [redacted] are biometric because they claim Vinay Sharma, one of Apple's corporate representatives, testified that the so-called "faceprints at issue in this case are the 'exact same thing' as faceprints produced by a technology other than artificial intelligence." (Pls.' Reply in Support of Mot. for Leave to File TAC at 6 n.2, *Doe v. Apple Inc.*, 20-L-206 (St. Clair Cnty., Ill. June 27, 2025).) It is unclear how this supports Plaintiffs' conclusion, but this is also not what Mr. Sharma said. Far from testifying that [redacted] is "biometric," Mr. Sharma said it would be ***hypothetically*** possible to produce a "faceprint" for clustering without a neural network. But that testimony does not say anything about Apple's ***actual*** People album technology, and the undisputed source code evidence forecloses Plaintiffs' argument that [redacted] is a "scan of face geometry" making it a biometric identifier.

objective fact" before it can be considered on summary judgment. *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). Such a basis does not exist here, where the proffered conclusion is refuted by objectively neutral and credible source code evidence. *See, e.g.*, *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 50 (E.D.N.Y. 1999) ("[U]nless there is adequate evidence to support [an expert's] factual premise, [the expert's] testimony is of no assistance[.]").

There is no analytical basis in objective fact to support Brahnam's conclusions on "face geometry." (Patel Decl., Ex. 61 ¶ 14.) She references generic images of "feature maps" from outdated academic publications inapposite to the People album technology. (Patel Decl., Ex. 61 ¶ 48.) It is unsurprising that Brahnam does not cite any source code in support; the source code refutes her position and shows that no three-dimensional face representation is calculated at all, let alone input to create [redacted]. (SOF ¶¶ 40-68.) Her unsubstantiated conclusions are entitled to "no weight." *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) (affirming judgment where expert's "naked conclusion [was] uninformative and entitled to no weight").[11]

**c. The iCloud Photos Data is not "biometric information" as a matter of law**

Summary judgment is also warranted because the undisputed facts show that iCloud Photos Data is not "biometric information" for two reasons. ***First***, Plaintiffs cannot prove that On-Device Processed Data is a "biometric identifier" for the reasons addressed above: there is no "scan" of "face geometry." Because BIPA defines "biometric information" as data derived from a "biometric identifier," 740 ILCS 14/10, the lack of a predicate "biometric identifier" dooms Plaintiffs' iCloud

[11] Another of Plaintiffs' experts, Jeffrey Dunn, similarly opines that Apple "extracts identities from people in photographs" without ever examining the source code. His opinions in this regard should be set aside for the same reasons as Brahnam's opinions. Separately, Dunn's opinions should be excluded entirely for the reasons set forth in Apple's concurrent *Daubert* motion. Dunn fails to employ any reliable methodology and otherwise proffers narratives and legal conclusions that are irrelevant and/or unhelpful to the trier of fact.

Photos Data claims.

***Second***, the undisputed facts show that iCloud Photos Data derives from *photographs*, which BIPA expressly excludes. *See* 740 ILCS 14/10 (excluding "photographs" and "information derived from [photographs]"). The Court has already acknowledged a dispositive question in this case is "whether [iCloud Photos] Data contains information derived *from photographs* or information derived *from faceprints*," stating "[i]f it is the former, [iCloud Photos] Data cannot be biometric information." *Doe v. Apple Inc.*, No. 3:20-CV-421-NJR, 2022 WL 17538446, at *4 (S.D. Ill. Aug. 1, 2022). The undisputed source code evidence shows that the former is true (SOF ¶¶ 41-42), and therefore Apple is entitled to judgment as a matter of law.

Plaintiffs posit that iCloud Photos Data comprises [redacted] Focusing on [redacted] first, this is simply a smaller version of a photo, akin to a yearbook picture or thumbnail of a photo. As a result, it is excluded from BIPA by the statute's plain language. *See* 740 ILCS 14/10. In any event, [redacted] therefore could not possibly be "derived from" [redacted] (which is not a biometric identifier in the first place). (SOF ¶¶ 56-57.) As for the user-inputted album label, this is obviously not derived from [redacted] but instead is based on whatever the user decides to apply to the album. (SOF ¶¶ 4, 69-73.) Based on this undisputed evidence, Plaintiffs cannot satisfy their burden.

