**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JANE DOE et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>APPLE INC.,<br><br>*Defendant*. | No. 3:20-cv-000421-NJR |

# PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS OF DEFENDANT'S EXPERT J. MARC BRASHER

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................ 2

A. Brasher's June 21, 2024, Expert Report ........................................................ 2

B. Brasher's Supplemental Expert Report........................................................ 4

C. Brasher's Deposition..................................................................................... 4

1. Retention and Qualifications as a "Cybersecurity" Expert ........................................ 4

2. Testimony That Encryption Does Not Change the Nature of Underlying Data ............ 5

3. Disavowal of the Sworn Testimony of Defendant's Corporate Representative ............ 6

ARGUMENT ........................................................................................................... 6

I. Brasher's "Cybersecurity" Opinions Are Irrelevant to Plaintiffs' Claims and Would Not Aid the Jury in Understanding the Evidence........................................................ 7

II. Brasher's Opinions Are Not Supported by Sufficient Facts or Data ........................... 10

III. Brasher Is Not Qualified to Opine About Defendant's Encryption Practices............... 13

IV. Brasher Does Not Utilize a Methodology That Supports His Conclusions ................. 15

CONCLUSION ....................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Ancho v. Pentek Corp.*,
157 F.3d 512 (7th Cir. 1998) ... 14

*Barber v. United Airlines, Inc.,*
17 F. App'x 433 (7th Cir. 2001) ... 12

*Bradley v. Brown*,
42 F.3d 434 (7th Cir. 1994) ... 17

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*.,
509 U.S. 209 (1993) ... 12

*Centripetal Networks, Inc. v. Cisco Sys.*,
492 F. Supp. 3d 495 (E.D. Va. 2020) ... 12

*Chapman v. Maytag Corp.*,
297 F.3d 682 (7th Cir. 2002) ... 8, 9

*Cole v. Perry*,
No. 16-3081, 2019 U.S. Dist. LEXIS 85998 (S.D. Ind. May 22, 2019) ... 9, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ... 6, 7, 9, 13, 16, 17, 18

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ... 15

*Durkin v. Equifax Check Servs., Inc.*,
406 F.3d 410 (7th Cir. 2005) ... 10

*Figueroa v. Kronos, Inc.*,
454 F. Supp. 3d 772 (N.D. Ill. 2020) ... 8

*Flores v. Motorola Sols., Inc.*,
No. 20-01128, 2021 U.S. Dist. LEXIS 21937 (N.D. Ill. Jan. 8, 2021) ... 8

*FTC v. Qualcomm Inc.*,
411 F. Supp. 3d 658 (N.D. Cal. 2019) ... 12

*Gayton v. McCoy*,
593 F.3d 610 (7th Cir. 2010) ... 14

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ... 16

*Gopalratnam v. Hewlett-Packard Co.*,
877 F.3d 771 (7th Cir. 2017) ... 7, 10

*Happel v. Walmart Stores, Inc.*,
602 F.3d 820 (7th Cir. 2010) ... 14

*Heard v. Becton, Dickinson & Co.*,
440 F. Supp. 3d 960 (N.D. Ill. 2020) ... 8

*Holden Metal & Aluminum Works v. Wismarq Corp.*,
No. 00-191, 2003 U.S. Dist. LEXIS 5247 (N.D. Ill. Apr. 2, 2003) .......................................... 13

*Jones v. Lincoln Elec. Co.*,
188 F.3d 709 (7th Cir. 1999)................................................................................................. 15

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ................................................................................................................ 7

*LeClercq v. Lockformer Co.*,
No. 00-7164, 2005 U.S. Dist. LEXIS 7602 (N.D. Ill. Apr. 28, 2005) ..................................... 13

*Lewis v. Citgo Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009)................................................................................................. 16

*McClaine v. DX Enters.*,
No. 23-1168-DWD, 2024 U.S. Dist. LEXIS 148038 (S.D. Ill. Aug. 19, 2024) ........................ 8

