**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JANE DOE**, by and through next friend **JOHN DOE**, **RICHARD ROBINSON**, **YOLANDA BROWN**, **JONATHAN LEBLOND**, **PATRICIA ORRIS**, **ANGELA STEVENS**, **JESSICA JACKSON, MELISSA OATMAN, JUSTIN REVELO, AND TAYLOR VALL** on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>**APPLE INC.**,<br><br>Defendant. | Case No. 3:20-cv-00421-NJR |

**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY EXCLUDE THE OPINIONS OF APPLE'S EXPERT DR. CREED JONES**


Purvi G. Patel (ARDC# 6287065)
Emma Z. Burgoon*
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
(213) 892-5200
PPatel@mofo.com
EBurgoon@mofo.com

Katie Viggiani*
Tiffani Figueroa* Morrison
& Foerster LLP 250 West
55th Street
New York, New York 10019
(212) 468-8000
KViggiani@mofo.com
TFigueroa@mofo.com

* appearing *pro hac vice*

*Attorneys for Apple Inc.*

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

- A. Jones' Qualifications ........ 2
- B. Plaintiffs Mischaracterizations Jones' Opinions ........ 3
- C. Plaintiffs Mischaracterize Jones' Prior Opinions ........ 4

III. ARGUMENT ........ 5

- A. Jones Properly Opines on the Technical Meanings of Terms ........ 5
- B. Jones' Opinions Are Consistent with the Evidence ........ 6
  - 1. Apple's ordinary use of the term "scan" has no bearing on how the term is used in the field of biometrics ........ 6
  - 2. The evidence does not contradict Jones' opinion that [redacted] is not a "faceprint" ........ 8
  - 3. No Apple witness concedes that [redacted] are "face geometry" under BIPA ........ 9
  - 4. Jones' opinion on "identification" and "identity" is aptly supported ........ 11
- C. Jones Is Highly Qualified to Provide His Opinions on Encryption ........ 13

IV. CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cage v. City of Chicago*,
979 F. Supp. 2d 787 (N.D. Ill. 2013) ........................................................................11

*In re Clearview AI, Inc.*,
No. 21-cv-00135, 2025 WL 1371330 (N.D. Ill. May 12, 2025)..............................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)..........................................................................................................14

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
581 F. Supp. 3d 1029 (N.D. Ill. 2022) ........................................................................11, 12

*In re Facebook Biometric Info. Priv. Litig.*,
No. 3:15-cv-03747-JD, 2018 WL 2197546 (N.D. Cal. May 14, 2018)..................................11

*Forsythe v. Rosen Med. Grp., LLC*,
No. 11-CV-07676, 2015 WL 127921 (N.D. Ill. Jan. 8, 2015)................................................15

*Geospatial Tech. Assocs., LLC v. United States*,
No. 16-346C, ECF No. 437 (Fed. Cl. Mar. 19, 2024) .............................................................5

*Hartman v. Meta Platforms, Inc.*,
No. 3:23-CV-02995-NJR, 2024 WL 4213302 (S.D. Ill. Sept. 17, 2024) ...............................10

*Hazlitt v. Apple Inc.*,
500 F. Supp. 3d 738 (S.D. Ill. 2020).......................................................................................7

*IQS US Inc. & I.Q.S. Shalev Ltd. v. Prometric Inc.*,
IPR No. Unassigned ..............................................................................................................4

*Martell v. X Corp.*,
No. 23 C 5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024) ................................................12

*Nat'l Wildlife Fed'n v. United States Army Corps of Eng'rs*,
No. 20-CV-00443-DWD, 2022 WL 195332 (S.D. Ill. Jan. 22, 2022), *aff'd*, 75
F.4th 743 (7th Cir. 2023) .......................................................................................................6

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..................................................................................10

*Rodriguez v. ByteDance, Inc.*
No. 23 CV 4953, 2025 WL 672951 (N.D. Ill. Mar. 3, 2025) ............................................7, 10

*Unified Patents, Inc. v. Rothschild Biometric Sys., LLC & SRR Patent Holdings, LLC*,
IPR2017-01514 (P.T.A.B. Jun. 16, 2017)....................................................................5

*Van Buren v. United States*,
593 U.S. 374 (2021)....................................................................................................1, 6

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) .......................................................................................12

**Statutes**

740 ILCS 14/10...............................................................................................................6

740 ILCS 14/15(a) ..........................................................................................................15

