IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JANE DOE**, by and through next friend **JOHN DOE**, **RICHARD ROBINSON**, **YOLANDA BROWN**, **JONATHAN LEBLOND**, **PATRICIA ORRIS**, **ANGELA STEVENS**, **JESSICA JACKSON, MELISSA OATMAN, JUSTIN REVELO, AND TAYLOR VALL** on behalf of themselves and all other persons similarly situated, known and unknown,

Plaintiffs,

v.

**APPLE INC.**,

Defendant.

Case No. 3:20-cv-00421-NJR

**APPLE INC.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**


Purvi G. Patel (ARDC# 6287065)
Emma Burgoon*
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
(213) 892-5200
PPatel@mofo.com
EBurgoon@mofo.com

Katie Viggiani*
Tiffani B. Figueroa*
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
KViggiani@mofo.com
TFigueroa@mofo.com

* appearing *pro hac vice*

*Attorneys for Apple Inc.*

## I. INTRODUCTION

The Seventh Circuit's decision in *G.T. v. Samsung Elec. Am., Inc.*, 2026 WL 2279903 (7th Cir. Aug. 7, 2026), directly forecloses Plaintiffs' core theory of liability. *Samsung* held that "the words 'possession,' 'collect,' 'capture,' and 'obtain,' as they appear in BIPA § 15(a) and (b), all require the subject company to have or have obtained some degree of 'control' over the biometric data in question." Op. 9. Considering a technology generally similar to the People albums feature at issue here, *Samsung* concluded that Sections 15(a) and (b) of BIPA are not triggered by a device's "cluster[ing]" of photos containing the same face, when the alleged facial-recognition data used to do so remains on users' devices and cannot be accessed by the manufacturer. Op. 4, 13. That holding entitles Apple—not Plaintiffs—to summary judgment as to the Local Device Class, which asserts claims under Sections 15(a) and (b) for purported facial-recognition data that Plaintiffs acknowledge remains on users' devices.

*Samsung* also compels summary judgment in Apple's favor as to the other two subclasses, because it reaffirms that Sections 15(a) and (b) are triggered only if the defendant has "control" over "biometric" data. Op. 9. Apple does not "control" the data at issue for the iCloud Faceprint Subclass, because the data Plaintiffs target is end-to-end encrypted and Apple does not have the key. And the additional data at issue for the iCloud Subclass is limited either to photographs, which are expressly excluded from BIPA's definition of "biometric identifier," Op. 12, or to data that is not even remotely biological in nature (e.g., names and serial numbers of photo albums).

To be sure, this Court applied a different standard to the technology at issue here when it denied Apple's motion to dismiss in this case, holding that Apple could be said to "possess[]" on-device data in violation of Sections 15(a) or (b) if users cannot opt out of the feature and cannot access or delete the data it creates. *Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 653 (S.D. Ill. 2021).

*Samsung* rejected that approach, Op. 11, and the record shows that users can delete the data. Applying *Samsung* to the undisputed factual record makes clear that Apple is entitled to summary judgment, and that the Court should deny Plaintiffs' motion for partial summary judgment.

## II. RELEVANT BACKGROUND

The facts of this case relevant to "control" of the at-issue data are materially indistinguishable from the allegations at issue in *Samsung*. The cases both involve the use of on-device processing to try to cluster photos stored on a user's phone or tablet with other photos containing the same individual. (ECF No. 281-2, Apple's Statement of Material Facts ("SOF") ¶ 40; ECF No. 280-2, Plaintiffs' Statement of Undisputed Material Facts ("PSOF") ¶ 134.) Apple's process begins by cropping the photos stored on the user's device into smaller photographs centered just on faces and upper bodies (**Figure 1**). (SOF ¶¶ 44, 68; PSOF ¶¶ 70, 119.)