**2. None of the Data, Whether On-Device Processed Data, iCloud Photos Data, or Sync Update Data, "identifies" users**

**a. There can be no BIPA violation without evidence that the data at issue identifies an individual and/or is *used* to identify an individual**

The "most foundational aspect of a BIPA claim" is whether a defendant has the capacity

to identify the plaintiffs with the data collected. *Daichendt v. CVS Pharmacy, Inc.*, No. 22 CV 3318, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022). As this Court has explained, "[t]he word 'identifier' modifies the word 'biometric' to signal that the types of data listed [as capable of triggering BIPA] *could* be used to identify a person." *Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 749 (S.D. Ill. 2020).[12] And, the statute itself defines "biometric information" as derivative data, not just *capable of*, but "*used to* identify an individual." 740 ILCS 14/10 (emphasis added). Thus, data cannot trigger BIPA if it cannot identify someone.

The only appellate court to consider this question concluded that BIPA only applies to data that can identify someone. *See Zellmer*, 104 F.4th at 1125-26 (affirming summary judgment for defendant where string of numbers associated with a "face signature" could not be reverse-engineered to identify plaintiff). Viewing the capacity to identify as the crux of a BIPA claim, the Ninth Circuit explained that, even if a technology may "identify that a particular image contains a face," "this does not mean that [defendant] can, from that face, identify a person" or that "the coordinates within the photos that can map out the size of a person's face show that [defendant] can, from those coordinates, identify an unknown person." *Id.* at 1126. Thus, because the "face signatures cannot identify, they are not biometric identifiers or biometric information [under] BIPA." *Id.*[13]

[12] This gives "identifier" its plain and ordinary meaning; something "that identifies" or "state[s] the identity of (someone or something)." Identify, Merriam-Webster, https://www.merriam-webster.com/dictionary/identify (last accessed Sept. 29, 2025); *accord* Black's Law Dictionary (11th ed. 2019) (defining "identify" as "to prove the identity of a person or thing").

[13] Some courts have concluded that BIPA can apply where biometrics cannot identify an individual because BIPA's definition of "biometric identifier" omits the clause "used to identify an individual" that is included in the definition of "biometric information." *See, e.g.*, *Colombo v. YouTube, LLC*, 679 F. Supp. 3d 940, 944 (N.D. Cal. 2023) (pre-*Zellmer* decision denying motion to dismiss). But suggesting that scans of face geometry could cover data that does not "identify" renders the term "identifier" in "biometric identifier" superfluous. (*See supra* n.12 (discussing ordinary meaning of "identifier").)

Applying BIPA to ***any*** scan of a face, regardless of the ability to tie that scan back to an identifiable individual, would mark a clear departure from the General Assembly's intent. BIPA was drafted to protect biometrics that identify specific individuals, evidenced by BIPA's legislative findings: "[a]n overwhelming majority of members of the public are [wary] of the use of biometrics ***when such information is tied to finances and other personal information***." 740 ILCS 14/5(d) (emphasis added). To allow BIPA to reach data that cannot identify someone "would contravene the very purpose of BIPA." *Martell*, 2024 WL 3011353, at *3.

#### b. Plaintiffs cannot establish Apple used, or could have used, On-Device Processed Data, iCloud Photos Data, or Sync Update Data, to identify them

Plaintiffs lack any evidence that Apple identified or could identify them using On-Device Processed Data, iCloud Photos Data, or Sync Update Data. Rather, the undisputed facts show the opposite. ***First,*** there is a fundamental mismatch between how the People album technology functions and Plaintiffs' allegations:

| Plaintiffs' Unsubstantiated Allegations | The Undisputed Facts |
|---|---|
| Apple "uses scans of face geometry to identify individuals" and "runs facial recognition algorithms on Apple Devices." (4AC ¶¶ 80-81.) | There is no face geometry collected, used, or stored as part of the People album feature. (SOF ¶¶ 40-68.) The clustering algorithm groups photos together that appear to include the same person, but it does not "recognize" faces, as the algorithm does not know who is in the photos. (SOF ¶ 64.) |
| "The identities of people appearing in photos are obtained and derived by [Apple] through its software's analysis of data on Apple Devices." (4AC ¶ 116.) | Only individual users can assign labels to People albums appearing on their device. (SOF ¶ 69.) The user alone controls whether to label a People album and how to do so. (SOF ¶ 4.) The user-inputted label is also encrypted on device before any syncing to iCloud Photos, which means it is unreadable to Apple. (SOF ¶¶ 92, 98.) Neither the clustering algorithm nor Apple knows who is in the photos. (SOF ¶ 68.) |
| Apple "collects and stores on servers it controls biometric information derived from faceprints that [Apple] uses to identify individuals" and the | [redacted] is not "face geometry," and is not a biometric identifier or biometric information. (SOF ¶¶ 52-54.) It is not used to determine actual identities of people in a user's photos. (SOF ¶ 64.) Apple cannot access [redacted] in any way, regardless of whether it remains on device |