*Monroy v. Shutterfly, Inc.*,
No. 16-10984, 2017 U.S. Dist. LEXIS 149604 (N.D. Ill. Sept. 15, 2017) ............................... 8

*Myers v. Ill. Cent. R.R. Co.*,
629 F.3d 639 (7th Cir. 2010)................................................................................................... 7

*Neals v. PAR Tech. Corp.*,
419 F. Supp. 3d 1088 (N.D. Ill. 2019) ..................................................................................... 8

*Obrycka v. City of Chicago*,
792 F. Supp. 2d 1013 (N.D. Ill. 2011) ................................................................................... 13

*Patterson v. Respondus, Inc.*,
593 F. Supp. 3d 783 (N.D. Ill. 2022) ....................................................................................... 8

*Porter v. Whitehall Labs., Inc.*,
9 F.3d 607 (7th Cir. 1993)..................................................................................................... 17

*Richter v. Syngenta AG (In re Paraquat Prods. Liab. Litig.)*,
730 F. Supp. 3d 793 (S.D. Ill. 2024) ........................................................................................ 7

*Ronquillo v. Doctor's Assocs., LLC*,
No. 21-4903, 2022 U.S. Dist. LEXIS 1016600 (N.D. Ill. Apr. 4, 2022) .................................. 8

*Sloan v. Anker Innovations Ltd.*,
No. 22-7174, 2024 U.S. Dist. LEXIS 40553 (N.D. Ill. Jan. 9, 2024) ....................................... 8

*SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*,
No. 20-19, 2025 U.S. Dist. LEXIS 76249 (W.D. Wis. Apr. 21, 2025) .................................. 12

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*,
223 F.3d 585 (7th Cir. 2000)................................................................................................. 14

*Tyus v. Urban Search Mgmt.*,
102 F.3d 256 (7th Cir. 1996)................................................................................................. 15

*United States v. Benson*,
941 F.2d 598 (1991) ................................................................................................................ 9

*United States v. Harris*,
531 F.3d 507 (7th Cir. 2008)........................................................................................ 8

*United States v. Noel*,
581 F.3d 490 (7th Cir. 2009)...................................................................................... 10

*Van v. Ford Motor Co.,*
332 F.R.D. 249 (N.D. Ill. 2019)................................................................................. 12

*Vandervelden v. St. Louis Univ.*,
589 F. Supp. 3d 944 (S.D. Ill. 2022)........................................................................ 16

*Wasson v. Peabody Coal Co.*,
542 F.3d 1172 (7th Cir. 2008).................................................................................... 17

*Wilk v. Brainshark, Inc.*,
631 F. Supp. 3d 522 (N.D. Ill. 2022) ........................................................................ 8

*Yuille v. Uphold HQ, Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023)...................................................................... 17

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005)...................................................................................... 16

**Rules**

Fed. R. Evid. 702 ........................................................................................... 6, 7, 9, 10, 18

Fed. R. Evid. 702(b)...................................................................................................... 10

Fed. R. Evid. 703 .......................................................................................................... 10

**Other Authorities**

3 Weinstein & Berger .................................................................................................. 10

The opinions of Defendant's "cybersecurity" expert J. Marc Brasher are irrelevant to Plaintiffs' claims, unsupported by facts, and based on no discernable methodology. For these reasons, and because Brasher is wholly unqualified to offer opinions concerning the security of Illinois citizens' biometric data on Defendant's devices and cloud-based servers, his opinions should be excluded.

As an initial matter, Brasher's opinions would not aid the trier of fact. This is because Defendant disclosed Brasher to opine about [redacted] But a defendant's encryption of biometric data is unequivocally *not* a defense to an Illinois Biometric Information Privacy Act ("BIPA") claim, and therefore Defendant's encryption practices have no bearing on Plaintiffs' claims.

Nor are Brasher's opinions supported by sufficient facts or data. Brasher did not [redacted]

Brasher is also not qualified to testify about Defendant's encryption practices. [redacted]

[redacted]

Finally, Brasher's methodology is non-existent. Although encryption *can* be tested, [redacted] That is not admissible science; it is subjective, and inadmissible, *ipse dixit*.