Illinois Biometric Information Privacy Act (BIPA) ............................................................ *passim*

**Other Authorities**

A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012) ......................6

Fed. R. Evid. 702 ...........................................................................................................14

# I. INTRODUCTION

Dr. Creed Jones is a leading authority in the field of biometrics with decades of experience in biometrics, machine learning, and software development. He regularly served as a United States delegate to an international biometrics committee that published definitions of many of the biometrics terms at issue here. He teaches classes on machine learning, image processing, and encryption at Virginia Tech. He is beyond qualified to offer his opinions in this case and Plaintiffs' motion to partially exclude Jones' opinions should be denied.[1]

***First,*** Plaintiffs are wrong that Jones' opinions should be excluded on the purported basis that terms (like "scan" and "geometry") used in the Illinois Biometric Information Privacy Act (BIPA) must be given their ordinary meanings. This argument contradicts the Supreme Court's directive that courts consider the technical meanings of statutory terms. *See Van Buren v. United States*, 593 U.S. 374, 388 (2021). BIPA's technical terms therefore should be afforded their technical meanings, on which Jones is eminently qualified to opine.

***Second***, Plaintiffs' claim that Jones' opinions are inconsistent with the evidence collapses upon the most cursory review. Plaintiffs' citations generally fail to support their assertions. In one instance, their cited testimony is the opposite of what Plaintiffs say the witness testified. In any event, an alleged inconsistency would not justify excluding Jones' opinions. This is because Apple's use of common terms, like "scans," "faceprint," and "identity," has no bearing on what those terms mean under BIPA. In any event, even if contradictory, layperson testimony does not

[1] Plaintiffs do not seek to exclude Jones' opinions regarding (1) how the People album groups similar faces locally on a user's device; (2 [redacted]; (3) his testing and demonstrations using an iPhone to confirm that clustering occurs locally; and (4) his explanation that users can choose whether to enable iCloud Photos and that face data is deleted or retained based on user actions.

justify excluding expert opinions.

***Third***, contrary to Plaintiffs' views, Jones is undoubtedly qualified to provide his opinions related to encryption. Based on his decades of experience with software design, he analyzed Apple's source code [redacted] Jones need not specialize in the mathematical details of encryption to opine that Apple's source code calls encryption algorithms. That leaves no basis for excluding any of Jones' opinions, and Plaintiffs' motion should be denied.

## II. BACKGROUND

### A. Jones' Qualifications

Jones is a professor in computer science at Virginia Tech and Chief Technology Officer of a biomedical device company. (*See, e.g.*, Mot. Ex. 1 ¶¶ 9-20 (Jones describing his credentials); Mot. Ex. 3 Appendix B (Jones' CV).) He has more than 40 years of experience in image processing, including decades of experience with biometric technologies like facial recognition. (Mot. Ex. 3 ¶ 7.) He teaches classes on image processing, computer vision, and machine learning. (Mot. Ex. 1 ¶ 9.)

Jones is a leader in biometrics. He was the chair of the International Committee for Information Technology Standards' (INCITS) subcommittee on standardization of biometric data interchange formats. (*Id.* ¶ 18.) He was frequently selected to join the United States' delegation to the joint International Organization for Standardization (ISO) / International Electrotechnical Commission (IEC) committee responsible for biometric standards, which published some of the biometric glossary definitions discussed below. (*Id.* ¶ 19.)

While Jones does not claim to be an "expert" on encryption in the academic sense, he regularly uses encryption in his work as a software developer. (Declaration of Katie Viggiani in Support of Apple Inc.'s Opposition to Plaintiffs' Motion for Partial Summary Judgment and to Exclude the Opinions of Brasher and Jones (Partial) ("Viggiani Decl.") Ex. 18 (Jones Dep. 23:1-8, *id.* 331:1-25).) He also teaches undergraduate courses on encryption fundamentals. (Viggiani Decl. Ex. 18 (Jones Dep. 331:18-25).)