**Figure 1.** Example of original photo (left) and cropped photo focusing on a face (right)

From each cropped photo, the technology generates a vector (i.e., an ordered set of decimal-point numbers) that represents information derived from the color and intensity of that photograph's pixels. (SOF ¶¶ 51-52.) By comparing the vectors associated with different cropped photos, the technology tries to determine which vectors are most similar—and hence which cropped photos, and ultimately which original photos, are most likely to involve the same faces. (SOF ¶¶ 59-62; PSOF ¶¶ 78, 98, 115, 181.) It is these vectors that Plaintiffs contend constitute the "biometric" data (in particular a "scan of facial geometry") subject to BIPA. ECF No. 287, Plaintiffs' Motion

for Partial Summary Judgment ("Pl. MSJ") at 4-9.[1] The technology then clusters the original photos into albums grouped by the faces appearing in them, and allows the user to assign a label to each album. (SOF ¶ 69; PSOF ¶ 36.) This process—including cropping, generating a vector, and clustering—all takes place on-device. (SOF ¶ 40; PSOF ¶ 134.) And the associated information—the photos, bounding boxes locating the cropped photos' perimeters within the original photos, the vectors, and any user-applied labels—is protected with on-device encryption, for which only the user possesses the key—meaning that the information is not accessible to anyone but the user, including Apple. (SOF ¶¶ 74-75, 78.)

Users can choose to sync photos to iCloud Photos. (SOF ¶ 5; PSOF ¶ 247.) The exact data that is synced when they do so has changed over time, but at no time has Apple had access to any data that could even remotely be described as "biometric." Prior to July 29, 2024, the only information relevant to Plaintiffs' claims that was transmitted to iCloud servers was (1) the original and cropped photos, along with (2) the bounding boxes locating the cropped photos' perimeters within the original photos and (3) any user-applied album labels. (SOF ¶¶ 96-97; ECF No. 306-2, Apple's Response to Plaintiffs' Statement of Undisputed Material Facts ("RSOF") ¶ 267.) Apple holds the key to this indisputably *non-biometric* data in escrow so it can assist users needing data or account recovery. (SOF ¶¶ 87-95.) Beginning on July 29, 2024, the vector described above has also been synced to iCloud.[2] (SOF ¶¶ 97, 109-10.) It is undisputed that Apple does not have

[1] Plaintiffs also argue in passing that in the course of creating the vectors, the People albums technology creates an intermediate piece of data called a "feature map," which itself qualifies as a "biometric identifier." ECF No. 297, Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") at 9. But there is no dispute that the "feature maps" never leave the user's device, *id.* at 14, and so under *Samsung* they cannot support a claim under Sections 15(a) or (b) of BIPA for the same reason as all other on-device data. *See infra* § III.A.

[2] This group is limited to users who enable iCloud Photos with at least 10 gigabytes of storage and have 5,000 or more photos or videos in their iCloud photo library.

access to the vectors, which are protected by end-to-end encryption for which the user alone possesses the key. (SOF ¶¶ 109-10; RSOF ¶ 222.)

As relevant for the pending summary judgment motions, then, this case involves three categories of data, and three corresponding classes: (1) the vectors, photos, bounding boxes, and user-applied album labels remaining exclusively on users' devices ("On-Device Processed Data"), corresponding to the Local Device Class; (2) the vector data synced to iCloud for a limited group of users since July 29, 2024, in an end-to-end encrypted state inaccessible to Apple ("Sync Update Data"), corresponding to the iCloud Faceprint Subclass; and (3) original and cropped photos, as well as bounding boxes, cluster serial numbers, and user-applied labels synced to iCloud ("iCloud Photos Data"), corresponding to the iCloud Subclass.

| **Data Category** | **Certified Class** | **Data Elements** | **Storage Location** | **Encryption** |
|---|---|---|---|---|
| On-Device Processed Data | Local Device Class | Original and cropped photos, bounding boxes, user-applied album labels, vector | User device | Encrypted; Apple lacks the decryption key |
| Sync Update Data | iCloud Faceprint Subclass | Vector | Apple server | End-to-end encrypted; Apple lacks the decryption key |
| iCloud Photos Data | iCloud Subclass | Original and cropped photos, bounding boxes, cluster serial numbers, user-applied album labels | Apple server | Encrypted; by default, Apple has a decryption key for account recovery |

## III. ARGUMENT

*Samsung* makes clear that Apple is entitled to summary judgment (and that Plaintiffs are not) as to each of the three data categories discussed above.