| Plaintiffs' Unsubstantiated Allegations | The Undisputed Facts |
|---|---|
| "faceprints that [Apple] collects and stores [on iCloud] are biometric data." (4AC ¶¶ 125, 219, 225.) | or end-to-end encrypted and synced through iCloud Photos. (SOF ¶¶ 74, 95, 113, 119.)<br><br>The iCloud Photos Data amounts to a cropped photograph and an encrypted, user-inputted label (if any), not biometric information that Apple uses or could use to identify an individual. (SOF ¶¶ 84, 100.) The user alone controls whether and how to label a People album. (SOF ¶¶ 4, 69.) That label, if any, is also encrypted before leaving a user's device. |

***Second***, because the People album technology itself cannot identify users, the closest Plaintiffs can theoretically get to any form of "identification" to sustain a BIPA claim is through use of PII to label their own People albums. Even if Plaintiffs added PII (like a full name) to their own People albums, the labels are encrypted and inaccessible to Apple.[14] But still Apple does not maintain separate information on who is in each photo that would allow it to tie the People album data to specific people. (SOF ¶¶ 140-45.) The lack of identifying information is even clearer here given that no Plaintiff actually labeled an album with PII. Brown, Jackson, Oatman, Orris, Revelo, and Stevens did not label their People albums at all. (SOF ¶ 71.) Doe's, LeBlond's, Robinson's, and Vall's albums have their first names, which cannot identify them. (SOF ¶ 70.)[15] The undisputed evidence confirms there is no identifying information to establish liability here. *See Castelaz v. The Estèe Lauder Cos.*, No. 22 CV 5713, 2024 WL 136872, at *7 (N.D. Ill. Jan. 10, 2024) (no BIPA liability where data cannot identify plaintiffs).

---

[14] [redacted] (SOF ¶ 91.) There is no evidence that either circumstance applies to Plaintiffs.

[15] For instance, LeBlond's album labeled "Jonathan" does not identify him, given that there are over 850,000 records of people named Jonathan in the U.S. alone. *See* https://www.ssa.gov/OACT/babynames/decades/century.html (last visited Sept. 29, 2025).

### B. Plaintiffs Cannot Establish a BIPA Violation Because Apple Does Not "Collect" or "Possess" On-Device Processed Data, iCloud Photos Data, or Sync Update Data

Plaintiffs cannot show that Apple took any active step to "collect" their On-Device Processed Data, iCloud Photos Data, or Sync Update Data or "controlled" it. To survive summary judgment on their § 15(b) claim, Plaintiffs must proffer evidence that Apple "took an active step" to "collect, capture, purchase, receive through trade, or otherwise obtain" their biometrics. 740 ILCS 14/15(b). Each of the verbs used in § 15(b) requires that Apple affirmatively act to gain control of Plaintiffs' biometrics. *See Doe v. Apple Inc.*, 2022 WL 17538446, at *5 (agreeing with courts that "have interpreted BIPA to impose liability only if an entity takes, at a minimum, 'an *active* step to collect, capture, purchase or otherwise obtain biometric data'") (emphasis in the original) (citation omitted). An active step might include, for example, requiring amusement park visitors to submit to a fingerprinting process to obtain a multi-entry pass. *See, e.g.*, *Rosenbach v. Six Flags Ent't Corp.*, 129 N.E.3d 1197, 1200 (Ill. 2019). There is no evidence to suggest Apple has ever taken such a step here.

The same result follows for Plaintiffs' § 15(a) claim. To establish a violation, Plaintiffs must prove that Apple was "in possession" of their biometrics. *See* 740 ILCS 14/15(a). Possession means an entity "has or takes control of the subject property or holds the property at [its] disposal." *Doe v. Apple Inc.*, 2022 WL 17538446, at *5; *accord Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 749 (N.D. Ill. 2023) ("Possession" means "the act or condition of having in or taking into one's control or holding at one's disposal."). Such control depends on whether Apple "could freely access the data" and "how [Apple] allegedly received it." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. Feb. 24, 2020) (dismissing BIPA claims based on lack of access to data in question). Here, evidence shows that Apple could not freely access or use the data for any reason.