For all of these reasons, and those below, Brasher should be excluded.

**BACKGROUND**

**A. Brasher's June 21, 2024, Expert Report**

Defendant served Brasher's expert report on Plaintiffs' counsel on June 21, 2024. *See* June 21, 2024, Report, attached hereto as Exhibit 1 (the "June 2024 Report"). Therein, Brasher does not attempt to address the evidence concerning Defendant's collection of Illinois citizens' biometric data. *See generally*, Ex. 1. Instead, Brasher bases his opinions on his review of [redacted] *id.* at ¶ 2, and purports to provide opinions regarding [redacted]

According to the June 2024 Report, [redacted]

[redacted]

While hands-on experience may (in specific, limited circumstances) substitute for formal schooling, [redacted]. [redacted]

Most of the June 2024 Report [redacted] Brasher only references one deposition in passing. *Id.* at ¶ 25. The overwhelming majority of Brasher's citations are to Defendant's public-facing documents. *See, e.g.*, *id.* at ¶ 52. There is no indication that Brasher reviewed internal emails, correspondence, or other materials on which these documents are based, and these materials are not listed among those that Brasher reviewed. There is no indication that Brasher reviewed Defendant's source code related to encryption, or that Brasher would be capable of reviewing such source code.

Based largely on general encryption principles and several of Defendant's documents, Brasher opines in the June 2024 Report that the [redacted]

on the user's device that remains encrypted when it is transmitted to iCloud; that [redacted]; [redacted] Brasher ultimately concludes that, [redacted] 2.

**B. Brasher's Supplemental Expert Report**

Brasher's August 22, 2025, supplemental report (the "Supplemental Report") similarly relies on Defendant's own materials, including the Apple Platform Security Guide, iCloud Data Security Overview, and other public documentation produced by Defendant, in addition to general cryptography literature. [redacted]

**C. Brasher's Deposition**

1. Retention and Qualifications as a "Cybersecurity" Expert

In his September 22, 2025, deposition, Brasher admitted that he is not a biometrics or artificial intelligence expert, and that he had been retained by Defendant solely for his

"cybersecurity experience." Sept. 22, 2025, Brasher Dep. Tr., attached hereto as Exhibit 3 at 16:1–25 ("Brasher Deposition"). He conceded that his report is "largely on the cybersecurity aspects of the device, the data, and the services," and that he "didn't think it was important to . . . be aware of what details are in BIPA." *Id.* at 14:15–18 (stating that his opinions are "around the cybersecurity aspects of [Defendant's] ecosystem platform and operating systems"); 134:13–19. His personal phone is an Android and he acquired an iPad (i.e., a device manufactured by Defendant) only for this case; he does not like the amount of control that Defendant exerts over its software, preferring systems where "[he has] the ability to make alterations that [he] find[s] enjoyable." *Id.* at 14:20–15:25. Brasher testified that he did not read any source code directly, but did rely on the reports of Defendant's expert Dr. Creed Jones and Plaintiffs' expert Dr. Atif Hashmi's, both of which incorporated source code review. *Id.* at 17:4–16. Brasher agreed there was "no way" he could check Dr. Jones' work because Dr. Jones reviewed the source code directly. *Id.* at 19:1–6. Brasher admitted that an associate's degree is the highest level of education that he received. *Id.* at 29:14–18.

2. <u>Testimony That Encryption Does Not Change the Nature of Underlying Data</u>

During his deposition, Brasher admitted that encryption does not stop [redacted]. As he testified, Defendant's devices [redacted] *Id.* at 142:12–15; 144:16–25. As Brasher additionally testified, [redacted]

Brasher further admitted [redacted]. [redacted]

[redacted]

3. Disavowal of the Sworn Testimony of Defendant's Corporate Representative

[redacted]

**ARGUMENT**

Brasher's opinions should be excluded because they are irrelevant to Plaintiffs' claims and unsupported by sufficient facts or data. Brasher is additionally unqualified to offer his opinions, which are not based on any methodology, reliable or otherwise.