**B. Plaintiffs Mischaracterizations Jones' Opinions**

Plaintiffs' characterizations of Jones' opinions in their "Background" section are incomplete, inaccurate, and misleading. Plaintiffs begin by asserting that Jones opines that "[t]he word 'scan' is not used to describe the operation of a CNN [redacted]" and that he "relies on a single textbook that omits the word 'scan' in its discussions of neural networks." (Mot. at 8 (citing Ex. 2 ¶ 17) (alterations in original; internal citations omitted).) That is wrong for several reasons. *First*, Jones provides nine paragraphs of opinions in the cited report—not just the single cited paragraph—concerning the word "scan." (Mot. Ex. 2 ¶¶ 12-20.) *Second*, he cites four publications—not just a "single textbook"—in that analysis. (*Id.* (see footnotes 7, 8, 11, 12).) *Third*, one cited textbook—*Deep Learning* by Kelleher—*does* use the word "scan" when discussing imaging, but not when discussing the output of CNNs. (*Id.* ¶ 17.) That is precisely Jones' point: Plaintiffs' and their expert Dr. Sheryl Brahnam's use of "scan" to refer to a CNN output does not comport with academic literature. (*Id.* ("Dr. Brahnam's attempt to import [the term "scan"] into the operation of a Deep Neural Network like the ones used in Apple's Photos app lacks support and is factually incorrect."))

Plaintiffs' characterization of Jones' opinions on "faceprints" is similarly misguided. (Mot. at 8.) That Jones declines to use that term to refer to [redacted] is not factually inconsistent with anything said by any Apple employee. It simply reflects Jones' expertise in biometrics and Apple

employees' lay experience.

Plaintiffs also inaccurately characterize Jones' testimony regarding biometric identification. (Mot. at 9.) It is untrue that he acknowledged no citation or authority that identification requires comparison versus a biometric enrollment database. (*Id.*) Quite the contrary, he testified on glossary definitions by both the International Biometrics Identity Association (IBIA) and ISO/IEC requiring such a comparison. (*See, e.g.*, Declaration of Purvi G. Patel in Support of Apple Inc.'s Motion for Summary Judgment and Motions to Exclude Expert Opinions of Dr. Sheryl Brahnam, Jeffrey S. Dunn, and Dr. Aram Sinnreich ("Patel Decl.") Ex. 59 at 189 (IBIA defining "identify" to require a "search against a biometric enrollment database"); Patel Decl. Ex. 60 at 23 (ISO/IEC defining "identify" to require a search against a "biometric enrollment database"); Viggiani Decl. Ex. 18 (Jones Dep. 308:7-312:2 (Jones' testimony about the IBIA definition); *id.* at 328:25-330:24 (Jones' testimony about the ISO/IEC definition).) He also cited two more publications evidencing that requirement. (*See* Mot. Ex. 2 at footnotes 36 (Jain article), 18 and 37 (Jain textbook).) Plaintiffs' cited testimony merely stands for the proposition that Jones omitted a citation from one paragraph of one of his three reports. (*See* Mot. Ex. 4 at 223:2-13; Plaintiffs also cite *id.* at 209:7-19, but this cite appears erroneous.)

### C. Plaintiffs Mischaracterize Jones' Prior Opinions

There is nothing inconsistent between Jones' opinions in prior cases and the ones offered here. (*See* Mot. at 9-10.) In *IQS US Inc. & I.Q.S. Shalev Ltd. v. Prometric Inc.*, IPR No. Unassigned, Jones submitted a declaration stating that biometric identification systems have three parts:

- ***Enrollment***, during which "[s]amples are captured from a device, processed into a usable form from which ***a template is constructed***, and returned to the application";
- ***Verify***, during which "[o]ne or more samples are captured, processed into a usable form, and then matched against an input template"; and

- ***Identify***, during which "[o]ne or more samples are captured, processed into a usable form, and ***matched against a set of template***s" with a list returning "showing how close the samples compare against the top candidates in the set."

(Mot. Ex. 23 ¶ 40 (emphasis added).) Those statements accord with Jones' opinion here that biometric identification requires comparison against an enrollment database. His declaration in the *Unified Patents, Inc. v. Rothschild Biometric Sys., LLC & SRR Patent Holdings, LLC*, IPR2017-01514, at II.A. (P.T.A.B. Jun. 16, 2017) is also consistent. There too (as Plaintiffs concede), Jones submitted a declaration stating that "identification" requires comparison against an enrollment database. (Mot. at 10.)[2]

## III. ARGUMENT

Plaintiffs do not contest that Jones is a qualified expert in biometrics and image processing. Instead, they contend that Jones' opinions about the meaning of terms regularly used within those fields should be excluded because they purportedly contradict their view of the law and Apple testimony. Plaintiffs are wrong in both respects. His testimony comports with the law and there is no contradiction between Jones' opinions about how specific terms are used in the biometrics field and how they are used (including by Apple) in nontechnical layperson terms. Plaintiffs provide no proper basis for excluding Jones' opinions about the meaning of key terms that would be useful to the factfinder in this case, and thus Plaintiffs' motion should be denied in its entirety.