### A. *Samsung* is dispositive as to On-Device Processed Data.

*Samsung*'s holding that Sections 15(a) and (b) do not apply where the data at issue remains on "the user's … device" and beyond the manufacturer's ability to access, Op. 13, bars the claims of the Local Device Class. The record here leaves no doubt that On-Device Processed Data—just like the alleged "facial geometry data" in *Samsung*—is generated and remains on the users' devices. (SOF ¶¶ 40-62, 77; PSOF ¶¶ 134-35.) Plaintiffs do not dispute this. (Pl. MSJ at 2, 9; PSOF ¶¶ 134-35.) The undisputed record also establishes that Apple has no ability to access this local device data. (SOF ¶¶ 74-75, 77-78, 81-82.)

While Plaintiffs insist that Apple still can be said to "collect" data even if it does not leave users' devices, Pl. Opp. at 14-16, *Samsung* specifically considered and rejected that very same argument. Op. 10-12. Repeating the logic from this Court's motion to dismiss order, Plaintiffs insist that Apple does control on-device data, because Apple created the People albums technology, because users cannot "disable" People albums, and because users cannot "access" or "delete" the People albums data. Pl. Opp. at 14-16; *see also Hazlitt*, 543 F. Supp. 3d at 653. But as *Samsung* explained, none of those factors is relevant: It does not matter if users cannot "disable the feature on their devices," or "access" or "delete" the data it collects; as long as the data remains on "the devices themselves," there is no "control" by the device manufacturer, and so under "the plain language of BIPA," Sections 15(a) and (b) are not implicated. Op. 10-12; *see also* Op. 11 (explaining that even if "Apple exclusively own[s] the software" used to create biometric data "and prohibit[s] users from accessing the biometric data saved on the devices," it still does not "control" the data).[3]

---

[3] In any event, discovery since the motion to dismiss order has made clear that users can delete the data. RSOF ¶¶ 65-66.

### B. *Samsung* compels summary judgment as to the iCloud Faceprint Subclass.

Under *Samsung*, Sections 15(a) and (b) likewise have no application to encrypted data that cannot be decrypted by the defendant. Those sections apply only if the defendant has "'control' over … biometric data," Op. 9, and a party has no "control" over data it cannot decrypt, *see, e.g.*, *United States v. Triplett*, 2025 WL 1359353, at *8 (S.D. Ohio 2025) (no "possession" or "control" of data where holder "has not been able to break the encryption"); *United States v. Young*, 2024 WL 913308, at *4 (D. Minn. 2024) ("[T]he data … is not in the Government's possession because [it] is encrypted … and the Government has not been able to break the encryption."); *United States v. Vezina*, 2023 WL 2390758, at *5 (D. Idaho 2023) (government "is not in possession of anything from [a] cellphone" that it cannot unlock); *see also Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *6–8 (C.D. Cal. July 12, 2024) (granting summary judgment where data was encrypted in transit and on servers, accessible only through a password-protected dashboard, and plaintiffs presented no evidence the defendant "actually read or attempted to read" the contents). That makes sense: "Control" under BIPA, at a minimum, requires "access." *deGrasse v. Hyundai Motor Am.*, 2025 WL 1413177, at *3 (N.D. Ill. 2025). And if the defendant cannot break the encryption, it cannot access the underlying data.[4]