### 1. Apple does not "control" On-Device Processed Data, and took no "active step" to collect it

The Appellate Court of Illinois, First District held that Apple does not "collect" or "possess" purported biometric identifiers or information where, like the On-Device Processed Data, the alleged biometrics are stored on users' devices. *Barnett v. Apple Inc.*, 225 N.E.3d 602, 603 (Ill. App. 2022). In *Barnett*, plaintiffs alleged that Apple violated BIPA by offering on-device technology that allowed users the option to scan their finger or face to unlock their phones or computers because "Apple is the sole owner of its software." *Id.* at 603-04 (discussing "Touch ID" and "Face ID" technologies). The trial court concluded that, where the relevant data lived on the user's device, Apple could not "collect" or "possess" biometrics under BIPA. *Id.* at 606. The appellate court agreed, explaining there could be no viable BIPA claim where the technology runs on the device. *Id.* at 610-11. As the *Barnett* court noted, "Apple designed these features almost with the express purpose of handing control to the user." *Id.* at 610.

Illinois federal courts have reached the same conclusion in similar cases, dismissing BIPA claims concerning two other on-device photo processing technologies:

- ***G.T. v. Samsung Elecs. Am., Inc.*, 742 F. Supp. 3d 788 (N.D. Ill. 2024):** The court dismissed §§ 15(a) and 15(b) claims regarding on-device photo clustering software because "there is a salient difference between providing a technology and then using that technology to collect, capture, or obtain Biometrics." *Id.* at 799. Even if defendant "controls the App and its technology," "it does not follow that this control gives [defendant] dominion over the Biometrics generated from the App." *Id.* at 797.

- ***Bhavilai v. Microsoft Corp.*, 716 F. Supp. 3d 640 (N.D. Ill. 2024):** The court dismissed §§ 15(a) and 15(b) claims based on "face scanning" technology in a photos app, finding that defendant did not "collect" or "possess" biometrics by providing "a tool that can be used to collect a facial scan," rather than "actually doing the collecting." *Id.* at 641. "[C]ontrol of the facial scan software is not the same as control of the facial scan data that is collected using the software." *Id.*

Apple is entitled to summary judgment for the same reasons. That Apple pre-loads software that Plaintiffs claim collects biometrics on devices does not equate to Apple itself taking an "active

step" to collect or possess the alleged data. *See Bhavilai*, 716 F. Supp. 3d at 641; *Barnett*, 2022 IL App (1st) 220187, ¶ 43 (BIPA plaintiffs cannot "equate[] the product with the company"); *Heard*, 440 F. Supp. 3d at 968 (dismissing BIPA claim where plaintiffs alleged defendant developed biometric technology, not that defendant could access or use the biometrics).

The undisputed facts show that the People album technology processes and stores On-Device Processed Data, as the name would suggest, on Plaintiffs' devices. (SOF ¶ 40-62.) The undisputed facts also establish that Apple cannot access, and Plaintiffs have complete control over, the On-Device Processed Data. (SOF ¶ 74-75, 77-78, 81-82.) Plaintiffs have no contrary evidence. Apple is thus entitled to judgment on Plaintiffs' claims related to On-Device Processed Data.

#### 2. Apple does not "control" iCloud Photos Data or Sync Update Data, and took no "active step" to collect it

Apple is also entitled to summary judgment on Plaintiffs' claims related to iCloud Photos Data and Sync Update Data. As detailed above, this Court has already found that Plaintiffs' § 15(b) claim requires that Apple take an "active step" to collect Plaintiffs' alleged biometrics. *See Doe v. Apple Inc.*, 2022 WL 17538446, at *5. Plaintiffs' § 15(a) claim, in turn, requires that Apple has "possession" of Plaintiffs' alleged biometrics by "controlling" it. *Id*. The undisputed evidence shows Apple took no "active step" regarding, and does not "control," iCloud Photos Data and Sync Update Data. This is because (1) Apple cannot read relevant iCloud Photos Data (including user-inputted album labels) that is encrypted or the Sync Update Data (including [redacted]) that is end-to-end encrypted; and (2) users—not Apple—choose whether to store or sync their photos data. (SOF ¶¶ 81-83, 89-95, 119-23.)