Federal Rule of Evidence 702 and the principles outlined in *Daubert* govern the admission of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *see*

*also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999) (extending application of *Daubert* factors to engineers and other technical experts). It is a district court's role to ensure that expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589. To do so, a district court must ascertain whether (1) the expert is qualified, (2) the expert's methodology is scientifically reliable, and (3) the expert's testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 ("the expert's scientific, technical, or other specialized knowledge" must "help the trier of fact to understand the evidence"); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (outlining three-step analysis that district courts should utilize before admitting expert testimony); *Myers v. Ill. Cent. R.R. Co*., 629 F.3d 639, 644 (7th Cir. 2010) (same).

## I. Brasher's "Cybersecurity" Opinions Are Irrelevant to Plaintiffs' Claims and Would Not Aid the Jury in Understanding the Evidence

Because Plaintiffs' BIPA Section 15(a) and 15(b) claims have nothing to do with cybersecurity, and because *all* of the opinions that Brasher offers are, as he concedes, "cybersecurity" opinions, Brasher's opinions cannot aid the trier of fact in understanding the evidence. His opinions should therefore be excluded. Fed. R. Evid. 702; *Gopalratnam*, 877 F.3d at 779.

Here, all that is at issue is whether Defendant possessed or collected biometric data in violation of BIPA Sections 15(a) and 15(b). That is it. Whether or not the at-issue data were encrypted, and the nature of any encryption, is simply not relevant. *Richter v. Syngenta AG (In re Paraquat Prods. Liab. Litig.)*, 730 F. Supp. 3d 793, 807 (S.D. Ill. 2024) ("*Daubert* requires the proffered testimony to 'fit' with a disputed issue in the case because 'scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'"). This is because BIPA does not include any carve out for encrypted data, and there is no authority for the

proposition that encryption provides a defense to a BIPA Section 15(a) or 15(b) claim, or is even relevant to such a claim. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) (finding "the suggested scientific testimony must 'fit' the issue to which the expert is testifying"). To the contrary, Section 15(a) and 15(b) claims have been deemed cognizable *regardless* even of alleged "military grade" encryption. *See Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 954, 958 (N.D. Ill. Jan. 9, 2024) (cognizable Section 15(a) and (b) claims that programs constructed faceprints and defendants stored facial recognition data on the cloud despite allegation that data were encrypted at a "military grade").

Brasher's opinions are nevertheless designed to support the existence of an exemption to BIPA liability where biometric data is encrypted and cannot be accessed by the entity that possesses it unless it uses a key.[1] However, no such exemption exists, under BIPA's plain language or otherwise, and there is no contrary authority.[2] Significantly, moreover, Brasher concedes that [redacted]

[1] Section 15(b) applies when a private entity collects, captures, trades for, or obtains biometric data in some other way. *Flores v. Motorola Sols., Inc.*, No. 20-01128, 2021 U.S. Dist. LEXIS 21937, at *3–6 (N.D. Ill. Jan. 8, 2021); *Monroy v. Shutterfly, Inc.*, No. 16-10984, 2017 U.S. Dist. LEXIS 149604, at *3–4 (N.D. Ill. Sept. 15, 2017); *Ronquillo v. Doctor's Assocs., LLC*, No. 21-4903, 2022 U.S. Dist. LEXIS 1016600, at *5–7 (N.D. Ill. Apr. 4, 2022); *Figueroa v. Kronos, Inc.*, 454 F. Supp. 3d 772, 783–84 (N.D. Ill. 2020); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092 (N.D. Ill. 2019). Section 15(a) applies when a private entity possesses biometric data. *McClaine v. DX Enters.*, No. 23-1168-DWD, 2024 U.S. Dist. LEXIS 148038, at *6 (S.D. Ill. Aug. 19, 2024); *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 531 (N.D. Ill. 2022); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 822-23 (N.D. Ill. 2022); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020).