### A. Jones Properly Opines on the Technical Meanings of Terms

Plaintiffs' argument that Jones' opinion on the meanings of technical terms that appear in BIPA should be excluded because he interprets them from a technical rather than lay perspective

---

[2] Plaintiffs also cite *Geospatial Tech. Assocs., LLC v. United States*, No. 16-346C, ECF No. 437 at 2 (Fed. Cl. Mar. 19, 2024), an unrelated case involving a copyright infringement opinion where the court excluded a portion of Jones opinion where he relied on code that was not copyrightable. (*See* Mot. at 10.) The court's ruling had nothing to do with Jones' qualifications in the biometrics field or anything else related to this case. (*Id.*)

is fundamentally wrong. The Supreme Court has directed that "[w]hen interpreting statutes, courts take note of terms that carry 'technical meanings." *Van Buren v. United States*, 593 U.S. at 388 (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012)); *see also Nat'l Wildlife Fed'n v. United States Army Corps of Eng'rs*, No. 20-CV-00443-DWD, 2022 WL 195332, at *13 (S.D. Ill. Jan. 22, 2022), *aff'd*, 75 F.4th 743 (7th Cir. 2023) (rejecting "ordinary, everyday" meaning of statutory term in favor of technical definition). Thus, Plaintiffs' request that the Court exclude Jones' testimony on the technical meanings of those terms is contrary to law.

**B. Jones' Opinions Are Consistent with the Evidence**

**1. Apple's ordinary use of the term "scan" has no bearing on how the term is used in the field of biometrics**

To prevail on their claims, Plaintiffs must show that Apple's People album creates, uses, or stores "scan[s] of face geometry," which are "biometric identifiers" under BIPA. 740 ILCS 14/10. Jones' opinion that [redacted] is not a "scan of face geometry" as the phrase is used in BIPA should be admitted. Plaintiffs rely on mischaracterizations, leaving no proper basis for excluding Jones' opinions.

*First*, Plaintiffs misstate Jones' opinion regarding "scans." Nowhere did he say, as Plaintiffs claim, that "scan" "refers only to x-rays or similar applications." (Mot. at 13 (citing Patel Decl. Ex. 5 ¶¶ 12-17.) Rather, he opined that "scan" relates to "the capture of image or image-like data." (*See* Patel Decl. Ex. 5 ¶ 17.) He offered that opinion and a citation to a classic textbook on image processing to rebut Brahnam's opinion that embeddings ([redacted]) are scans. (*Id.* ¶ 15.)

*Second*, Jones' opinion is consistent with Apple testimony and documents. (Mot. at 13.) There is no support for Plaintiffs' assertion that Apple made "concessions" about the meaning of "scan" in the context of BIPA. Some of the testimony Plaintiffs cite does not even use the word "scan." (*See, e.g.*, Mot. Ex. 7 (Zuliani) at 50:6-9; 68:7-11; 187:17-23; Mot. Ex. 8 (Thomson) at

160:13-161:7.) Other cited testimony and materials use "scan" as a verb with a meaning roughly equivalent to "look for." (*See, e.g.*, Mot. Ex. 9 (Langoulant) at 89:8-20 ("Q. Okay. So is it fair to say that Apple is detecting a face by scanning photographs in the user's photo library? A. Yeah. The software on the user's device will look at each of the photos and find faces on it.").) Taken together, the evidence supports the noncontroversial point that the Photos app looks for faces in a photo library. (*See, e.g.*, Mot. Ex. 7 (Zuliani) at 231:24-32:11 ("Apple decides what photos in a photo library are scanned, correct? Yes."); iPhone User Guide ("The Photos app scans your photo library for faces and adds the most frequently found faces to the People Album.").) Nothing in the documents or testimony contradicts Jones' opinion regarding how experts in the biometrics industry understand the term "scan" in the context of BIPA. And nothing in the cited materials suggests that [redacted] are in fact "scans of face geometry" under BIPA.