That rule applies directly to the iCloud Faceprint Subclass here. As the undisputed evidence makes clear, that data is protected by end-to-end encryption for which the user alone possesses the key. (SOF ¶¶ 109-10, 119; RSOF ¶¶ 222, 229.) Apple thus has no ability to access

[4] Plaintiffs mislead with their suggestion that *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 954, 958 (N.D. Ill. 2024), held that "data encryption does not defeat possession[] in BIPA cases." Pl. MSJ at 22. Contrary to Plaintiffs' insinuations, *Sloan* did not hold that a BIPA claim could go forward "despite allegation that [the] data was encrypted at a 'military grade.'" *Id.* In fact, the entire premise of *Sloan* was that the promise of "military grade encryption" was "false." 711 F. Supp. 3d at 962-63. *Sloan* thus comes nowhere near saying that a BIPA claim is viable even where the data at issue is encrypted beyond the defendant's ability to decrypt.

the data, much less to control it. *Id.* Plaintiffs have asserted that because Apple "can access encryption keys" it "could, at any time, gain access to the encrypted data"—implying with imprecise language and contrary to the record that this is true of *all* encrypted data. Pl. MSJ at 22-23. The underlying evidence that Plaintiffs cite, however, discusses iCloud Photos Data—not Sync Update Data. *See* Pl. MSJ Ex. 3 at 97:10–98:2.[5] As to the Sync Update Data, Apple had no access to the end-to-end encryption key, and hence no ability to access (or "control") the underlying data. (SOF ¶ 119.)

Plaintiffs miss the mark with their insistence that because Apple "updated its software" to cause the end-to-end encrypted vectors to be backed up to iCloud, Apple necessarily "could 'access' [the vectors], regardless of any encryption." Pl. MSJ at 23. As *Samsung* itself explained, "control of … software" is "not the same as control of the facial scan data." Op. 10. All Plaintiffs have shown is that, following the update, Apple's software allowed users to sync end-to-end encrypted data to iCloud. But that says nothing about the entirely separate question of whether Apple could then break that end-to-end encryption to access the underlying data. Instead, that issue (which is dispositive here) is spoken to by reams of other evidence, which makes clear that when it comes to the Sync Update Data, Apple has no ability to break the end-to-end encryption, and hence no ability to access the underlying information. (SOF ¶¶ 109-10, 119.)

The fact that Apple cannot break the end-to-end encryption protecting the Sync Update Data distinguishes the cases that Plaintiffs rely on to suggest that "encryption does not defeat possession." Pl. MSJ at 22. In *Renteria v. Liberty Mut. Pers. Ins. Co.*, 2025 WL 2260251 (D.N.M. 2025), for instance, the court reasoned that the mere fact that data was encrypted "d[id] not

[5] Plaintiffs' argument on this score also ignores the controls around the use of encryption keys held in escrow to assist with data recovery.

foreclose [a defendant's] possession of nor access to customer data"—because in that case it was not clear that the encryption was beyond the defendant's ability to decrypt. *Id.* at *3 (explaining that evidence indicated that, notwithstanding the "encryption," the defendant's "software could [still] decipher the documents"). Here, by contrast, the undisputed record establishes that the Sync Update Data is end-to-end encrypted and inaccessible to Apple. (SOF ¶¶ 119-21.) *United States v. Shannon*, 851 F.3d 740 (7th Cir. 2017), is even further afield, as it did not rule on the issue at all, but simply noted that the defendant had been previously convicted of child pornography, *id.* at 742; and even then, that conviction was not premised (as Plaintiffs suggest) on encrypted images that he himself had no ability to decrypt or view, but rather on images for which he had "use[d] encryption … [to] make tracking his access … more difficult" for investigators. *See id.* at 745. Plaintiffs thus cite no case holding, contrary to all of the caselaw cited in the first paragraph of this section, that a defendant controls data held solely in encrypted form, which it has no ability to decrypt.