iCloud Photos is an optional feature for users to sync certain data across their devices. (SOF ¶ 5.) Users thus have the option to sync their photos (exempted from BIPA, *see* 740 ILCS 14/10) and certain associated data such as [redacted] (derived from photos, and also exempted from

BIPA), as well as album labels and location of faces in photos, both of which are encrypted (i.e., unusable data that Apple does not access (SOF ¶ 92, 96)). For users who are able to take advantage of the Sync Update (Jackson, Oatman, Revelo, and Vall), certain additional data such as the [redacted] (not a biometric identifier) can now be stored in iCloud and synced to users' other Apple devices end-to-end encrypted—meaning it is completely inaccessible to Apple. (SOF ¶ 36-38, 110, 119, 121-23.)[16]

#### a. Plaintiffs cannot establish that Apple took an active step to collect iCloud Photos Data or Sync Update Data (§ 15(b))

Merely providing the option to sync encrypted data such as album labels or [redacted] (contained in a package of data) to iCloud Photos or through iCloud to a user's other Apple devices is not the same as Apple taking an active step to collect it itself. *See Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683 (N.D. Ill. 2023) (dismissing § 15(b) claim where defendant provided cloud computing storage to a biometric timekeeping company because storage, without more, does not show "some effort to collect or obtain" the data).[17] And it certainly does not suggest Apple has

---

[16] Illinois privacy statutes have recognized a difference between data that exists in its raw format (e.g., [redacted] itself, which is accessible only on device, or user-inputted album labels) and that same data that exists in an inaccessible encrypted format (e.g., [redacted]). For example, Illinois' data breach statute defines "personal information" as including only PII (specifically, a "[f]irst name or initial and last name") when combined with certain data elements such as "[u]nique biometric data" if "***not encrypted/redacted***." 815 ILCS 530/5 (emphasis added). The Illinois legislature thus made clear there can be no unauthorized data breach when the data is encrypted. The same logic precludes Plaintiffs' BIPA claims as to the Sync Update Data and iCloud Photos Data. Here, in fact, there is no PII ***and*** the data is protected by encryption that no one other than the user—not even Apple—can read. (SOF ¶ 70-71, 92, 100, 123, 130.)

[17] This case is unlike others where courts have not applied the active step requirement, have addressed technology intended to identify a specific individual, or have not considered how encryption factors into analyzing whether a company "controls" alleged biometric data. *See Tapia-Rendon v. Workeasy Software, LLC*, No. 21 C 3400, 2025 WL 2299592, at *7 (N.D. Ill. Aug. 8, 2025). For example, *Tapia-Rendon* involved software that created templates based on an employee's fingerprint scan, involved enrolled identities, and allowed an employer to link the biometrics to "a single unique individual" for timekeeping purposes. *Id*. at *1-2, 6-7. Rejecting the

taken a step to gain control of or even access the data in question.

Robinson, for example, has no evidence that Apple has ever taken any steps to decrypt or access his iCloud Photos Data. (SOF ¶ 100, 107.) To the contrary, the undisputed facts show that: (1) Apple gave Robinson the option to sync iCloud Photos Data for his exclusive use (SOF ¶ 5, 103); and (2) Robinson's iCloud Photos Data remains synced in his iCloud Photos library in an encrypted form that no one other than Robinson can use (SOF ¶ 102, 107). Plaintiffs cannot carry their burden to establish "collection" of iCloud Photos Data.

The same is true for Jackson, Oatman, Revelo, and Vall when it comes to Sync Update Data. Just as using iCloud Photos is optional, the Sync Update also comes down to user choice. In addition to choosing to enable iCloud Photos, users must choose to install the OS Updates, use the Camera app, and store their photos and videos with the Photos app. (SOF ¶ 112.) To ensure users' privacy in their Sync Update Data, the data is end-to-end encrypted. (SOF ¶¶ 110, 113-14.) Apple does not and cannot access any Sync Update Data (including [redacted] (SOF ¶ 119.) The Sync Update Data [redacted]. (SOF ¶¶ 114, 121.) Only then can [redacted]. (SOF ¶¶ 114,119.) Just as Apple took no "active step" to collect iCloud Photos Data that is encrypted, Apple took no "active step" to collect encrypted Sync Update Data.