[2] The law of the case additionally forecloses the existence of such an exemption, because this Court previously found, in denying Defendant's motion to dismiss, that at-issue data could qualify as protected biometric data despite the fact that Plaintiffs' complaint expressly pleads that the data were encrypted. Doc. 135 at 8–9, 11; *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008) (presumption against opening issues already decided in the same litigation, barring substantial new evidence not available earlier or a manifest error or a change in the law that reveals the prior ruling was erroneous).

[redacted] Accordingly, Brasher's opinions fail the third prong of *Daubert* (helpfulness) and must be excluded. *Daubert*, 509 U.S. at 591–92 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (citing 3 Weinstein & Berger ¶ 702[02], p. 702–18)).[3]

Brasher's cybersecurity opinions should additionally be excluded because they would muddle the issues and confuse the jury. This is because a jury exposed to Brasher's opinions is highly likely to focus on cybersecurity, which has nothing to do with the issue in this case: whether Defendant possessed or collected the at-issue biometric data in violation of BIPA. *Cole v. Perry*, No. 16-3081, 2019 U.S. Dist. LEXIS 85998, at *4 (S.D. Ind. May 22, 2019) ("Testimony addressing whether [defendant] acted in accordance with [Indianapolis Metropolitan Police Department] training and policy would potentially confuse the jury, which should instead focus on the question of whether [defendant] complied with the Fourth Amendment."). Brasher's opinion [redacted] would likewise confuse the jury, as data security measures have nothing to do with BIPA. *See United States v. Benson*, 941 F.2d 598, 604 (1991) (the "touchstone of admissibility" under Federal Rule of Evidence 702 is "helpfulness to the jury," such that one of the key inquiries is whether "[o]n *this subject*" the jury would be helped by hearing the opinion of "*this person*" (emphasis in original)).[4]

---

[3] Brasher's admissions regarding his qualifications demonstrate why his testimony will not assist the jury. He is not a biometrics or artificial intelligence expert, but was retained solely for his cybersecurity background; he even admitte [redacted] This confirms that Brasher's limited cybersecurity opinions do not "fit" the BIPA issues that the trier of fact will confront. *Chapman*, 297 F.3d at 687.

[4] This risk of confusion is heightened because Brasher [redacted] nt

In sum, Brasher's expertise and cybersecurity opinions would not help the jury understand any relevant or disputed issue in this case, and should for that reason be excluded. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 421 (7th Cir. 2005) (expert's "test results are thus too broad for this context and, as a result, this portion of his proposed testimony would not assist the trier of fact").

## II. Brasher's Opinions Are Not Supported by Sufficient Facts or Data

Brasher's opinions should additionally be excluded because they are not supported by adequate facts or data. Federal Rule of Evidence 702 requires that expert testimony be "based on sufficient facts or data." Fed. R. Evid. 702(b). An expert cannot simply assert a bottom line or *ipse dixit* conclusion. *Gopalratnam*, 877 F.3d at 781. Instead, expert testimony must be "'based on sufficient facts or data.' . . . [which] means 'that the expert considered sufficient data to employ the methodology.'" *Id.* (internal citation omitted). And to be "qualitatively" adequate, "an expert must employ 'those kinds of facts or data' on which experts in the field would reasonably rely." *Id.* (quoting Fed. R. Evid. 703).

In his report and testimony, Brasher repeatedly opines [redacted]. *United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (rejecting expert testimony where expert "in essence, told the jury

---

[redacted] *Cole*, 2019 U.S. Dist. LEXIS 85998, at *4.

nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so'"). Nor does Brasher identify any factual or data-driven basis for his conclusory opinions; as he admits, [redacted]. Brasher further failed to [redacted], [redacted] ([redacted]

Instead, Brasher determined that [redacted] based not on testing or data analysis, but almost entirely on self-serving documents that Defendant itself provided, many of which are public-facing. *See, e.g.*, Ex. 1 at ¶¶ 52, 58, 63; Ex. 2 at ¶¶ 16–24. This slipshod approach yielded predictable results; for instance, when confronted with the testimony of Defendant's corporate representative that Defendant [redacted]