*Finally,* as in their motion for partial summary judgment, Plaintiffs' reliance on court orders on motions to dismiss is also misplaced. (Mot. at 13-14.) Because those cases were decided at the motion to dismiss stage, this Court and others were required to accept the plaintiffs' allegations as true. Those courts did not determine whether the specific technology at issue constituted "scans" under BIPA. *See Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 749 (S.D. Ill. 2020) ("[F]act issues can inform the application of BIPA, but the Court does not reach those issues yet. The Court accepts as true Plaintiffs' allegations[.]"); *see also Rodriguez v. ByteDance, Inc.* No. 23 CV 4953, 2025 WL 672951, at *17 (N.D. Ill. Mar. 3, 2025) ("Plaintiffs *allege*, for example, that 'Defendants employ engineers in fields such as computer vision, convolutional neural network, and machine learning, all of which are used to generate the face geometry scans that Defendants derive from the videos of CapCut users.'") (emphasis added). No court has ever ruled that [redacted] are "scans of face geometry" under BIPA and neither the evidence nor Plaintiffs' cited cases support

excluding Jones' opinion regarding "scans."

### 2. The evidence does not contradict Jones' opinion that [redacted] is not a "faceprint"

Plaintiffs equate "faceprint" with a biometric identifier under BIPA that can "uniquely identif[y] a face." (Pl. MSJ at 10 n.6.) Jones opines that [redacted] is not a "faceprint" based on his review of the source code, because [redacted] not determine anyone's actual identity. (Mot. Ex. 3 ¶ 29.) In seeking to exclude this opinion, Plaintiffs argue that, because Apple documents and employees sometimes refer to [redacted] must be a "faceprint" under BIPA. None of this evidence actually contradicts Jones, let alone renders his opinion inadmissible. To the contrary, Plaintiffs' citations merely show that some Apple software engineers [redacted] are biometric identifiers or information under BIPA. Indeed, the only inference that can be drawn from Apple engineers' use of "faceprints" is that those employees lack technical biometrics expertise, and their terminology may be inaccurate or imprecise from a biometrics perspective.

Similarly, Plaintiffs' assertion that Apple has used the term "faceprints" in connection with "face identification" is unsupported by any cited materials. Moreover, Plaintiffs cite no evidence that any Apple engineer who used "faceprints," "identification," or any other disputed terms intended to use them in a biometrics sense or knew their meanings in biometrics. There is no evidence that the Apple employees who used "faceprints" had any biometrics meaning in mind. (*See* Viggiani Decl. Ex. 18 (Jones Dep. 332:1-25) (Jones explaining this).)[3] Thus, the only inconsistency between Jones' opinions and Apple employee statements is that Jones has far more expertise in biometrics than Apple's witnesses. That is no basis for excluding his opinion.

---

[3] Plaintiffs cite a document titled "Face Identification: Building on Top of the Faceprint," which does not discuss the People album or [redacted] (Mot. at 14 (citing Ex. 26).)

### 3. No Apple witness concedes that [redacted] are "face geometry" under BIPA

Jones' opinion that "face geometry" "refers to the three-dimensional shape of the facial structure" is based on his decades of experience and supported by three cited academic articles. (Mot. Ex. 2 ¶¶ 18-19.) There is no basis to exclude that opinion.

Lay witness testimony does not undermine Jones' opinion, much less justify excluding it. Plaintiffs offer no evidence that any Apple employee is qualified to testify on the biometric meaning of "face geometry," let alone any explanation why a layperson's testimony could warrant excluding even contradictory expert opinions. Nor do Plaintiffs cite any authority in support.

Regardless, Plaintiffs' description of the testimony is inaccurate. For instance, Plaintiffs cite to testimony of Apple Director of System Intelligence and Machine Learning Marco Zuliani regarding a "feature map." (Mot. at 6-7 (mistakenly citing Ex. 7 at 174:4-16 and presumably intending to cite 173:4-16).) The witness does not mention geometry in connection with "feature maps" at all; he agreed that the map is a "spatial representation" of where features are detected on a face, which Plaintiffs equate with "face geometry" under BIPA in their motion. (Mot. Ex. 7 at 173:7-10; Mot. at 6-7.) Mr. Zuliani's separate testimony that "geometry" means "the study of relative positioning of objects" offers nothing about whether [redacted] comprise "face geometry" under BIPA.

Next, Plaintiffs cite Apple Research Manager in System Intelligence and Machine Learning Vinay Sharma's testimony that "[redacted] (Mot. at 7 (citing Ex. 11 at 147:9-12).) Mr. Sharma did not say that [redacted] comprises face geometry. Plaintiffs' citation to Apple Engineer Gavin Thomson's testimony is equally unavailing. Mr. Thomson testified that "a face print can be a little bit ambiguous in terms of how that term is used," but "[redacted]

[redacted] (Mot. at 7 (citing Ex. 18 at 353:2-6).) His testimony also does not suggest that [redacted] is "face geometry" under BIPA.