The uniform rule across all cases cited by both parties is thus that a defendant does not "control" data that it has no ability to decrypt. Because the undisputed record is clear that Apple cannot decrypt the Sync Update Data, under *Samsung* that data cannot trigger liability under Sections 15(a) or (b).

### C. *Samsung* compels summary judgment as to the iCloud Subclass.

*Samsung* further confirms that iCloud Photos Data does not qualify as "biometric" and hence does not implicate Sections 15(a) or (b) for this separate reason. To constitute "[b]iometric information" or a "biometric identifier" under BIPA, data must be of a "biological[]" nature. 740 ILCS 14/5(c). The iCloud Photos Data comes nowhere close to data that is biological in nature. Indeed, the fact that Plaintiffs themselves have chosen to label the subclass based on Sync Update

Data the iCloud *Faceprint* Subclass, while calling this subclass merely the iCloud Subclass, is as clear a tell as one is likely to get that even they do not view this data as implicating biometric data.

The original and cropped photos are simply photographs. And as *Samsung* explains, BIPA is not implicated by the transmission of "photos to [the defendant's] cloud servers," because it expressly exempts "photographs" from its scope. Op. 12-13; *see* 740 ILCS 14/10 (excluding "photographs" and "information derived from [photographs]" from the definitions of "biometric identifiers" and "biometric information"). "[I]t is well-established that photographs such as thumbnails are not biometric identifiers." *Sheppard v. Fantasia Trading LLC*, 2024 WL 3707825, at *11 (C.D. Cal. 2024); *see also, e.g.*, *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 817 (N.D. Ill. 2022) (similar).

The remaining data that comprises iCloud Photos Data—bounding boxes, cluster serial numbers, and user-applied labels—is not even remotely biological in nature, and Plaintiffs do not contend otherwise. Bounding boxes simply describe from where in an original photo a rectangular crop was taken, and thus convey only the crop's width, height, and location—not any "information about what appears inside." (SOF ¶ 43.) Cluster serial numbers, meanwhile, are exactly what their name suggests—a number used to tag each group of photos. (RSOF ¶¶ 255, 267.) They encode no information of a biological nature, but simply provide a convenient way to internally refer to each photo cluster. *Id.* And the user-applied labels simply represent whatever label a user has assigned to a particular album. (SOF ¶ 96; RSOF ¶¶ 255, 267.) The utter (and undisputed) lack of any biological dimension to that data alone brings it outside BIPA's scope. In any event, none of this data is (as Plaintiffs sometimes claim) "derived from faceprints," as would be required

to bring it within the definition of "biometric information." Pl. MSJ at 7.[6] Indeed, as Plaintiffs themselves recognize, data such as bounding boxes and face crops *precede* the creation of the vector that Plaintiffs claim is a faceprint, Pl. MSJ at 4-9, and hence cannot have been "derived from" that vector. (SOF ¶¶ 57, 68; RSOF ¶¶ 22, 44-45, 58, 62, 71, 85-86.) For this independent reason, that data fails to qualify as "biometric."

Accordingly, no piece of the iCloud Photos Data qualifies as an actionable "biometric" under BIPA, so nothing in that data triggers application of Sections 15(a) or (b).

## IV. CONCLUSION

For these reasons, and those given in Apple's summary judgment briefing, Apple is entitled to summary judgment on each of the three data categories at issue.

Dated: August 24, 2026

APPLE INC.

By: */s/ Purvi G. Patel*

Purvi G. Patel (ARDC# 6287065)
Emma Burgoon*
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017
(213) 892-5200
PPatel@mofo.com
EBurgoon@mofo.com

Katie Viggiani*
Tiffani B. Figueroa*
Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019
(212) 468-8000
KViggiani@mofo.com
TFigueroa@mofo.com

* appearing *pro hac vice*

[6] Plaintiffs only argue that this information is "biometric information" and do not claim that it constitutes "biometric identifiers." Pl. MSJ at 16-17.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of August, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

*/s/ Purvi G. Patel*
*Purvi G. Patel*