---

"active step" requirement, the court found a disputed fact as to whether the defendant collected the data where plaintiffs presented evidence that the defendant could access the servers containing the template data. *Id.* at *7-10. The facts here are distinguishable: there is no enrollment of verified identities, the purpose of the People album feature is not to identify specific unique individuals, and Apple does not access the relevant data, which is encrypted. (SOF ¶¶ 2, 99-100, 105-06, 119, 140-41, 144.)

**b. Plaintiffs cannot satisfy their burden to establish that Apple "controls" iCloud Photos Data or Sync Update Data to show "possession" (§ 15(a))**

[redacted] is not enough to demonstrate "possession" or "control" of Plaintiffs' data. (SOF ¶ 90.) No Plaintiff even alleges that [redacted] for any purpose, and there is no evidence to the contrary. (SOF ¶ 91, 106.) And for Sync Update Data, [redacted] (SOF ¶ 119.) Plaintiffs make no showing that Apple "controls" the purported "biometrics" in either iCloud Photos Data or Sync Update Data. Nor could they make such a showing because any relevant data in both sets is encrypted.

A court examined the concept of access and control in a case alleging privacy violations under another statute (the California Invasion of Privacy Act (CIPA)); it held that encryption forecloses claims of "access" or "control," applying a rationale that is equally applicable here. *See Gutierrez v. Converse Inc.*, No. 23-6547-KK-MARx, 2024 WL 3511648, at *6-8 (C.D. Cal. July 12, 2024). The plaintiff in *Gutierrez* alleged that non-party Salesforce "intercepted" customers' communications sent to Converse through a Salesforce-provided chat feature on Converse's website. According to plaintiff, Converse aided and abetted Salesforce's purported CIPA violation, but the court granted summary judgment in favor of Converse because there was no underlying privacy violation by Salesforce. In so holding, the court primarily relied on uncontroverted evidence that chat communications were encrypted in transit and when stored on Salesforce's servers. The court found that chat communications were "accessible only through a password-protected customer dashboard," and plaintiffs presented no evidence "establishing Salesforce actually read or attempted to read or learn the contents" of messages. *Id.* at *7-8. Likewise, there was no evidence supporting plaintiff's contention that "Salesforce decrypts a chat message when

it arrives at the Salesforce domain, 'adds technical data,' and re-encrypts the message to send to Defendant's customer service representative." *Id.*[18]

Summary judgment is warranted under the same rationale. Both iCloud Photos Data and Sync Update Data are encrypted; Apple does not decrypt or access iCloud Photos Data absent circumstances not present here and Apple cannot decrypted or access Sync Update Data at all. (*See supra* fn. 14; SOF ¶¶ 89-95, 119.) At most, Apple allows users to store encrypted data on iCloud Photos or to sync the encrypted data to their other devices. (SOF ¶¶ 5, 92, 119.) As this Court already held, however, storage is not synonymous with possession under BIPA: "[T]he language of the statute itself differentiates between possession and storage. Thus, ***any interpretation of the statute that equates possession with 'storage' would render these provisions superfluous***, which violates the basic rules of statutory construction." *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 653 (S.D. Ill. 2021) (citing 740 ILCS 14/15(e)) (emphasis added). Plaintiffs therefore must offer some evidence that Apple "controlled" Plaintiffs' iCloud Photos Data or Sync Update Data. *See Doe v. Apple Inc.*, 2022 WL 17538446, at *5. The undisputed facts, however, show that all requisite control contemplated by § 15(a) (taking photos, deleting photos, using iCloud) resides exclusively with Plaintiffs as the device users, not Apple. (SOF ¶¶ 81-83.)

Take Robinson for example who is the only original Plaintiff to both have iCloud Photos enabled and have labeled his People album. (SOF ¶ 34.) He alone owns his iCloud Photos Data; he simply elects to store it in iCloud Photos. (SOF ¶ 103.) Because of on-device encryption, Apple

---

[18] *See also Robinson v. Disney Online,* 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015) (dismissing Video Privacy Protection Act claim where disclosure of "encrypted device serial numbers" did not include disclosure of "a correlated decryption table or other identifying information"); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013) (dismissing privacy claims that did not allege defendant disclosed "*unencrypted* . . . sensitive financial information, medical information, or passwords") (emphasis added).