[redacted] This alone is grounds for exclusion: experts may not offer opinions divorced from the record, and when a party's expert testimony cannot be reconciled with the party's own evidence, it must be excluded. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993) (expert testimony cannot contradict record evidence); *see also SSI Techs., LLC v. Dongguan Zhengyang Elec. Mech. Ltd.*, No. 20-19, 2025 U.S. Dist. LEXIS 76249, at *19 (W.D. Wis. Apr. 21, 2025) (expert limited because of contradictions with damages testimony of 30(b)(6) representative); *Centripetal Networks, Inc. v. Cisco Sys.*, 492 F. Supp. 3d 495, 519 (E.D. Va. 2020) ("Cisco's retained expert witnesses often contradicted Cisco's own documents as well as Cisco's own engineers" and disregarding such opinion in court's findings of fact and conclusions of law); *FTC v. Qualcomm Inc.*, 411 F. Supp. 3d 658, 786 (N.D. Cal. 2019) ("Dr. Nevo was contradicted by Qualcomm's own documents, and the Court does not find his testimony reliable.").

Relatedly, by failing to consider or explain [redacted] Brasher engages in the cherry-picking of evidence that experts cannot do under established Seventh Circuit law. *Van v. Ford Motor Co.,* 332 F.R.D. 249, 269 (N.D. Ill. 2019) (citing *Barber v. United Airlines, Inc.,* 17 F. App'x 433, 437 (7th Cir. 2001) (testimony excluded where expert "merely accepted some of the testimony and [ ] data that suited his theory and ignored other portions of it that did not"));

*see also LeClercq v. Lockformer Co.*, No. 00-7164, 2005 U.S. Dist. LEXIS 7602, at *15 (N.D. Ill. Apr. 28, 2005) (noting that an "expert's failure to discuss the import of, or even mention, these material facts in his reports amounts to 'cherry-picking the facts he considered to render his opinion, and such selective use of facts fails to satisfy the scientific method and *Daubert.*'" (quoting *Holden Metal & Aluminum Works v. Wismarq Corp.*, No. 00-191, 2003 U.S. Dist. LEXIS 5247, at *6 (N.D. Ill. Apr. 2, 2003)).

## III. Brasher Is Not Qualified to Opine About Defendant's Encryption Practices

Brasher's lack of qualification to testify regarding encryption is also grounds for his exclusion. [redacted] which makes him ill-equipped to opine on Defendant's (non-military) encryption practices. [redacted]

[5] [redacted].

Moreover, because Brasher lacks formal credentials, it is even more critical that he have relevant industry experience. *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). But that too is absent. [redacted] "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an expert opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Ancho v. Pentek Corp.*, 157 F.3d 512, 518–19 (7th Cir. 1998) (mechanical engineer was not qualified to give expert opinion on plant reconfiguration). But here, Brasher [redacted] establishes that he is not qualified to testify about it. *See Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 825 (7th Cir. 2010) (limited experience with specific medical issue rendered expert unqualified).

Further, because there is no indication that Brasher adequately studied Defendant's devices, encryption, or cloud-based servers, his opinions on these topics should be excluded, one by one. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[W]e must look at each of the conclusions he draws *individually* to see if he has the adequate *education*, skill, and training to reach them." (emphasis added)). This is because [redacted]

[redacted] – is precisely the type that courts routinely find requires exclusion. Ex. 3 at 14:20–15:25; *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996) ("In all cases, however, the district court must ensure that it is dealing with an expert, not just a hired gun.").

At bottom, Brasher's opinions about Defendant's encryption amount to no more than improper parroting of Defendant's documents and whoever drafted them. Because he is not qualified to give these opinions, they should be excluded. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613–14 (7th Cir. 2002) (expert may not act as a "mouthpiece of a[n expert] in a different specialty"); *see also Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723–24 (7th Cir. 1999) (district court should have barred material scientist from testifying about conclusions that "were rooted in medical knowledge and training which [he] did not have" and that were "derived primarily, if not completely" from a physiologist).