Plaintiffs also misinterpret their cited cases. None of Plaintiffs' cases suggest that "face geometry" under BIPA need not be three-dimensional. To the contrary, the cases stress the importance of facial features such as eyes, noses, and mouths that are inherently three-dimensional. *See, e.g.*, *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) (the "bottom line is that a 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component (eye, finger, voice, hand, face) used to identify a person"); *In re Clearview AI, Inc.*, No. 21-cv-00135, 2025 WL 1371330, at *1 (N.D. Ill. May 12, 2025) ("Face biometrics use aspects of a person's face geometry, such as the eyes, nose, or mouth, to create a unique face image.").

Plaintiffs' other cases do not support a finding that [redacted] is "face geometry" or that Jones' opinion is incorrect. Two cases were decided at the pleading stage where the court accepted the allegations as true, rather than making any finding as to how the purported technology in those cases worked and whether it fell under BIPA. *Hartman v. Meta Platforms, Inc.*, No. 3:23-CV-02995-NJR, 2024 WL 4213302, at *11 (S.D. Ill. Sept. 17, 2024) ("Affording the complaint the generous interpretation to which it is entitled," an "estimation of the location of parts of users' faces" meets BIPA's definition of "face geometry" without discussion of dimensionality); *Rodriguez*, 2025 WL 672951, at *17 (sufficient for "[p]laintiffs [to] allege, for example, that 'Defendants employ engineers in fields such as computer vision, convolutional neural network, and machine learning, all of which are used to generate the face geometry scans that Defendants derive from the videos"). In a third case, the court denied summary judgment where (unlike here) the source code did not make clear whether the technology collected scans of face geometry. *In re*

*Facebook Biometric Info. Priv. Litig.*, No. 3:15-cv-03747-JD, 2018 WL 2197546, at *1 (N.D. Cal. May 14, 2018).

Finally, Plaintiffs' assertion that Jones conceded that his opinion is "entirely unsupported" is erroneous. (Mot. at 15 (citing Ex. 4 at 249:1-17; 260:13-261:14).) In the cited deposition testimony, Jones referenced "two different citations" that supported his opinion. (Mot. Ex. 4 at 260:13-261:2.) That he could not recall a glossary definition of "facial geometry" in real-time is no basis for exclusion, as depositions are not memory tests. *In re Dealer Mgmt. Sys. Antitrust Litig.*, 581 F. Supp. 3d 1029, 1075 (N.D. Ill. 2022) (expert's inability to recall the details of all his opinions during deposition was not grounds for exclusion); *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 805 (N.D. Ill. 2013) (objection that expert equivocated at his deposition goes to the weight, not admissibility of the expert's opinion). And it is equally untrue that Jones seeks to provide a legal conclusion on "face geometry." (Mot. at 16.) Rather, he is explicitly providing an opinion on the technical meaning of "face geometry" in the field of biometrics. (Mot. Ex. 2 ¶¶ 18-19.)

#### 4. Jones' opinion on "identification" and "identity" is aptly supported

Plaintiffs' criticism of Jones' opinion regarding the terms "identification" and "identity" is also groundless. (Mot. at 16-17.) The core of his opinion is that "identification" in the field of biometrics refers to comparing biometric information to a database of enrolled identities. (*See, e.g.*, Mot. Ex. 2 ¶ 46.) Thus, "face recognition alone cannot determine an identity." (Mot. Ex. 1 ¶ 55.) This opinion is not "ipse dixit," but rather finds strong support in two biometric glossary definitions and several more biometric publications. (*See, e.g.*, Patel Decl. Ex. 59 at 189 (International Biometrics Identity Association (IBIA) defining "identify" to require a "search against a biometric enrollment database"); Patel Decl. Ex. 60 at 23 (ISO/IEC also defining "identify" to require a search against a "biometric enrollment database"); Viggiani Decl. Ex. 18 (Jones Dep. 308:7-312:2 (Jones' testimony about the IBIA definition)); *id.* at 328:25-330:24

(Jones' testimony about the ISO/IEC definition); Mot. Ex. 1 ¶¶ 57-63 (Jones' discussion in his opening report about the enrollment database requirement for biometric identification, including citations ignored by Plaintiffs); Mot. Ex. 2 ¶¶ 45-48 (Jones' similar discussion in his rebuttal report).) Plaintiffs' claim that Jones conceded in deposition that his opinion lacks support is false and belied by the glossary definitions and biometrics publications on which Jones relies. (Mot. at 16 (citing Ex. 4 at 214:1-215:2, 219:7-10).) The cited testimony merely reflects that Jones could not remember the contents of every piece of pertinent academic literature on the fly, which is no basis for exclusion. *In re Dealer Mgmt.*, 581 F. Supp. 3d at 1075.