cannot read the label Robinson applied to his People album. (SOF ¶ 92.)[19] To the extent Apple "stores" anything for him, it is scrambled, encrypted "noise" that Apple does not freely access and does not control (as described above) along with a cropped photo. (SOF ¶ 91.) That is not enough: "it is well-established that photographs such as thumbnails are not biometric identifiers." *Sheppard v. Fantasia Trading LLC*, No. EDCV 23-2407 JGB (Ex), 2024 WL 3707825, at *11 (C.D. Cal. July 26, 2024) (dismissing BIPA claims where only allegation against defendant was that it stored "facial thumbnails" collected from its home-security devices on its cloud). As for Jackson, Oatman, Revelo, and Vall, they own their Sync Update Data, which Apple cannot use or access, given it is end-to-end encrypted. (SOF ¶¶ 85, 119.) On this record, Apple is entitled to summary judgment on Plaintiffs' iCloud Photos and Sync Update Data claims.

### C. Plaintiffs Are Not "Aggrieved," And They Are Not Entitled to Damages

BIPA § 20 provides discretionary damages only if plaintiffs are "aggrieved." An individual is "aggrieved" under BIPA if the rights protected by the statute are violated. *Rosenbach*, 129 N.E.3d at 1207. BIPA protects the right to privacy in one's biometrics, and the right to control the same. *Id.* at 1206 (BIPA "codified that individuals possess ***a right to privacy in and control over*** their biometric identifiers and information") (emphasis added). The People album technology was designed to promote user privacy: on-device processing and encryption leaves users solely in control of their fully-protected On-Device Processed Data, iCloud Photos Data, and Sync Update Data. (SOF ¶ 74-75, 81-83, 104, 112, 119.)

Plaintiffs cannot meet their burden to produce any evidence that Apple has *ever* accessed their On-Device Processed, iCloud Photos, or Sync Update Data for any purpose, let alone to identify them. (SOF ¶¶ 75-78, 105, 106, 119.) Rather, the evidence shows that Plaintiffs alone

---

[19] There is no evidence that Apple used an encryption key to access Robinson's data. (SOF ¶ 107.)

control whether to use the Photos app; when to delete photos (and [redacted]); whether and how to label People albums; whether to delete or reset People albums; whether to use iCloud Photos; and whether to take advantage of the Sync Update. ( SOF ¶¶ 81-83, 112.) Plaintiffs' actions since filing this lawsuit confirm that they are not "aggrieved," despite conclusory allegations to the contrary. Plaintiffs continue to take photos and continue to take advantage of the Photos app including the People album feature. (SOF ¶ 38.) Doe, LeBlond, Robinson, and Vall affirmatively continue to have labeled People albums. (SOF ¶ 30.) LeBlond even labeled his People album after he brought this case. (SOF ¶ 31.) Plaintiffs have never suffered the harm BIPA seeks to prevent.[20]

Further, BIPA's discretionary damages require intent, recklessness, or negligence on Apple's part. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 42 (2023).[21] Apple did not "recklessly," "intentionally," or "negligently" violate BIPA where (1) [redacted] do not derive from and do not represent users' face geometry, (2) [redacted] and other information do not identify users or constitute "biometrics," and (3) Apple instituted on-device, privacy-enhancing features for People album and protects People album-related data through encryption if users opt to sync it through iCloud Photos. (SOF ¶¶ 53-57, 79, 104, 124.) Plaintiffs cannot point to any evidence that Apple acted with the requisite mental state to support any damages award. There is no BIPA violation, Plaintiffs are not entitled to damages, and Apple is entitled to summary judgment.

## V. CONCLUSION

The undisputed material facts refute the conclusory allegations Plaintiffs relied on to survive the pleadings stage. Apple is entitled to summary judgment on all claims.

---

[20] Plaintiffs only joined this litigation after seeing counsel's ads on Facebook or receiving information from TopClassActions.com. (SOF ¶¶ 32-33.)

[21] *See also Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill. 2023) (discussing *Cothron* and that "the use of 'may' and 'each violation' indicates . . . that to the extent that damages are discretionary, the discretion does not depend on the number of violations").

Respectfully submitted,

Dated: September 30, 2025

APPLE INC.

By: */s/ Purvi G. Patel*

Purvi G. Patel (ARDC# 6287065)
Emma Burgoon*
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
(213) 892-5200
PPatel@mofo.com
EBurgoon@mofo.com

Katie Viggiani*
Tiffani B. Figueroa*
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
KViggiani@mofo.com
TFigueroa@mofo.com

* appearing *pro hac vice*