**IV. Brasher Does Not Utilize a Methodology That Supports His Conclusions**

Brasher's resume indicates [redacted]

---

[6] [redacted].

[redacted] is exactly the type of "subjective belief" that is routinely precluded by courts. *See, e.g.*, *Vandervelden v. St. Louis Univ.*, 589 F. Supp. 3d 944, 951 (S.D. Ill. 2022) (subjective belief that earlier treatment could have resulted in avoiding a bad medical outcome was excluded); *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (testimony cannot be based on subjective belief).[7]

Brasher further provides no indication of [redacted]. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005). Although Brasher testifies [redacted] Brasher's conclusory approach stands in stark contrast to the

7 [redacted]

practices of experts testifying in other technological security cases, who disclose their (complicated) methodologies. *See, e.g.*, *Yuille v. Uphold HQ, Inc.*, 686 F. Supp. 3d 323, 351 (S.D.N.Y. 2023) (describing security audits and penetration testing of systems).[8]

Brasher's approach is also contrary to the approach to which the Seventh Circuit requires experts to adhere. To determine whether an expert's methodology is scientifically valid and trustworthy, the Seventh Circuit considers whether the testimony has been subjected to the scientific method, ruling out any subjective belief or unsupported speculation. *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993). "[A] key question" is "whether the theory or technique has been or can be [] tested." *Id.* at 613; *Bradley v. Brown*, 42 F.3d 434, 438–39 (7th Cir. 1994) (excluding expert testimony where methodology was not based on the scientific method). Other considerations include (1) whether the theory or technique has been subject to peer review, (2) the potential error rate of the methodology, and (3) general acceptance of the method in the field. *Porter*, 9 F.3d at 615. Where opinions are unsupported by any method, generally accepted or otherwise, courts exclude the opinions under Federal Rule of Evidence 702. *Id.* at 615–16.

Moreover, Brasher's approach is directly contrary to approach set forth by the U.S. Supreme Court in *Daubert*. The first factor explicated by the *Daubert* court is whether the expert's technique or theory can be or has been tested – that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory

[8] Even if Brasher [redacted] e is instead required to analyze substantial data over *a large sample* in order to conclude that Plaintiffs' biometric data are secure. *See Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (opinion based on only one month of data from one customer was unreliable).

approach that cannot be reasonably assessed for reliability. *Daubert*, 509 U.S. at 593; Fed. R. Evid. 702, Notes of Advisory Comm. on 2000 Amendments. As set forth above, Brasher has not, and cannot, provide any way to test [redacted]

The second *Daubert* factor is whether the technique or theory has been subject to peer review and publication. *Daubert*, 509 U.S. at 593. "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." *Id*. "The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Id*. at 594. [redacted].[9]

Finally, under *Daubert*, "[w]idespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism." *Id.* Yet Brasher fails to provide any information or evidence [redacted]

[9] Additionally, a court should consider the known or potential rate of error of the technique or theory when applied, and the existence and maintenance of standards controlling the technique's operation. *Daubert*, 509 U.S. at 594. [redacted]

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion and exclude Brasher's opinions in their entirety.

September 30, 2025

Respectfully submitted,

/s/ Alexander L. Braitberg
Andrew D. Schlichter
Jerome J. Schlichter
Troy A. Doles
Alexander L. Braitberg
Chen Kasher
Kaitlin Minkler*
Sean M. Milford*
SCHLICHTER BOGARD LLC
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Fax: (314) 621-5934
aschlichter@uselaws.com
jschlichter@uselaws.com
tdoles@uselaws.com
abraitberg@uselaws.com
ckasher@uselaws.com
kminkler@uselaws.com
smilford@uselaws.com

and

Christian G. Montroy
MONTROY LAW OFFICES, LLC
2416 North Center
P.O. Box 369
Maryville, IL 62062
Telephone: (618) 223-8200
Fax: (618) 223-8355
cmontroy@montroylaw.com

*Attorneys for Plaintiffs*

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record. I also had my office e-mail any and all filings to all of the parties.

/s/ Alexander L. Braitberg