Plaintiffs' contention that Jones' opinion on identifiers contradicts the meaning of BIPA is also erroneous, given that BIPA only applies to data that can "identify a person." *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024); *see also Martell v. X Corp.*, No. 23 C 5449, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024). Jones' opinion that [redacted] do not and cannot identify anyone is thus helpful in determining whether BIPA applies to [redacted] and other People album data at issue in this case (it does not).

Finally, Plaintiffs once again incorrectly state that the evidence conflicts with Jones' opinion. (Mot. at 16.) This is not the case. Nothing in Apple's "Recognizing People" whitepaper or Apple witness testimony about "face detection and recognition" suggests that the Photos app *identifies* people. Detecting and recognizing a face generally are very different from identifying the person to whom the face belongs.

As for witness testimony, Plaintiffs once again misstate what witnesses said.

| Plaintiffs' Mischaracterization of the Testimony | What the Testimony Actually Says |
|---|---|
| Plaintiffs claim that Mr. Thomson testified that Apple identifies people through People album. (Mot. at 7 (citing Ex. 8, 31:23-33:11).) | Mr. Thomson testified: "I would say it's ***not identifying people***. It is detecting faces and as part of that is trying to find common—faces |

| Plaintiffs' Mischaracterization of the Testimony | What the Testimony Actually Says |
|---|---|
| | that are algorithmically similar." (Mot. Ex. 8 at 31:23-33:18.) (emphasis added.) |
| Plaintiffs cite testimony from Marco Zuliani, Vinay Sharma, Craig Federighi, Huma Ryan to argue that Apple witnesses conceded the Photos App uses faceprints to identify users. (Mot. at 7.) | Mr. Zuliani testified that "[t]he face detection process aims at finding if there are faces in a photograph." (Mot. Ex. 7 at 158:13-14.)<br><br>Mr. Sharma testified that he has heard "identity clusters" used as a "very loose way" of describing groups of embeddings. (Mot. Ex. 11 at 80:9-20.)<br><br>Mr. Federighi, testified that the Photos App "help[s] users with easier organization or browsing of their photos." (Mot. Ex. 19 at 34:24-35:13.)<br><br>Mr. Ryan, testified that the Photo library "organizes your photos . . . by the people in your Photos library"—more specifically, "by the faces in the photos"—to "help users organize their huge photo libraries into manageable albums." (Mot. Ex. 20 at 31:16-23, 123:22-25.) |

### C. Jones Is Highly Qualified to Provide His Opinions on Encryption

Jones offers two main opinions related to encryption. *First*, his review of Apple source code confirms that Apple encrypts [redacted] before syncing it (in certain circumstances) to iCloud for use on another device of the same user. (*See, e.g.*, Mot. Ex. 3 ¶¶ 12-26.) *Second*, encryption makes it impossible for anyone but the user (who has the decryption key) to access [redacted] (*See, e.g.*, Mot. Ex. 2 ¶ 62.)

Jones is highly qualified to provide these opinions. He has more than 30 years of experience in software development. (*See* Mot. Ex. 1 ¶¶ 9-12.) He regularly uses encryption in his work as a software developer, and he teaches undergraduate courses on encryption fundamentals. (Patel Decl. Ex. 58 (Jones Dep. 331:1-25).) Jones' detailed analysis of Apple's encryption source code

establishes that he understands it deeply. (Mot. Ex. 3 ¶¶ 12-26.) Moreover, he cited deposition testimony from three Apple witnesses as independent confirmation of this findings. (Mot. Ex. 3 ¶ 11 & n.6.)[4] Plaintiffs do not point to a single purported error that he made in his analysis. (Mot. at 18-19.) In contrast, Plaintiffs' source code expert Dr. Atif Hashmi claimed ignorance during his deposition, even though he reviewed the same code as Jones. (Viggiani Decl. Ex. 14 (Hashmi Dep.) at 125:8-16; *see also* Mot. Ex. 3 ¶¶ 12-26 (pointing out Hashmi's intentional omission of reference to code that explicitly mentioned encryption).)

While Jones acknowledges he is not an expert on encryption in an academic sense, his opinions in this case do not delve into the complex mathematical details of encryption. (*See* Mot. Ex. 4 at 23:1-8, *id.* at 331:1-25 (testifying that he did not know the legal meaning of "expert").) Rather, based on his experience and review of the source code and deposition testimony, he opines that Apple's encryption exists and prevents non-user access. Because his knowledge and experience would assist jurors in this case, that testimony is admissible. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).

Plaintiffs' argument that encryption testimony is "highly likely to confuse the jury" (Mot. at 19) is unfounded and inconsistent with their reliance on Dr. Aram Sinnreich, who introduced the issue of encryption into the case with a June 2024 report haranguing about the dangers of biometric data, including encrypted data. (*See, e.g.*, Patel Decl. Ex. 68 at 21 ("[O]nce consumer data has been collected, there is no way to confidently prevent it from being connected back to the individual by third parties—even if it has been anonymized and encrypted, as Apple claims it does

---

[4] Plaintiffs' assertion that Jones "admitted that that he has neither reviewed nor tested, any source describing the encryption-related topics which his opinion purports to describe"—like so much of Plaintiffs' motion—is untrue and unsupported. (Mot. at 18.) Plaintiffs cite only to a page of attorney discussion in support, ignoring Jones' review and analysis of Apple's source code and related Apple witness testimony. (*Id.* (citing Ex. 4 at 285:2-286:1).)

with its users' data.").) To the extent Sinnreich's testimony is admitted—which it should not be (*see* ECF No. 281-3)—Jones should be permitted to respond to it. Additionally, Apple's inability to access users' [redacted] is relevant to whether Apple has "possession" of [redacted], as BIPA requires. 740 ILCS 14/15(a).

Finally, Plaintiffs' complaints about Jones "bolstering" Brasher's report lacks merit. Jones' opinions regarding encryption rely on Jones' own technical review and analysis of Apple's source code, not on Brasher's report. Jones personally examined the Photos app and iCloud Photos source code, including the modules governing the encryption, transfer, and storage of user data. He explained—based on that source code review—that data synced to iCloud is encrypted before transmission, remains encrypted in transit and at rest, and is end-to-end encrypted such that Apple cannot decrypt it. (*See, e.g.,* Mot. Ex. 1 ¶ 85; Mot. Ex. 3 ¶¶ 15-26.) Those findings are rooted in Jones' direct review of Apple's engineering materials, not in Brasher's opinions. That Dr. Jones' independent analysis happens to corroborate Brasher's conclusions does not render his testimony cumulative or improper. Moreover, Brasher's opinions address general encryption principles, while Jones' testimony concerns how Apple's specific source code implements those principles. Jones' observations therefore assist the trier of fact by explaining the mechanics of Apple's systems in a way that Brasher's broader cybersecurity background does not. *See, e.g., Forsythe v. Rosen Med. Grp., LLC*, No. 11-CV-07676, 2015 WL 127921, at *4 (N.D. Ill. Jan. 8, 2015) (probative value of expert testimony addressing different aspects of the standard of care outweighed risk of cumulative testimony despite the likelihood that there would be "some overlap" in experts' likely testimony.) Plaintiffs' "bolstering" argument should accordingly be rejected.

## IV. CONCLUSION

Jones is eminently qualified to provide the opinions Plaintiffs challenge. Plaintiffs'

attempts to exclude his testimony rely on mischaracterizations of his opinions and witness testimony. While Plaintiffs allege inconsistencies between his opinions and the record, they fail to show a single genuine inconsistency. Therefore, the Court should deny Plaintiffs' motion in its entirety.

Respectfully submitted,

Dated: October 27, 2025

APPLE INC.

By: */s/ Purvi G. Patel*

Purvi G. Patel (ARDC# 6287065)
Emma Z. Burgoon*
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
(213) 892-5200
PPatel@mofo.com
EBurgoon@mofo.com

Katie Viggiani*
Tiffani Figueroa*
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
KViggiani@mofo.com
TFigueroa@mofo.com

* appearing *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2025, I electronically filed the foregoing **Defendant Apple Inc.'s Opposition to Plaintiffs' Motion to Partially Exclude the Opinions of Apple' Expert Dr. Creed Jones** with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record registered on the ECF system.

*/s/ Purvi G. Patel*
Purvi G. Patel